## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

ALEFE FREITAS RODRIGUES,
    **Petitioner**

  **v.**

ANGELA A DE SOUZA TURMINA,
    **Respondent One**

  **v.**

MARCIA M. DE SOUZA
    **Respondent Two**

  **v.**

KYLE PATRICK MAC MANUS
    **Respondent Three**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION FILE NO.**

### VERIFIED COMPLAINT AND
### PETITION FOR RETURN OF A CHILD
### PURSUANT TO THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF
### INTERNATIONAL CHILD ABDUCTION AND
### THE INTERNATIONAL CHILD ABDUCTION REMEDIES ACT, CODIFIED AT
### 22 U.S.C. § 9001 *et seq.*

Petitioner, Alefe Freitas Rodrigues, respectfully shows this Court as follows:

### I.  INTRODUCTION

1. This action is brought by **ALEFE FREITAS RODRIGUES** ("Petitioner") a citizen of Brazil, and biological Father of his minor child to secure  the return of his son to Brazil, J.G.S.R., born in 2016 ("Child"), under The Hague Convention on the Civil Aspects of International Child Abduction (hereinafter referred to as the "Hague Convention"), and  who was wrongfully removed from Brazil, and brought to the United

1

States by the Child's mother, **ANGELA DE SOUZA TURMINA**, ("Respondent One"), (hereinafter referred to as "Mother") without Father's knowledge or consent.

2. This Petition is filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention")[1] and the International Child Abduction Remedies Act ("ICARA").[2] A copy of the Hague Convention is attached hereto as Exhibit "A." and a copy of ICARA is attached herein as Exhibit "B." The Hague Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, and among other Contracting States, the United States of America and Brazil, since January 1, 2000.

3. The objects of the Hague Convention are:

*Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and*

*Article 1(b): To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States (Id).*

4. The Hague Convention and ICARA authorize a federal district court to determine the merits of a claim for the wrongful removal and/or wrongful retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute.

---

[1] Oct. 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10494 (1986).

[2] 22 U.S.C. §§ 9001-9011 (previously codified at 42 U.S.C. §§ 11601 *et seq.)*

5.      Petitioner filed his Hague Convention application with the Department of Justice and Equality, the Central Authority for Brazil, on July 9,  2021, and which Central Authority thereafter forwarded it to the United States Department of State, the United States Central Authority.  A copy of said Application is attached as Exhibit "C," in both Portuguese and English.  An amicable return was not resolved by the United States Department of State, and therefore the Petitioner herein seeks the Court's intervention to return the minor Child to Brazil under the Hague Convention.

6.      It is averred that Mother's illegal travel with the minor child into the United States is so egregious that it placed the Child in imminent risk of harm, and continues to subject the child to physical and psychological harm, and detention under the immigration laws of the United States, and potentially undetected secreted flight upon learning of this case being filed in the federal district court.

7.      Upon arrival in the United States, it is averred that Mother sought and received the assistance of her mother, the Child's maternal grandmother, who is also illegally staying in the United States, and is herein identified as **MARCIA M. DE SOUZA,** Respondent Two, and has provided accommodations and financial support for the Mother and the minor Child in her rented home in Cinnaminson, New Jersey.

8.      Thereafter, it is averred that Mother, Respondent One, admitted to Petitioner that she married **KYLE PATRICK MAC MANUS**, hereinafter referred to as Respondent Three, and that they are building a home, allegedly planning to remain in the United States with the minor child.

## II. JURISDICTION AND VENUE

9.     This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003 (Jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

10.     Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Child and Respondent One are currently temporarily staying with Respondent Two, **MARCIA M. DE SOUZA**, and Respondent Three, **KYLE PATRICK MAC MANUS** at 554 Camelot Court, Cinnaminson, New Jersey 08077 within the Federal District Court for the District of New Jersey -- Camden.

11.     Petitioner has verified that the Respondent and Child are staying at the home of Respondent Two, the maternal grandmother's home, **MARCIA M. DE SOUZA,** at 554 Camelot Court, Cinnaminson, New Jersey through calls with Respondent's mother, text messages with Respondent One and Respondent One's social media posts and photos of Respondent Two's home.

12.     Respondent One has also reported to Petitioner that the minor child is attending the George B. Fine Elementary School, located at 3800 Gladwyn Avenue, Pennsauken, Township, NJ 08109, where the minor child may also be located.

## III. STATEMENT OF FACTS

13.     Petitioner and Respondent One are the parents of Child who is habitually a resident in Brazil, J.G.S.R., born in 2016 (hereinafter referred to as "Child."), as defined by The Hague Convention.

4

14.   Petitioner resides at Amarilis No. 396 Bairro, Green Park, 76901884,in Ji-Parana, Rondônia, Brazil.

15.   Respondent One, Mother, has most recently resided at Rua Valdeman ida Isilva, 3612, Baiero, Readencia Copa, Verdes, Ji-Parena, Rondonia, Brazil.

16.   Petitioner and Respondent never married but met in June 2015 and commenced living together in January 2016 when Respondent found out she was pregnant with J.G.S.R.

17.   In 2016, Respondent gave birth to J.G.S.R. in Ji-Parana,  Brazil.  A copy of J.G.'s birth certificate is attached hereto as Exhibit "D," noting the names of both parties in this matter.

18.   The parties separated in August 2018, shortly before the Child's second birthday, and thereafter shared custody of the minor Child, on an equal basis, without the necessity of an Order of Court.

19.   Petitioner subsequently married Marilene Santos Ribeira and with whom he has another child, and they reside in the same jurisdiction as Mother in Brazil.

20.   Despite the parties' separation, the parents both remained involved in the Child's life, each spending a significant amount of time with the Child and both fully invested in raising and loving their son.

21.   Petitioner maintains that the Child has a stable and loving life in Ji-Parana, Brazil, in which he was thriving, and Petitioner is more than capable of providing for the emotional, spiritual, and mental well-being of the Child.

22.   The Child is established in a pre-school in Brazil and has a family who miss and love him, and the Child has been closely engaged with his extended family in

Brazil throughout his life.  See a copy of a City Hall of Ji-Parana Department of Education, Enrollment Declaration for J.G.S.R. in Portuguese and English translation attached as Exhibit "E".

23.    Respondent One has readily admitted that Petitioner is a wonderful father to J.G.S.R.  Although it is presumed that Mother will likely make unsupported allegations to justify her abduction of the child, by way of proof, Mother posted a social media post averring her positive sentiments about Petitioner as a Father.  A copy of both the text message in Portuguese and the English translated version attached hereto as Exhibit "F".

24.    In February 2021, Respondent One approached Petitioner about applying for a passport to travel to the United States with the Child to visit family, with an intention to return to Brazil after a brief vacation, and requested that Petitioner execute a Travel Authorization form, so that Mother could obtain a Brazilian passport for the Child and a United States Visa for purposes of the vacation.  No specific dates or plans of travel were discussed or agreed upon at the time the parties agreed to obtain these documents for the child.  A copy of the Travel Authorization form in both Portuguese and the English translation are attached collectively hereto as Exhibit "G".

25.    Thereafter, during a visit between Mother and the child, without Father's knowledge, the Mother took the child and traveled to another location in Brazil, not agreed upon by the parties.

26.    Although Petitioner was concerned about Respondent One's plans, but because she was well settled with a job, home, vehicle, and she attested that she would never take the child to live in New Jersey, Petitioner agreed to the vacation plans,

6

although when the parties agreed upon obtaining a passport and visa for the minor child
no specific plans for any vacation outside of Brazil had been agreed upon by the
parties.

27.    Petitioner became concerned when Respondent One ignored his requests
to talk to the child, and Respondent One then alleged that she was with family in
another part of Brazil and denied that she had left Brazil with the child.

28.    Subsequently, Petitioner learned from the Federal Police that Respondent
One had departed Brazil with the Child, when he was unable to contact Respondent
One or the minor child.

29.    Petitioner went to Respondent One's home and found that the utilities
were disconnected and Respondent One's clothes were strewn everywhere, it
appearing that she had no intention of returning to the home.

30.    Petitioner then became concerned that perhaps Respondent One and the
Child were not going to return to the home from her vacation to the United States, and
he visited the Federal Police to report the incident and his concerns.

31.    Petitioner then learned that Respondent One received a Brazilian passport
number for the minor child.  The Federal Police learned that Respondent One had not
obtained a US Visa for the child and had illegally traveled to the United States by land
through Mexico on April 22, 2021. Attached hereto as Exhibit "H" is a copy of the police
incident report and Petitioner's statement in Portuguese with an English translation.

32.    After four days without contact with Respondent One, Petitioner reached
out and spoke with Respondent's mother, **MARCIA M. DE SOUZA,** in New Jersey, and
who confirmed that Respondent One and the Child had crossed the border into the

7

United States illegally then turned herself in to immigration, where she and the child were temporarily detained in the United States.

33. Petitioner avers that Respondent One subjected herself and the Child in grave danger by crossing the border as she utilized the services of a "coyote" to make the trip and because they were detained at the border for one week before being released.

34. Petitioner avers that Respondent's behavior was reckless and physical and emotionally harmful, and it could have cost the life of the Child.

35. Respondent Two, **MARCIA M. DE SOUZA,** told Petitioner that Respondent only needed to wait one week and after that period she would be released into the United States since the Child was only 5 years old, and alleged that regulations mandated release and no detention beyond that period.

36. Petitioner found out through Respondent One's social media posts, indicating that after one week she was released into the United States and she had moved to New Jersey, and that she had no intention to return to Brazil, and unfortunately, had no intentions of returning the Child to Brazil, because she alleges that the schools and hospitals in the United States were superior to those in Brazil. Attached is a copy of Respondent One's communications with Petitioner in both Portuguese and English translation stating same attached collectively as Exhibit "I".

37. Respondent has also posted several selfie pictures of herself alone without the Child on social media, which Petitioner avers shows she is happy to move on with her life in the United States with the parties Child, and identifying Respondent

Two's home in Cinnaminson, New Jersey. Copies of such pictures posted by Respondent are attached as Exhibit "J",

38.    Petitioner avers that **MARCIA M. DE SOUZA**, Respondent Two is conspiring with the Respondent One to wrongfully retain the child outside of Brazil and is a third party subject to the provisions of the Hague Convention, as well as ICARA.

39.    Petitioner avers that **KYLE PATRICK MAC MANUS**, Respondent Three, is also wrongfully retaining the child outside of Brazil and is a third party subject to the provisions of the Hague Convention and ICARA.

40.    Respondent abducted the Child from Brazil because despite Petitioner signing the Travel Authorization, Petitioner believed and trusted that Respondent was taking their son on a vacation to the United States and did not find out until Respondent arrived in the United States that she planned to stay in the United States with their son.

41.    Petitioner has rights of custody of Child, as defined in the Hague Convention on the Civil Aspects of International Child Abduction, included in ICARA and under the law in Brazil, where specific Orders of Court have been entered granting such custody. A copy of the Petition to the Childhood and Youth Court of the District off Ji-Parana setting forth their rights and responsibilities for the Child, and specifically as it relates to Petitioner's rights of custody and guardianship under the Hague Convention, filed with the Court on September 16, 2021, is attached as Exhibit "K".

## IV. WRONGFUL REMOVAL AND RETENTION OF CHILD BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION AND ICARA

1.     Thereafter, on November 11, 2021, the Childhood and Youth Custody Court issued an injunction requiring the Mother to return the child to Father within ten days for further proceedings.  A copy of the Order is attached herein as Exhibit "L."

2.     Mother then sought an appeal of the injunctive Order, which confirms Mother's knowledge of the custody action in Brazil, to the extent that she participated in the hearings through her appeal of the injunctive Order.  A copy of the Order is attached herein as Exhibit "M" indicating that any issues of due process were satisfied by Mother's participation in her appeal in Brazil.

3.     Thereafter, on December 6, 2021, the Court in Brazil further contemplated the custody matter, and noted that it was important for Father to have access to his son during the pendency of the proceedings, which Mother failed to do.  A copy of the Order of Court dated December 6, 2021 is attached as Exhibit "N."

4.     Despite the Court's stern warning to Mother, Respondent One communicated by text message by "Whatsapp" with Petitioner, and made it clear that she had no intention to return the child to Brazil and she stated as follows:

> *Angela:  I've made up my mind I would send him back if I realized that I can't give him everything he deserves…But here I can give him whatever he wants…It hurts me a lot to know how difficult this is for you.*

> *Alefe:  Angela, this also hurts me a lot.  I prefer not to talk about it to avoid fights…You have your opinion and I have mine.  Unfortunately we will never agree.*

A copy of the text message exchange is attached herein as Exhibit "O."

5.    On February 8, 2022, the Court of the State of Rondonia, held a full

hearing on the issue of the whether the Child should be returned to Brazil, based on

Mother's appeal of the lower court's decision to grant custody of the child to Father

pending a full hearing before the Court in Brazil.

6.    The Court granted custody of the child to Father and Denied Mother's

request to retain custody of the child in the United States.  A copy of said Order is

attached herein and incorporated as Exhibit "P."

7.    In the Court's decision, the following citation confirms the Rights of

custody of both parents as follows:

> According to art. 1, 583, § 2 of the Civil Code, it is understood by shared
> custody: …joint responsibility and the exercise of rights and duties of the
> father and mother who do not live under the same room, concerning the
> family power of the children in common.

8.    Importantly, the Court determined that Father's rights of custody had been

breached by Mother when she unilaterally removed the child from Brazil, and Mother

admitted that she did so without Father's consent.

9.    Although Mother attempted to invoke a defense to the Hague Convention

return of the child to Brazil, under Article 13(b), that this exception to a return "must be

understood in a humanitarian character, aiming to prevent the child from being sent to a

dangerous or abusive family, to a social or national environment dangerous, which is

not the case here."  Accordingly, the Court has denied any relief to Mother on this basis.

10.    Therefore, the appellate Court upheld the prior decision to require the

return of the child to Brazil from the United States.

11.    As set forth above, on or about April 22, 2021, Respondent One

wrongfully removed the Child in the United States, and specifically within the jurisdiction

of the Federal District Court for the District Court of New Jersey, within the meaning of Article 3 of the Convention and as set forth in ICARA, and continues to wrongfully retain the Child in the State of New Jersey, United States, in violation of Article 3 and despite Petitioner's efforts to have the Child returned to Brazil.

12. Petitioner avers that Respondent Two and Respondent Three have assisted Respondent One in wrongfully retaining the Child in New Jersey, United States, within the meaning of the Hague Convention and ICARA, and said Respondents are therefore subject to the sanctions as set forth in the Hague Convention and ICARA.

13. Petitioner has never acquiesced or consented to the removal of the Child from Brazil to the United States or to the child's residence outside of Brazil.

14. Respondent One's removal and retention of the Child is wrongful within the meaning of Article 3 of the Convention and Respondent Two and Respondent Three's wrongful retention of the Child in the United States from Brazil because:

a) It is in violation of Petitioner's rights of custody and Guardianship as established by the Childhood and Youth Court of the District of Ji-Parana-Rondônia, Brazil;

b) Respondents' removal and retention of the Child is in violation of Petitioner's right as a physical custodian to determine the Child's place of residence. See Hague Convention, Art. 5(a) (defining "rights of custody" under Article 3 to include "in particular, the right to determine the child's place of residence");

c) At the time of the Child's removal from Brazil, Petitioner was exercising his rights of custody with the meaning of Articles 3 and 5 of

12

the Convention and, but for Respondent's removal and retention of the Child, Petitioner would have continued to exercise those rights; and

d)      The Child was habitually a resident in Brazil within the meaning of Article 3 of the Convention immediately before the removal and retention by Respondent.

42.      Petitioner timely filed his Application under the Hague Convention with the Central Authority for Brazil on or about July 9, 2021, which Central Authority subsequently forwarded the Application to the United States Department of State, the Central Authority for the United States, and Respondents are presently wrongfully detaining the Child in the State of New Jersey, within the jurisdiction of the District of New Jersey – Camden.

43.      Upon information and belief, Respondents are wrongfully retaining the Child at 554 Camelot Court, Cinnaminson, New Jersey.

44.      The Child was born in 2016.  The Hague Convention applies to children under sixteen (16) years of age and thus applies to this Child.

15.      The Petition is filed less than one year from Respondent One's wrongful removal of the Child.  Petitioner has never consented or acquiesced to Respondent's wrongful removal or retention of the Child on a permanent basis in the United States.

16.      Petitioner avers that he believed Respondent was only taking the child on a vacation to see relatives in the United States and would be returning to Brazil with their son pursuant to the terms of a United States visa that Respondent One intended to obtain prior to her travel with the minor Child to the United States.  In fact, he

13

acquiesced only to the application for the passport and the US Visa, never to the travel at a specific date and time.

## V.  PROVISIONAL REMEDIES
## 22 U.S.C. § 9004 & HAGUE CONVENTION, ARTICLE 16

45.     Petitioner requests that this Court issue an immediate order restraining anyone from removing the Child from the jurisdiction of this Court, and a warrant seeking immediate physical custody of the Child, directing any United States Marshal or other law enforcement officer to bring the Child before this Court, and place the Child in the temporary confidential shelter pending further Order of Court.

46.     Petitioner also asks that this Court schedule an expedited hearing on the merits of this Petition, pursuant to Article 11 of the Hague Convention, and require that Respondents and all residents of 554 Camelot Court, Cinnaminson, NJ to immediately deposit all passports and visas with the Court to be held by the Court pending final resolution of this matter.

47.     Petitioner will simultaneously with the filing of this Petition file an Emergency Motion for Relief to secure the safety and welfare of the Child pending further Order of Court.

## VI. ATTORNEY FEES AND COSTS
## 22 U.S.C. § 9007(b)

48.     To date, Petitioner has incurred attorneys' fees and costs in Brazil and the United States as a result of the wrongful removal and wrongful retention of the Child by Respondent One, Respondent Two, and Respondent Three.

14

17.     Petitioner respectfully requests that this Court award him all costs and fees, including attorney fees, Marshal's costs of service, custodial fees charged DYFAS, transportation costs, incurred to date as required by 22 U.S.C. § 9007, as well as those subsequently incurred by the Petitioner

18.     Petitioner shall provide the Court with a detailed list of all costs and fees, at the time of the hearing on the merits of this matter, and ask the Court to require the Respondents to pay all costs immediately upon the entry of the Court's decision to return the Child to Brazil with his father.

### VII.     NOTICE OF HEARING
### 22 U.S.C. § 9003(c)

49.     Pursuant to 22 U.S.C. § 9003(c), Respondents shall be given notice of these proceedings in accordance with the laws governing notice in interstate child custody proceedings and specifically as provided in N.J. Stat.Ann § 2A:34-53 _et seq._

50.     The United States Marshals are authorized to serve a copy of all pleadings and Orders upon the Respondents when the Marshals take custody of the Child, and immediately seize all Passports of Respondents, Child, and any other residents of the home, and place them with the Clerk of Courts.

51.     If any of the Respondents are not present when the Passports are seized, the Petitioner requests that each person shall have an affirmative obligation to submit their passports to the Clerk of Courts for the District Court for the District of New Jersey – Camden, and shall do so within 24 hours of the Marshals appearing to seize the passports.

### VIII.     RELIEF REQUESTED

WHEREFORE, Petitioner, Alefe Freitas Rodrigues, prays for the following relief:

15

a)      An immediate temporary restraining order prohibiting the removal of the Child from the jurisdiction of this Court pending a hearing on the merits of this Verified Complaint, and further providing that no person acting in concert or participating with Respondents shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of the Verified Complaint;

b)      United States Marshals to take physical custody of the Child and place him temporarily with the Burlington West Division of Child Protection and Permanency, 200 Campbell Drive, Suite 100, Willingboro, NJ, pending Petitioner's arrival in the United States, at which time the minor child  may be released to Petitioner or his designee for purposes of retaining custody in the jurisdiction pending the conclusion of The Hague Convention proceedings.

c)      The scheduling of an expedited hearing on the merits of the Verified Complaint under the Hague Convention and ICARA;

d)      An order that Respondents show cause at this hearing why the Child should not be returned to Brazil, and why such other relief requested in the Verified Complaint should not be granted; and, pursuant to Federal Rule of Civil Procedure 65, an order that the trial of the action on the merits be advanced and consolidated with the hearing on the Verified Complaint;

e)      A final judgment in Petitioner's favor establishing that the Child shall be returned to Brazil with Petitioner or his designee, where an appropriate custody determination can be made by the Childhood and Youth Court of the District of Ji-Parana/Rondônia. Brazil, which continues to maintain jurisdiction over the custody matter of the Child.

f)      An Order requiring that Respondents to pay Petitioner's expenses and

costs, including transportation costs, under 22 U.S.C. § 9007, such expenses and costs

to be resolved via post-judgment motion, consistent with the procedure outlined under

Local Rules of this Honorable Court; and

g)      For any such further relief as may be just and appropriate under the

circumstances of this case.

Respectfully submitted, this 15th day of _____ , 2022.

LINDA SHAY GARDNER, ESQUIRE
Attorney for Petitioner
ID NUMBER 031471995
740 Main Street
Bethlehem, PA  18018
(610)866-9529
lgardner@gardnerlawyers.com

17

## VERIFICATION

I, ALEFE FREITAS RODRIGUES , verify that the statements of fact made in this document are true and correct. I understand that false statements herein are made subject to the penalties of 28 U.S. Code §1746, relating to unsworn falsification to authorities.

02/09/2022
Date

**ALEFE FREITAS RODRIGUES**



**HCCH**
HAGUE CONFERENCE ON
PRIVATE INTERNATIONAL LAW
CONFÉRENCE DE LA HAYE
DE DROIT INTERNATIONAL PRIVÉ

## 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

### CHAPTER I – SCOPE OF THE CONVENTION

### Article 1

The objects of the present Convention are –

a)  to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b)  to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

### Article 3

The removal or the retention of a child is to be considered wrongful where –

a)  it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b)  at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1]  This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction*  (ISBN 90 12 03616 X, 481 pp.).



## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –
a) "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b) "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

## CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a) to discover the whereabouts of a child who has been wrongfully removed or retained;
b) to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c) to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d) to exchange, where desirable, information relating to the social background of the child;
e) to provide information of a general character as to the law of their State in connection with the application of the Convention;
f) to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g) where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h) to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i) to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

## CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

a) information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

b) where available, the date of birth of the child;

c) the grounds on which the applicant's claim for return of the child is based;

d) all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e) an authenticated copy of any relevant decision or agreement;

f) a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

g) any other relevant document.

## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

*b)*    there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time. .

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

## Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

## CHAPTER IV — RIGHTS OF ACCESS

## Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

## CHAPTER V — GENERAL PROVISIONS

## Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

## Article 23

No legalisation or similar formality may be required in the context of this Convention.

## Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

## Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

### Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

### Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

### Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

### Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

### Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

### Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)    any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)    any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

## Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

## Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

## Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors,* as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

## Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

## Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

### CHAPTER VI — FINAL CLAUSES

## Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

## Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

## Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

## Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

## Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –

(1)    for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;

(2)    for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –

(1)    the signatures and ratifications, acceptances and approvals referred to in Article 37;

(2)    the accessions referred to in Article 38;

(3)    the date on which the Convention enters into force in accordance with Article 43;

(4)    the extensions referred to in Article 39;

(5)    the declarations referred to in Articles 38 and 40;

(6)    the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;

(7)    the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.



**United States Department of State**

*Washington, D.C.   20520*

---

## United States Codes

**PUBLIC LAW 100-300**
**100th Congress**
**(H.R. 3971, 29 April 1988)**

### 42 USC 11601 et seq.
### INTERNATIONAL CHILD ABDUCTION REMEDIES ACT (ICARA)

*To establish procedures to implement the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 and for other purposes.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.*

### Short Title: "This act may be cited as the 'International Child Abduction Remedies Act'."

### Section 11601. - Findings and declarations

**(a)** Findings: The Congress makes the following findings:

**(1)** The international abduction or wrongful retention of children is harmful to their well-being.

**(2)** Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.

**(3)** International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

**(4)** The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

**(b)** Declarations: The Congress makes the following declarations:

**(1)** It is the purpose of this chapter to establish procedures for the implementation of the Convention in the United States.

**(2)** The provisions of this chapter are in addition to and not in lieu of the provisions of the Convention.

**(3)** In enacting this chapter the Congress recognizes -

**(A)** the international character of the Convention; and

**(B)** the need for uniform international interpretation of the Convention.



**(4)** The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims

## Section 11602. - Definitions

For the purposes of this chapter -

**(1)** the term "applicant" means any person who, pursuant to the Convention, files an application with the United States Central Authority or a Central Authority of any other party to the Convention for the return of a child alleged to have been wrongfully removed or retained or for arrangements for organizing or securing the effective exercise of rights of access pursuant to the Convention;

**(2)** the term "Convention" means the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980;

**(3)** the term "Parent Locator Service" means the service established by the Secretary of Health and Human Services under section 653 of this title;

**(4)** the term "petitioner" means any person who, in accordance with this chapter, files a petition in court seeking relief under the Convention;

**(5)** the term "person" includes any individual, institution, or other legal entity or body;

**(6)** the term "respondent" means any person against whose interests a petition is filed in court, in accordance with this chapter, which seeks relief under the Convention;

**(7)** the term "rights of access" means visitation rights;

**(8)** the term "State" means any of the several States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

**(9)** the term "United States Central Authority" means the agency of the Federal Government designated by the President under section 11606(a) of this title

## Section 11603. - Judicial remedies

**(a)** Jurisdiction of courts

The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.

**(b)** Petitions

Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

**(c)** Notice

Notice of an action brought under subsection (b) of this section shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.

**(d)** Determination of case

The court in which an action is brought under subsection (b) of this section shall decide the case in accordance with the Convention.

**(e)** Burdens of proof

**(1)** A petitioner in an action brought under subsection (b) of this section shall establish by a preponderance of the evidence -

**(A)** in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

**(B)** in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

**(2)** In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing -

**(A)** by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

**(B)** by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

**(f)** Application of Convention

For purposes of any action brought under this chapter -

**(1)** the term "authorities", as used in article 15 of the Convention to refer to the authorities of the state of the habitual residence of a child, includes courts and appropriate government agencies;

**(2)** the terms "wrongful removal or retention" and "wrongfully removed or retained", as used in the Convention, include a removal or retention of a child before the entry of a custody order regarding that child; and

**(3)** the term "commencement of proceedings", as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section.

**(g)** Full faith and credit

Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.

**(h)** Remedies under Convention not exclusive

The remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements

**Section 11604. - Provisional remedies**

**(a)** Authority of courts

In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section 11603(b) of this title may take or cause to be taken measures under Federal or

State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

**(b)** Limitation on authority

No court exercising jurisdiction of an action brought under section 11603(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied

## Section 11605. - Admissibility of documents

With respect to any application to the United States Central Authority, or any petition to a court under section 11603 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court

## Section 11606. - United States Central Authority

**(a)** Designation

The President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention.

**(b)** Functions

The functions of the United States Central Authority are those ascribed to the Central Authority by the Convention and this chapter.

**(c)** Regulatory authority

The United States Central Authority is authorized to issue such regulations as may be necessary to carry out its functions under the Convention and this chapter.

**(d)** Obtaining information from Parent Locator Service

The United States Central Authority may, to the extent authorized by the Social Security Act (42 U.S.C. 301 et seq.), obtain information from the Parent Locator Service.

**(e)** Grant authority

The United States Central Authority is authorized to make grants to, or enter into contracts or agreements with, any individual, corporation, other Federal, State, or local agency, or private entity or organization in the United States for purposes of accomplishing its responsibilities under the Convention and this chapter

## Section 11607. - Costs and fees

**(a)** Administrative costs

No department, agency, or instrumentality of the Federal Government or of any State or local government may impose on an applicant any fee in relation to the administrative processing of applications submitted under the Convention.

**(b)** Costs incurred in civil actions

**(1)** Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).

**(2)** Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 11603 of this title shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.

**(3)** Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate

### Section 11608. - Collection, maintenance, and dissemination of information

**(a)** In general

In performing its functions under the Convention, the United States Central Authority may, under such conditions as the Central Authority prescribes by regulation, but subject to subsection (c) of this section, receive from or transmit to any department, agency, or instrumentality of the Federal Government or of any State or foreign government, and receive from or transmit to any applicant, petitioner, or respondent, information necessary to locate a child or for the purpose of otherwise implementing the Convention with respect to a child, except that the United States Central Authority -

**(1)** may receive such information from a Federal or State department, agency, or instrumentality only pursuant to applicable Federal and State statutes; and

**(2)** may transmit any information received under this subsection notwithstanding any provision of law other than this chapter.

**(b)** Requests for information

Requests for information under this section shall be submitted in such manner and form as the United States Central Authority may prescribe by regulation and shall be accompanied or supported by such documents as the United States Central Authority may require.

**(c)** Responsibility of government entities

Whenever any department, agency, or instrumentality of the United States or of any State receives a request from the United States Central Authority for information authorized to be provided to such Central Authority under subsection (a) of this section, the head of such department, agency, or instrumentality shall promptly cause a search to be made of the files and records maintained by such department, agency, or instrumentality in order to determine whether the information requested is contained in any such files or records. If such search discloses the information requested, the head

of such department, agency, or instrumentality shall immediately transmit such information to the United States Central Authority, except that any such information the disclosure of which -

**(1)** would adversely affect the national security interests of the United States or the law enforcement interests of the United States or of any State; or

**(2)** would be prohibited by section 9 of title 13; shall not be transmitted to the Central Authority. The head of such department, agency, or instrumentality shall, immediately upon completion of the requested search, notify the Central Authority of the results of the search, and whether an exception set forth in paragraph (1) or (2) applies. In the event that the United States Central Authority receives information and the appropriate Federal or State department, agency, or instrumentality thereafter notifies the Central Authority that an exception set forth in paragraph (1) or (2) applies to that information, the Central Authority may not disclose that information under subsection (a) of this section.

**(d)** Information available from Parent Locator Service

To the extent that information which the United States Central Authority is authorized to obtain under the provisions of subsection (c) of this section can be obtained through the Parent Locator Service, the United States Central Authority shall first seek to obtain such information from the Parent Locator Service, before requesting such information directly under the provisions of subsection (c) of this section.

**(e)** Recordkeeping

The United States Central Authority shall maintain appropriate records concerning its activities and the disposition of cases brought to its attention

## Section 11608a. - Office of Children's Issues

**(a)** Director requirements

The Secretary of State shall fill the position of Director of the Office of Children's Issues of the Department of State (in this section referred to as the "Office") with an individual of senior rank who can ensure long-term continuity in the management and policy matters of the Office and has a strong background in consular affairs.

**(b)** Case officer staffing

Effective April 1, 2000, there shall be assigned to the Office of Children's Issues of the Department of State a sufficient number of case officers to ensure that the average caseload for each officer does not exceed 75.

**(c)** Embassy contact

The Secretary of State shall designate in each United States diplomatic mission an employee who shall serve as the point of contact for matters relating to international abductions of children by parents. The Director of the Office shall regularly inform the designated employee of children of United States citizens abducted by parents to that country.

**(d)** Reports to parents

**(1)** In general

Except as provided in paragraph (2), beginning 6 months after November 29, 1999, and at least once every 6 months thereafter, the Secretary of State shall report to each parent who has requested assistance regarding an abducted child overseas. Each such report shall include information on the current status of the abducted child's case and the efforts by the Department of State to resolve the case.

**(2)** Exception

The requirement in paragraph (1) shall not apply in a case of an abducted child if -

**(A)** the case has been closed and the Secretary of State has reported the reason the case was closed to the parent who requested assistance; or

**(B)** the parent seeking assistance requests that such reports not be provided

### Section 11609. - Interagency coordinating group

The Secretary of State, the Secretary of Health and Human Services, and the Attorney General shall designate Federal employees and may, from time to time, designate private citizens to serve on an interagency coordinating group to monitor the operation of the Convention and to provide advice on its implementation to the United States Central Authority and other Federal agencies. This group shall meet from time to time at the request of the United States Central Authority. The agency in which the United States Central Authority is located is authorized to reimburse such private citizens for travel and other expenses incurred in participating at meetings of the interagency coordinating group at rates not to exceed those authorized under subchapter I of chapter 57 of title 5 for employees of agencies

### Section 11610. - Authorization of appropriations

There are authorized to be appropriated for each fiscal year such sums as may be necessary to carry out the purposes of the Convention and this chapter



**MINISTÉRIO DA JUSTIÇA E SEGURANÇA PÚBLICA**
**SECRETARIA NACIONAL DE JUSTIÇA**
**DEPARTAMENTO DE RECUPERAÇÃO DE ATIVOS E COOPERAÇÃO JURÍDICA INTERNACIONAL**
**AUTORIDADE CENTRAL ADMINISTRATIVA FEDERAL**
SCN Quadra 06, Bloco A, 2º andar - Shopping ID – Brasília/DF – CEP: 70716-900
acaf@mj.gov.br Telefone: +55 (61) 2025-9361

## REQUERIMENTO DE COOPERAÇÃO JURÍDICA INTERNACIONAL
Convenção da Haia de 1980 sobre os Aspectos Civis do Sequestro Internacional de Crianças

Favor digitar (não preencher a mão) – type on a computer, not by hand
e não esquecer que escolher e marcar um dos quadrados abaixo – choose and check one of the boxes bellow

**TIPO DE PEDIDO**
Retorno (artigo 8)  ■
Visitas (artigo 21)  ☐

## I – PAÍS REQUERIDO
*Requested country*

| País para o qual será enviado este pedido de cooperação<br>*Country to which this application will be sent* | **Brasil** |
|---|---|
| | Estados Unidos |

## II – IDENTIFICAÇÃO DA(S) CRIANÇA(S) SUBTRAÍDA(S)
*Information concerning the abducted child/children*

| CRIANÇA 1<br>*Child 1* | | **Sexo/Gênero** *Sex/Gender*: ■ Masculino *Male* ☐ Feminino *Female* | |
|---|---|---|---|
| **Nome Completo**<br>*Full name* | João Guilherme de Souza Rodrigues J G S R | | |
| **Data de Nascimento**<br>*Date of Birth* | 11/09/2016 | **Local de Nascimento**<br>*Place of Birth* | Ji-paraná-ro |
| **Passaporte nº**<br>*Passport number* | GB888482 | **Nacionalidade (s)**<br>*Nationality (ies)* | Brasileiro |
| **Cor dos olhos**<br>*Eye color* | Olhos castanhos | **Cor do cabelo**<br>*Hair color* | Cabelo castanho |

| Endereço onde a(s) criança(s) podem ser atualmente localizadas<br>*Current address of the child/children* | 554 Camelot Ct. Cinnaminson, Noja Jersey, Estados unidos. Código postal: 080077. |
|---|---|
| Endereço onde a(s) criança(s) residia no Brasil antes da subtração internacional<br>*Residence of the child/children in Brazil before he/she removed/he abducted abroad* | Rua: Amarilis Nº 396 Bairro: Green Park, cep 76901884 Ji-paraná/RO. |

## III – INFORMAÇÃO SOBRE A DATA DA SUBTRAÇÃO OU RETENÇÃO ILÍCITA
*Information on the wrongful removal or retention*

| Data de saída da(s) criança(s) do Brasil<br>*Date when the child/children left Brazil* | 22/04/2021 |
|---|---|

Fl. 1/7

**EXHIBIT**
C

| | |
|---|---|
| **Data da em que o(a) requerente tomou conhecimento de que a(s) criança(s) não mais retornaria(m) ao Brasil** <br> *Date when the applicant was informed that the child/children would not return to Brazil* | 03/05/2021 |

## IV – INFORMAÇÕES SOBRE OS GENITORES DA CRIANÇA
*Information concerning the parents*

| **GENITOR 1** <br> *Parent 1* | | **Sexo/Gênero** *Sex/Gender*: ■ Masculino *Male* ☐ Feminino *Female* | |
|---|---|---|---|
| **Nome Completo** <br> *Full name* | Alefe Freitas Rodrigues | | |
| **Data de Nascimento** <br> *Date of Birth* | 21/02/1994 | **Local de Nascimento** <br> *Place of Birth* | Vila velha-ES |
| **Passaporte nº** <br> *Passport number* | Não tem | **Nacionalidade (s)** <br> *Nationality (ies)* | Brasileiro |
| **Outros documentos de identidade** <br> *Other identification documents* | 5377 SSP/ES | **Profissão** <br> *Occupation* | Vendedor |
| **Telefones** <br> *Telephones* | 1395 | **E-mails** <br> *E-mails* | alefefreitasrodrigues1@gmail.com |
| **Endereço onde pode ser localizado(a)** <br> *Current address* | | Rua: Amarilis Nº 396 Bairro: Green Park, cep 76901884 Ji-paraná/RO. | |

| **GENITOR 2** <br> *Parent 2* | | **Sexo/Gênero** *Sex/Gender*: ☐ Masculino *Male* ■ Feminino *Female* | |
|---|---|---|---|
| **Nome Completo** <br> *Full name* | Angela de Souza Turmina Arruda | | |
| **Data de Nascimento** <br> *Date of Birth* | 28/01/1995 | **Local de Nascimento** <br> *Place of Birth* | MONTE NEGRO-RO |
| **Passaporte nº** <br> *Passport number* | 9725 | **Nacionalidade (s)** <br> *Nationality (ies)* | Brasileira |
| **Outros documentos de identidade** <br> *Other ID* | 6965 SESDC/RO | **Profissão** <br> *Occupation* | Técnica de Laboratório |
| **Telefones** <br> *Telephones* | +(609)676-1135 | **E-mails** <br> *E-mails* | Não tem |
| **Endereço onde pode ser localizado(a)** <br> *Current address* | | 554 Camelot Ct. Cinnaminson, Noja Jersey, Estados unidos. Código postal: 080077. | |

| **Data do Casamento (Se aplicável)** <br> *Date of Marriage (if applicable)* | Não Houve | **Data do Divórcio (Se aplicável)** <br> *Date of Divorce (if applicable)* | Não Houve |
|---|---|---|---|

## V – INFORMAÇÃO RELATIVA À PESSOA QUE SUPOSTAMENTE SUBTRAIU A CRIANÇA
*Information concerning the person alleged to have wrongfully removed the child*

Fl. 2/7

Classificação da informação: Uso Interno

| REQUERIDO(A) *Requested person* | | ■ **Mãe** *Mother* ☐ **Pai** *Father* ☐ **Outro** *Other* | |
|---|---|---|---|
| **Nome Completo** *Full name* | Angela de Souza Turmina Arruda | | |
| **Data de Nascimento** *Date of Birth* | 28/01/1995 | **Local de Nascimento** *Place of Birth* | MONTE NEGRO-RO |
| **Passaporte nº** *Passport number* | ▮▮9725 | **Nacionalidade (s)** *Nationality (ies)* | Brasileira |
| **Outros documentos de identidade** *Other ID* | ▮▮6965 SESDC/RO | **Profissão** *Occupation* | Técnica de Laboratório |
| **Telefones** *Telephones* | +(609)676-1135 | **E-mails** *E-mails* | Não tem |
| **Endereço onde pode ser localizado(a)** *Current address* | | Endereço: 554 Camelot Ct. Cinnaminson, Noja Jersey, Estados unidos. Código postal: 080077. | |

## VI – INFORMAÇÃO RELATIVA AO REQUERENTE
*Information concerning the applicant*

| REQUERENTE *Applicant person* | | ☐ **Mãe** *Mother* ■ **Pai** *Father* ☐ **Outro** *Other* Em caso de Outro, preencher abaixo: *If Other, please complete below:* | |
|---|---|---|---|
| **Nome Completo** *Full name* | Alefe Freitas Rodrigues | | |
| **Data de Nascimento** *Date of Birth* | 21/02/1994 | **Local de Nascimento** *Place of Birth* | Vila Velha-ES |
| **Passaporte nº** *Passport number* | Não tem | **Nacionalidade (s)** *Nationality (ies)* | Brasileiro |
| **Outros documentos de identidade** *Other ID* | ▮▮5377 | **Profissão** *Occupation* | Vendedor |
| **Telefones** *Telephones* | 69993131395 | **E-mails** *E-mails* | alefefreitasrodrigues1@gmail.com |
| **Endereço onde pode localizado(a)** *Current address* | | Rua: Amarilis Nº 396 Bairro: Green Parck, cep 76901884 Ji-paraná/RO. | |

| Advogado(a) do(a) requerente no Brasil ou no exterior (Se houver) *Applicant's attorney in Brazil or abroad (if any)* | | |
|---|---|
| **Nome Completo** *Full name* | Não tem |
| **Endereço Atual** *Current Address* | |
| **Telefones/E-mail** *Telephones/E-mail* | |

## VII – INFORMAÇÕES SOBRE O PEDIDO
*Information on the application*

| **Data, hora, lugar e circunstâncias da transferência/retenção ilegal da(s) criança(s)** *Time, place, date and circumstances of the wrongful removal/retention of the child/children* |
|---|

Fl. 3/7

Classificação da informação: Uso Interno

No dia 22/04/2021 descobri que Angela saiu de Guarulhos e estava indo para o Mexico, fui a policia Federal da minha cidade, fiquei com medo, não sabia como funcionava essa travessia, me martirizei muito, pois tive a sensação que não pude proteger o meu filho dentro do próprio país, por ter confiado na mãe dele. No dia 24/04/2021 ela me respondeu pelo wats, eu suplicava para ver o meu filho, pelo menos em ligação, pois não tinha noção em como ele estava, e ela tirou ele de mim sem nem poder abraça-lo, no dia 25 as 1:00 da manhã foi o último contato, fiquei tentando porém as mensagens não caia, ligação o telefone nem chamava, eu só chorava e não tinha forças, fui a policia Federal várias vezes e eles falavam que não poderiam fazer nada pois eu assinei a autorização de viagem, então aparentemente meu filho estava em uma viagem ao exterior com a mãe dele e com meu consentimento, fiquei desesperado entrei em contato com Marcia, a mãe de Angela que está nos EUA como imigrante a aproximadamente 3 anos, onde ela me disse que foi nessa madrugada que ela fez a travessia e se entregaria para imigração junto com nosso filho, João de 4 anos e iria ficar presa em torno de 4 dias, no dia 30/04 aproximadamente as 21:00 J██ me ligou do telefone da mãe dele, estavam em um hotel, no final da ligação a Angela disse que tinham sido liberados e iriam pegar um voou para ir para a casa da sua mãe no outro dia, porém não me disse onde estavam exatamente. Fiquei mais tranquilo, meu filho estava bem. Ela não conversou nada, fingiu que nada estava acontecendo, eu muito agoniado fui em busca de informações, Advogados e entre outros e todos me falavam que eu só poderia fazer algo depois que autorização de vagem tivesse vencimento, ou seja 3 meses depois que eles tinham saído do pais, no dia 03/05/2021 Ela colocou na redes social(facebook e instagram) *mudou-se para pennauken* então perguntei quando ela voltaria ou mandaria o ██ de volta, ela me disse via msg no watss que não irá voltar, ficará por lá pois escolas são melhores, hospitais e entre outros, chorei muito e fui atras de informações, pois eu creio que o melhor para o meu filho é eu criando e educando, tantas crianças com dinheiro, com melhores escolas e não se tornam ser humano do bem quando crescem. Foi onde encontrei a Acaf e peço por ajuda e retorno do meu filho ao país onde nasce e onde reside.

JSGR

JSGR

---

**Motivos que dão ao(à) requerente o direito de solicitar a restituição da(s) criança(s)***
*Factual and legal justification for the application*

***Prova do efetivo exercício de guarda e cuidados com a criança OU prova do direito de decidir sobre o país de residência da criança (como decisões judiciais, acordos ou legislação)***
*Proofs of effective custody and care of the child OR proof of right to decide the country of residence of the child (such as judicial decisions, agreements and legislation)*

JSGR

**Motivos que dão ao(à) requerente o direito de solicitar a restituição da(s) criança(s)***
*Sou o pai e não autorizei a transferência de moradia.
*Angela (mãe do J██), retirou o nosso filho do país onde nasceu e onde mora que é no BRASIL sem meu conssentimento, existe sim uma autorização de viagem, (E NÃO DE TROCA DE MORADIA) portanto essa autorização foi feita junto com o passaporte para assim quando ficasse pronto o visto dela era iria ir LEVAR O J██ para passar as ferias e traria ele de volta.
*Angela mentiu, dizendo que estava no sitio da avo, em monte negro, foi onde ganhou tempo e saiu com nosso filho do pais de uma forma illegal, pois não tem visto.
*Colocando a vida do J██ em risco,

JSGR

JSGR

J.S.G R

*Se entregando para imigração! Com a flexibilização do novo governo que esta (ajudando os imigrante) com crianças acompanhadas até 6 anos, e João tem 4 anos ela utilizou nosso filho como (visto) para estar sendo liberada e entrar no EUA,

*Ela levou nosso filho sem meu conhecimento e agora quer modificar a moradia dele sem minha autorização.

*Eu Alefe, sempre tive disposto a educar e fazer o melhor pelo meu filho mesmo não estando casado com amãe do João, comprei uma casa com minha Familia proximo a casa de Angela para assim criarmos nosso filho com maturidade.

*João é super apegado no irmãozinho o (Miguel, filho meu e de minha atual esposa),

*No Brasil João está matriculado em escola, fiz uma viagem recente com ele para Vitoria- ES para ele conhecer os meus avos.

* Eu tenho direito de cuidar do meu filho, leva-lo a escola, educar, criar como sempre fiz.

JSGR

---

**Outras informações relevantes (listar outras pessoas que tenham informações sobre a criança, incluir nomes, endereços, telefones e endereços de e-mail)**

*Other relevant information (list the names, addresses, telephone numbers and e-mail addresses of other persons with additional information relating to the whereabouts of the child/children)*

A mãe de Angela que está nos EUA se chama Marcia Maria de Souza, Nascimento 15/09/1976 cpf:689.534.292-34. Telefone: +1(609)840-2218 e 69992697133. Endereço: 554 Camelot Ct. Cinnaminson, Noja Jersey, Estados unidos. Código postal: 080077. Trabalha com limpeza.

O irmão Neldo Vinicios de Souza Turmina Nascimento: 18/04/2001 CPF: 039.752.202-95, Endereço: 554 Camelot Ct. Cinnaminson, Noja Jersey, Estados unidos. Código postal: 080077. **Todos estão como imigrantes.**

As amigas do Brasil que sabem de algo é Fernanda de Oliveira Ordalio Nascimento: 21/06/1998 Cpf: 042.703.302-01 Telefone: 69992951541 Trabalha na Unimed em Ji-paraná/Ro.

Kessia Betânia Farto Cachoeira Nascimento: 30/08/19999 Cpf: 066.535.342-19 Telefone 69993774916 Trabalha como Babá, Reside em Ji-paraná/Ro.

Lays Vieira, Trabalha como enfermeira na área indígena (funcionária pública) Ji-paraná/Ro.

JSGR

JSGR   Mãe do João, Angela de Souza Turmina (mãe do João), Nascimento: 28/01/1995, Cpf: 015.538.302-70, Telefone: +1(609)676-1135, no Brasil tem a Carteira assinada no Laboratório exame. Telefone 6934239823 endereço: R. Vinte e dois de novembro, 1178- casa preta, Ji-paraná-Ro Cep: 76907-632.

Classificação da informação: Uso Interno

## VIII – QUESTÕES GERAIS
*General issues*

| | |
|---|---|
| **O requerente tem interesse em alcançar um acordo por meio de mediação?** <br> *Does the applicant have interest in reaching an amicable solution through mediation?* | ☐ Sim *Yes*  ■ Não *No* |

| | |
|---|---|
| **O requerente tem disponibilidade de viajar ao país onde se encontra a criança para participar de mediação e/ou de audiências judiciais?** <br> *Would the applicant be available to travel to the country where the child is in order to take part in mediations and/or legal hearings?* | ☐ Sim *Yes*  ■ Não *No* |

| | |
|---|---|
| **Idiomas nos quais o(a) requerente é fluente o suficiente para conversar a respeito do presente caso (como em depoimentos a tribunais, participação em mediações, conversas com advogados etc.):** <br> *Languages in which the applicant is fluent enough to maintain a conversation regarding this case (for court testifies, participation in mediations, conferences with attorneys etc.):* | ● Português *Portuguese* <br> ☐ Inglês *English* <br> ☐ Espanhol *Spanish* <br> ☐ Francês *French* <br> ☐ Italiano *Italian* <br> ☐ Alemão *German* <br> ☐ Outro(s): |

| | |
|---|---|
| **Em caso de restituição da criança ao Brasil, o requerente arcará com os custos da viagem de retorno?** <br> *If the child is to be returned to Brazil, will the applicant bear the costs of the return travel?* | ■ Sim *Yes*  ☐ Não *No* |

## IX – ANEXOS
*Attachments*

| | **Lista de documentos anexados** <br> *List of attached documents* |
|---|---|
| ■ | **Documento de identidade do(a) requerente** <br> *Applicant's official identification* |
| ■ | **Certidão de nascimento da(s) criança(s)** <br> *Child/children's birth certificate* |
| ☐ | **Acordo ou sentença judicial relativa à guarda e/ou ao exercício do direito de visitas** <br> *Agreement or judicial decision concerning custody or access rights* |
| ■ | **Declaração escolar que comprove que a(s) criança(s) estudava(m) no Brasil antes da subtração** <br> *School declaration that attests the child/children studied in Brazil before the abduction (if applicable)* |
| ■ | **Outros documentos que comprovem que a(s) criança(s) residia(m) no Brasil antes da subtração** <br> *Other documents that attests the child/children lived in Brazil before the abduction* |
| ⊠ | |

Fl. 6/7

Classificação da informação: Uso Interno

| ● | **Fotografia recente da(s) criança(s)**<br>*Recent photo of the child/children* |
|---|---|
| ■ | **Fotografia recente da pessoa que supostamente subtraiu a(s) criança(s)**<br>*Recent photo of the person alleged to have wrongfully removed the child/children* |
| ☐ | **Proposta de acordo para o retorno da(s) criança(s) ao Brasil**<br>*Agreement proposal for the return of the child to Brazil* |
| ☐ | **Outros (Listar)**<br>*Other (please list)* |

| **Todos os documentos acima juntados em anexo foram traduzidos para o idioma oficial do país/região onde se encontra(m) a(s) criança(s)?**<br>*Does the applicant have provided the translation of all documents into the language of the country/region where the child is?* | ■ Sim *Yes* ☐ Não* *No* |
|---|---|

\* Em caso negativo, deve o requerente providenciar **TODAS** as traduções **ANTES** do envio do caso ao exterior.
*If no, the applicant must provide ALL the translations BEFORE the case is sent to the requested country.*

## X – DECLARAÇÃO DE ANUÊNCIA
*Declaration of Acceptance*

Autorizo as autoridades centrais (requerente e requerida) e seus agentes a representar-me em tudo o que disser respeito ou relacione com o presente requerimento, nos termos do Artigo 28 da Convenção de Haia de 1980 sobre os Aspectos Civis do Sequestro Internacional de Crianças.

*I hereby authorize the central authorities (requesting and requested) and its agents to represent me in all that concerns or relates to this application, according to Article 28 of the 1980 Hague Convention on the Civil Aspects of International Child Abduction.*

| *Rilofe Freitos Rodrigues* | 09/07/2021 |
|---|---|
| **Assinatura do Requerente** *Applicant's signature* | **Data e Local** *Date and Place* |

Classificação da informação: Uso Interno

MINISTÉRIO DA JUSTIÇA E SEGURANÇA PÚBLICA
SECRETARIA NACIONAL DE JUSTIÇA
PARTAMENTO DE RECUPERAÇÃO DE ATIVOS E COOPERAÇÃO JURÍDICA INTERNACIONAL
AUTORIDADE CENTRAL ADMINISTRATIVA FEDERAL
SCN Quadra 06, Bloco A, 2º andar - Shopping ID – Brasília/DF – CEP: 70716-900
acaf@mj.gov.br Telefone: +55 (61) 2025-9361

**REQUERIMENTO DE COOPERAÇÃO JURÍDICA INTERNACIONAL**
Convenção da Haia de 1980 sobre os Aspectos Civis do Sequestro Internacional de Crianças

Favor digitar (não preencher a mão) – type on a computer, not by hand
e não esquecer que escolher e marcar um dos quadrados abaixo – choose and check one of the boxes bellow

**TIPO DE PEDIDO**
Retorno (artigo 8) ■
Visitas (artigo 21) ☐

## I – PAÍS REQUERIDO
*Requested country*

| País para o qual será enviado este pedido de cooperação *Country to which this application will be sent* | United States of America |
|---|---|

## II – IDENTIFICAÇÃO DA(S) CRIANÇA(S) SUBTRAÍDA(S)
*Information concerning the abducted child/children*

| CRIANÇA 1 *Child 1* | Sexo/Gênero *Sex/Gender*: ■ Masculino *Male* ☐ Feminino *Female* | | |
|---|---|---|---|
| Nome Completo *Full name* | [redacted] J G S R | | |
| Data de Nascimento *Date of Birth* | [redacted]2016 | Local de Nascimento *Place of Birth* | Ji-Paraná, RO |
| Passaporte nº *Passport number* | [redacted]8482 | Nacionalidade (s) *Nationality (ies)* | Brazilian |
| Cor dos olhos *eye color* | Brown | Cor do cabelo *Hair color* | Brown |

| CRIANÇA 2 *Child 2* | Sexo/Gênero *Sex/Gender*: ☐ Masculino *Male* ☐ Feminino *Female* | | |
|---|---|---|---|
| Nome Completo *Full name* | | | |
| Data de Nascimento *Date of Birth* | | Local de Nascimento *Place of Birth* | |
| Passaporte nº *Passport number* | | Nacionalidade (s) *Nationality(ies)* | |
| Cor dos olhos *Eye color* | | Cor do cabelo *Hair color* | |

| CRIANÇA 3 *Child 3* | Sexo/Gênero *Sex/Gender*: ☐ Masculino *Male* ☐ Feminino *Female* |
|---|---|

| Nome Completo<br>*Full name* | | | |
|---|---|---|---|
| Data de Nascimento<br>*Date of Birth* | | Local de Nascimento<br>*Place of Birth* | |
| Passaporte nº<br>*Passport number* | | Nacionalidade (s)<br>*Nationality(ies)* | |
| Cor dos olhos<br>*Eye color* | | Cor do cabelo<br>*Hair color* | |

| | |
|---|---|
| Endereço onde a(s) criança(s) podem ser atualmente localizadas<br>*Current address of the child/children* | 554 Camelot Ct. Cinnaminson, NJ 080077 |
| Endereço onde a(s) criança(s) residia no Brasil antes da subtração internacional<br>*Residence of the child/children in Brazil before being wrongfully abducted abroad* | 396, Amarylis Street, Ji-Paraná, RO 76901-884 |

## III – INFORMAÇÃO SOBRE A DATA DA SUBTRAÇÃO OU RETENÇÃO ILÍCITA
*Information on the wrongful removal or retention*

| | |
|---|---|
| Data de saída da(s) criança(s) do Brasil<br>*Date when the child/children left Brazil* | 04/22/2021 |
| Data da em que o(a) requerente tomou conhecimento de que a(s) criança(s) não mais retornaria(m) ao Brasil<br>*Date when the applicant was informed that the child/children would not return to Brazil* | 05/03/2021 |

## IV – INFORMAÇÕES SOBRE OS GENITORES DA CRIANÇA
*Information concerning the parents*

| GENITOR 1<br>*Parent 1* | | Sexo/Gênero *Sex/Gender*: ■ Masculino *Male* ☐ Feminino *Female* | |
|---|---|---|---|
| Nome Completo<br>*Full name* | Alefe Freitas Rodrigues | | |
| Data de Nascimento<br>*Date of Birth* | 02/21/1994 | Local de Nascimento<br>*Place of Birth* | Vila Velha, ES |
| Passaporte nº<br>*Passport number* | | Nacionalidade (s)<br>*Nationality (ies)* | Brazilian |
| Outros documentos de identidade<br>*Other identification documents* | ⬛⬛⬛⬛5377 SSP/ES<br>ITIN:<br>015.794.542-16 | Profissão<br>*Occupation* | Seller |
| Telefones<br>*Telephones* | +5569993131395 | E-mails<br>*E-mails* | alefefreitasrodrigues1@gmail.com |
| Endereço onde pode ser localizado(a)<br>*Current address* | | 396, Amarilis Street, Ji-Paraná, RO 76901-884 | |

| GENITOR 2<br>*Parent 2* | Sexo/Gênero *Sex/Gender*: ☐ Masculino *Male* ■ Feminino *Female* |
|---|---|

| Nome Completo *Full name* | Angela de Souza Turmina Arruda | | |
|---|---|---|---|
| Data de Nascimento *Date of Birth* | 01/28/1995 | Local de Nascimento *Place of Birth* | Monte Negro, RO |
| Passaporte nº *Passport number* | CG339725 | Nacionalidade (s) *Nationality (ies)* | Brazilian |
| Outros documentos de identidade *Other ID* | ID: 1366965 SESDC/RO | Profissão *Occupation* | Chemical Laboratory Technician |
| Telefones *Telephones* | +(690)676-1135 | E-mails *E-mails* | |
| Endereço onde pode ser localizado(a) *Current address* | | 554 Camelot Ct. Cinnaminson, NJ 080077 | |

| Data do Casamento (Se aplicável) *Date of Marriage (if applicable)* | | Data do Divórcio (Se aplicável) *Date of Divorce (if applicable)* | |
|---|---|---|---|

## V – INFORMAÇÃO RELATIVA À PESSOA QUE SUPOSTAMENTE SUBTRAIU A CRIANÇA
*Information concerning the person alleged to have wrongfully removed the child*

| REQUERIDO(A) *Requested person* | | ☑ Mãe *Mother* ☐ Pai *Father* ☐ Outro *Other* | |
|---|---|---|---|
| Nome Completo *Full name* | Angela de Souza Turmina Arruda | | |
| Data de Nascimento *Date of Birth* | 01/28/1995 | Local de Nascimento *Place of Birth* | Monte Negro, RO |
| Passaporte nº *Passport number* | CG339725 | Nacionalidade (s) *Nationality (ies)* | Brazilian |
| Outros documentos de identidade *Other ID* | ID: 1366965 SESDC/RO | Profissão *Occupation* | Chemical Laboratory Technician |
| Telefones *Telephones* | +(690)676-1135 | E-mails *E-mails* | |
| Endereço onde pode ser localizado(a) *Current address* | | 554 Camelot Ct. Cinnaminson, NJ 080077 | |

## VI – INFORMAÇÃO RELATIVA AO REQUERENTE
*Information concerning the applicant*

| REQUERENTE *Applicant person* | | ☐ Mãe *Mother* ■ Pai *Father* ☐ Outro *Other* Em caso de Outro, preencher abaixo: *If Other, please complete below:* | |
|---|---|---|---|
| Nome Completo *Full name* | Alefe Freitas Rodrigues | | |
| Data de Nascimento *Date of Birth* | 02/21/1994 | Local de Nascimento *Place of Birth* | Vila Velha, ES |
| Passaporte nº *Passport number* | | Nacionalidade (s) *Nationality (ies)* | Brazilian |

Fl. 3/7

| Outros documentos de identidade<br>*Other ID* | ID: 1025377 SSP/ES<br>ITIN: 015.794.542-16 | Profissão<br>*Occupation* | Seller |
|---|---|---|---|
| Telefones<br>*Telephones* | +5569993131395 | E-mails<br>*E-mails* | alefefreitasrodrigues1@gmail.com |
| Endereço onde pode localizado(a)<br>*Current address* | | 396, Amarilis Street, Ji-Paraná, RO<br>76901-884 | |

| Advogado(a) do(a) requerente no Brasil ou no exterior (Se houver) *Applicant's attorney in Brazil or abroad (If any)* | |
|---|---|
| Nome Completo<br>*Full name* | |
| Endereço Atual<br>*Current Address* | |
| Telefones/E-mail<br>*Telephones/E-mail* | |

## VII – INFORMAÇÕES SOBRE O PEDIDO
*Information on the application*

| **Data, hora, lugar e circunstâncias da transferência/retenção ilegal da(s) criança(s)** |
|---|
| *Time, place, date and circumstances of the wrongful removal/retention of the child/children* |

$$J.S.G R$$

On April 22, 2021, I found out that Angela (mother of my son Josiah had left Brazil towards Mexico to make an illegal crossing to enter the US. This made me very scared because she was accompanied by my 4-year-old son. Angela was acting differently than we had agreed. Days before, she contacted me so I could sign a document authorizing my son's trip to New Jersey. I agreed to sign because she told me she was going to NJ to visit her mother and that if she decided to live there, she would send my son back to Brazil.

I decided to contact the Federal Police in my city to try to get more information on how I could bring my son back. There, they told me they couldn't do anything because Angela had a travel authorization signed by me for my son to spend three months with his mother in New Jersey. The only option was to wait.

After all my attempts to contact Angela failed, I called her mother who informed me that Angela was under arrest and that after 4 days she would be released into the US because she was accompanied by my son. On June 29, Angela updated her Facebook profile saying she changed her address to New Jersey.

I called her on WhatsApp and she informed me that she has decided to live there, even as an illegal immigrant, and that she will not send my son back to Brazil, because she believes that hospitals and schools in New Jersey are better than in Brazil. Unlike her, I think the best thing for my son is to live with me, his father.

**Motivos que dão ao(à) requerente o direito de solicitar a restituição da(s) criança(s)***

*Factual and legal justification for the application*

***Prova do efetivo exercício de guarda e cuidados com a criança OU prova do direito de decidir sobre o país de residência da criança (como decisões judiciais, acordos ou legislação)***

*Proofs of effective custody and care of the child OR proof of right to decide the country of residence of the child (such as judicial decisions, agreements and legislation)*

1 - I am the father and I have not authorized the transfer of housing;

2 - Angela took my son João from Brazil without my consent;

3 - Angela made me sign a travel authorization for my son to vacation in New Jersey and not for him to live in another country;

4 - Angela lied so that she could leave Brazil with our son and exposed him to risks when she decided to make an illegal crossing to enter the US;

5 - Angela took advantage of the easing of the US federal government to start a new life in the country. She found out that the government is helping immigrants who are accompanied by children up to 6 years old and used our son João, who is 4 years old, to be released and enter the United States;

6 - She took our son from Brazil to live with him in New Jersey without my consent;

7 - I, João's father, have always been willing to educate and give the best to my son. Despite not being married to Angela, I bought a house near her to participate in my son's education;

8 - João is attached to his brother Miguel, my other son with my current wife;

9 - João is enrolled in a school here in Brazil;   JSGR

10 - I believe I have the right to care for and educate my child and take him to school, as I always have.

**Outras informações relevantes (listar outras pessoas que tenham informações sobre a criança, incluir nomes, endereços, telefones e endereços de e-mail)**

*Other relevant information (list the names, addresses, telephone numbers and e-mail addresses of other persons with additional information relating to the whereabouts of the child/children)*

**Marcia Maria de Souza Nascimento, Angela's mother**
**Address: 554 Camelot Ct. Cinnaminson, NJ 080077**
**Telephone: +1(690)840-2218**

**Neldo Vinicios de Souza Turmina Nascimento, Angela's brother**
**Address: 554 Camelot Ct. Cinnaminson, NJ 080077**

Fernanda de Oliveira Ordalio Nascimento, Angela's friend
Telephone: +5569992951541

Kessia Betânia Farto Cachoeira Nascimento, Angela's friend
Telephone: +5569993774916

## VIII – QUESTÕES GERAIS
*General issues*

| | |
|---|---|
| **O requerente tem interesse em alcançar um acordo por meio de mediação?**<br>*Does the applicant have interest in reaching an amicable solution through mediation?* | ☐ Sim *Yes*  ■ Não *No* |

| | |
|---|---|
| **O requerente tem disponibilidade de viajar ao país onde se encontra a criança para participar de mediação e/ou de audiências judiciais?**<br>*Would the applicant be available to travel to the country where the child is in order to take part in mediations and/or legal hearings?* | ☐ Sim *Yes*  ■ Não *No* |

| | |
|---|---|
| **Idiomas nos quais o(a) requerente é fluente o suficiente para conversar a respeito do presente caso (como em depoimentos a tribunais, participação em mediações, conversas com advogados etc.):**<br>*Languages in which the applicant is fluent enough to maintain a conversation regarding this case (for court testifies, participation in mediations, conferences with attorneys etc.):* | ■ **Português** *Portuguese*<br>☐ **Inglês** *English*<br>☐ **Espanhol** *Spanish*<br>☐ **Francês** *French*<br>☐ **Italiano** *Italian*<br>☐ **Alemão** *German*<br>☐ **Outro(s):** |

| | |
|---|---|
| **Em caso de restituição da criança ao Brasil, o requerente arcará com os custos da viagem de retorno?**<br>*If the child is to be returned to Brazil, will the applicant bear the costs of the return travel?* | ■ Sim *Yes* ☐ Não *No* |

## IX – ANEXOS
*Attachments*

| Lista de documentos anexados |
|---|
| *List of attached documents* |
| ■ **Documento de identidade do(a) requerente**<br>*Applicant's official identification* |
| ■ **Certidão de nascimento da(s) criança(s)**<br>*Child/children's birth certificate* |
| ☐ **Acordo ou sentença judicial relativa à guarda e/ou ao exercício do direito de visitas**<br>*Agreement or judicial decision concerning custody or access rights* |

| | Declaração escolar que comprove que a(s) criança(s) estudava(m) no Brasil antes da subtração |
| --- | --- |
| | *School declaration that attests the child/children studied in Brazil before the abduction (if applicable)* |
| | **Outros documentos que comprovem que a(s) criança(s) residia(m) no Brasil antes da subtração** |
| | *Other documents that attests the child/children lived in Brazil before the abduction* |
| | **Fotografia recente da(s) criança(s)** |
| | *Recent photo of the child/children* |
| | **Fotografia recente da pessoa que supostamente subtraiu a(s) criança(s)** |
| | *Recent photo of the person alleged to have wrongfully removed the child/children* |
| ☐ | **Proposta de acordo para o retorno da(s) criança(s) ao Brasil** |
| | *Agreement proposal for the return of the child to Brazil* |
| ☐ | **Outros (Listar)** |
| | *Other (please list)* |

| | |
| --- | --- |
| **Todos os documentos acima juntados em anexo foram traduzidos para o idioma oficial do país/região onde se encontra(m) a(s) criança(s)?** *Does the applicant have provided the translation of all documents into the language of the country/region where the child is?* | ■ Sim *Yes* ☐ Não* *No* |

\* Em caso negativo, deve o requerente providenciar **TODAS** as traduções **ANTES** do envio do caso ao exterior.
*\* If no, the applicant must provide ALL the translations BEFORE the case is sent to the requested country.*

## X – DECLARAÇÃO DE ANUÊNCIA
*Declaration of acceptance*

      Autorizo as autoridades centrais (requerente e requerida) e seus agentes a representar-me em tudo o que disser respeito ou relacione com o presente requerimento, nos termos do Artigo 28 da Convenção de Haia de 1980 sobre os Aspectos Civis do Sequestro Internacional de Crianças.

*I hereby authorize the central authorities (requesting and requested) and its agents to represent me in all that concerns or relates to this application, according to Article 28 of the 1980 Hague Convention on the Civil Aspects of International Child Abduction.*

| | |
| --- | --- |
| *Cilefa Breitas Rodrigues* | 07 / 09 / 2021 |
| **Assinatura do Requerente** *Applicant's signature* | **Data e Local** *Date and Place* |

## REPÚBLICA FEDERATIVA DO BRASIL
## REGISTRO CIVIL DAS PESSOAS NATURAIS

J.G.S.R.  **CERTIDÃO DE NASCIMENTO**

Nome

JOÃO GUILHERME DE SOUZA RODRIGUES

Matrícula

096297 01 55 2016 1 00232 018 0118217 63

Data do nascimento por extenso
Treze de setembro de dois mil e dezesseis ••

| Dia | Mês | Ano |
| --- | --- | --- |
| | | 2016 |

Hora: 13h 21min

Município do nascimento e unidade de federação
Ji-Paraná-RO ••

Município de registro e unidade da federação
Ji-Paraná-RO ••

Local de nascimento
Hospital Municipal ••

Sexo
Masculino

Filiação
ALEFE FREITAS RODRIGUES e ANGELA DE SOUZA TURMINA ••

Avós
Paternos FLORISVALDO RODRIGUES ••
e SANDRA DE FREITAS ••
Maternos NELDO TURMINA ••
e MARCIA MARIA DE SOUZA ••

Gêmeo: Não

Nome e Matrícula do(s) gêmeo(s):
------------------------------------ ••

Data do registro por extenso
Quinze de setembro de dois mil e dezesseis ••

Número da C N °
30-70730196-5

Observações / Averbações
Inscrito no CPF sob o n° ███████72-10, conforme Instrução Normativa RFB n° 1548/15 Nada consta   Selo Digital de Fiscalização E4AAB10362-FA0BA Isento Emolumentos   Custas e Selo  Isento (Face a Lei Federal n° 9.534/97) ••

1° Ofício de Registro Civil e Tabelionato de Notas

Luzia Regly Muniz Confaço

Ji-Paraná - Estado de Rondônia

Rua Pedro Teixeira, 1417 Centro
CEP 76 900-062 - Fone (69) 3421-5588
3423-5064

O conteúdo da certidão é verdadeiro  Dou fé

Ji-Paraná -RO, 15 de setembro de 2016

Jéssica Andressa Oliveira de Andrade
Escrevente Autorizada

E4AAB10362-FA0BA Isento

**EXHIBIT** 1

Birth Certificate

Name: João Guilherme de Souza Rodrigues    J.G.S R .

Data of Birth: September 13th, 2016

Hour: 13h21

City/State: Ji-Paraná/Rondônia

Local Place: Municipal Hospital

Nationality: Brazilian

Gender: Male

Filiation: Alefe Freitas Rodrigues and Angela de Souza

Paternal Grandparents: Florisvaldo Rodrigues and Sandra de Freitas

Maternal Grandparents: Marcia Maria de Souza and Neldo Turmina

Date of Registration: September 15th of 2016

Number of Life Birth Declaration: 305707200196-5



**PREFEITURA MUNICIPAL DE JI-PARANÁ**
**SECRETARIA DE EDUCAÇÃO**
**CMEI ARIEL VIEIRA HILGERT**
Criado pelo DECRETO nº 4144/GAB/PM/JP/2015 Rua Pacaás Novos,
219 - Bairro: Urupá – Ji-Paraná – Rondônia – CEP 76.900-263
Telefone: 3411- 4201  E-mall cmeiarielvieirahilgert@gmail.com



### DECLARAÇÃO



      Declaramos para os devidos fins que o(a) aluno(a) **JOÃO GUILHERME DE SOUZA RODRIGUES**, filho(a) de **ALEFE FREITAS RODRIGUES E ANGELA DE SOUZA TURMINA**, está regularmente matriculado nessa Instituição de Ensino na turma de PRÉ I (A), MATUTINO, EDUCAÇÃO INFANTIL, ano letivo 2021 desde o dia 22/12/2020 sendo que a matrícula foi realizada pelo pai.

Por ser verdade, firmamos o presente documento.

Ji-Paraná/Ro, 27 de abril de 2021.

*Daiany Barbosa Teixeira*
Daiany Barbosa Teixeira
Secretária Escolar
Decreto N. 11101/GAB/PM/JP/2019



Rua Pacaás Novos, 219 - Bairro: Urupá – Ji-Paraná – Rondônia – CEP 76.900-263
Telefone: 3411- 4201  E-mall cmeiarielvieirahilgert@gmail.com

City Hall of Ji-Paraná
Departament of Education

Enrollment Declaration

J6·SR·

We declare for the due purposes that the student João Guilherme de Souza Rodrigues, son
of Alefe Freitas Rodrigues and Angela Souza Turmina, is regularly enrolled in this teaching
institution in the Pre-school class I (A), Morning, Early Childhood Education, school year
2021, since December 22, 2020, with the enrollment being carried out by the father.

As it is true, we sign this document.

Ji-Paraná/RO, April 27, 2021

Daiany Barbosa Teixeira
school secretary
Decree Number 11101/GAB/PM/JP/2019

219 Pacaás Novos Street, Ji-Paraná, RO - Zip Code: 76900263
Telephone: 3411-4201 E-mail: cemeiarielvieirahilgert@gmail.com



**Angela Turmina**

Esse é o pai do meu cacula meu ex marido, ele é muito parceiro. Tenho 1 filho corn ele de 3 anos, e tenho uma filha de 6 do antigo casamento. Eu e ele nao estamos mais casados ele me ajuda com o meu filho e toda vez que compra algo pra ele, ele diz é pra Ela tambem. Ou quando da dinheiro pra comprar pro filho dele manda eu comprar pra minha filha. Ele tem inumeros defeitos que nos fizeram nao dá certo o casamento, mas sobre ser pai ele é ... Meu filho é louco por ele eu nunca imaginei que depois de tudo que passamos ele seria assim. se tornou um grande pai. Tenho muito orgulho de dizer que ele é o pai do meu filho. Obrigado **Alefe** feliz dia dos pais.



This is my ex-husband's father, he's very partner. I have a 3-year-old son, and I have a 6-year-old daughter from the old marriage. Me and him are no longer married he helps me with my son and every time he buys something for him, he says it's for Her too. Or when you give money to buy for his son, you send me to buy it for my daughter. He has numerous flaws that have made us do not work the marriage, but about being a father he is ... My son is crazy about him I never imagined that after all we've been through he'd be like this. became a great father. I'm very proud to say that he's the father of my son. Thank you Happy Father's Day Alefe.



FORMULÁRIO PADRÃO DE AUTORIZAÇÃO DE EXPEDIÇÃO DE PASSAPORTE PARA MENOR com inclusão de AUTORIZAÇÃO DE VIAGEM INTERNACIONAL NO PASSAPORTE COMUM, PARA VIAJAR COM UM DOS PAIS ou DESACOMPANHADO (Poderes amplos) Artigo 27 do Decreto no 5.978/2006 e Resolução 131/2011-CNJ

Eu  ANGELA DE SOUZA TURMINA

portador(a) do documento de identificação n°. H229633

expedido pelo(a) CTS - RO , data de expedição 20/09/2017

CPF _____-70 , telefone para contato _____5993

endereço Rua Valdemar da Silva 3612 Bairro Residencial Copas Verdes - Ji-Paraná - RO

Eu  ALEFE FREITAS RODRIGUES

portador(a) do documento de identificação n° _____ 377

expedido pelo(a) SSP ES , data de expedição 12/06/2006

CPF _____2-16 , telefone para contato _____31355

endereço RUA AMARILIS, N°396, GREEN PARK, CEP 76___884 JI-PARANÁ - RO

AUTORIZO / AUTORIZAMOS a expedição de passaporte para meu filho / minha filha menor abaixo qualificado (a), e a INCLUSÃO DE AUTORIZAÇÃO DE VIAGEM ao menor autorizado (a) por nós, enquanto for menor e pelo prazo de validade do passaporte, a VIAJAR DESACOMPANHADO ou COM APENAS UM DOS PAIS, indistintamente. Estamos cientes de que a REVOGAÇÃO expressa da presente autorização de viagem por algum dos pais implicará o cancelamento imediato e irreversível do passaporte do menor.

Menor _____ JGSR

sexo Masculino , data de nascimento __/__/2016

natural de (cidade e UF)  JI-PARANÁ  - RO

Ji-Paraná - RO data 18/02/2021

Assinaturas:
1. Alefe Freit. Rodrigues
2. Angela de Souza Turmina



EXHIBIT G

Travel Authorization

Standard form of authorization for issuing a passport for minors with inclusion of international travel authorization in the regular passport for traveling with a parent or unaccompanied

I, Angela de Souza Turmina, bearer of identification document 2229633 issued by CTS-RO, date of issue 09/20/2017, ITIN: 302-70, Telephone +55 (69) 99326-5593, address 3612 Rua Valdemar da Silva, Ji-Paraná, RO

I, Alefe Freitas Rodrigues, bearer of identification document 5377 issued by the SSP/ES, date of issue 12/06/2006, ITIN: 94.542-16, telephone + 55 (69) 99313-1395, address 396 Rua Amarilis, Ji-Paraná, RO, 76901-884

We authorize the issuance of a passport to my child below qualified and the inclusion of travel authorization in the common passport, with the minor authorized by us while he is a minor and for the validity period of the passport, to travel alone or with only one of the parents, without distinction. We are aware that the express revocation of this travel authorization by one of the parents will imply the immediate and irreversible cancellation of the minor's passport

Minor: João Guilherme de Souza Rodrigues   **J G S R**
Gender: male, Date of Birth: 2016
Born in (city and UF): Ji-Paraná, RO

Location: Ji-Paraná, RO
Date: 02/18/2021

Signatures:
Alefe Freitas Rodrigues
Angela de Souza Turmina



Blenda Lara
ADVOCACIA INTERNACIONAL

Your Honor,

I, **Blenda Lara Fonseca do Nascimento**, attorney in the states of Minas Gerais and of Brasília, Federal District, Brazil, assures that the following translations are accurate according to the documents that my client delivered for the Case n. 7010244-30.2021.8.22.0005.

This is the translation of a police statement made by Mr. Rodrigues at the Brazilian Federal Police. The translation of his statement on the case is on the following page.

## BLENDA LARA
Brasília Bar Association Number 67.941
**International Lawyer**

**Authentic Translation**



EXHIBIT
*H*

🔔 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



**GOVERNO DO ESTADO DE RONDÔNIA**
**SECRETARIA DE ESTADO DA SEGURANÇA, DEFESA E CIDADANIA**
**POLÍCIA CIVIL**



**OCORRÊNCIA Nº 58075/2021**
(Versão:1)

Registrada em 26/04/2021, às 11h14min na DELEGACIA ESPECIALIZADA NO ATENDIMENTO A MULHER DE JI-PARANÁ
Sob Responsabilidade Da DELEGACIA ESPECIALIZADA NO ATENDIMENTO A MULHER DE JI-PARANÁ

* USO EXCLUSIVO PARA PROCEDIMENTO POLICIAL *

Natureza(s): **OUTRAS OCORRENCIAS CONTRA A PESSOA (Consumado)**, Relevância: Não Criminal. Data do fato: 17/04/2021.
Período: Manhã. Local do Fato: Casa. Tipo do Local: Privado.
Endereço do fato: Rua Amarilis, 396, Novo Ji-Paraná, Perímetro: urbano. Distrito: Ji-Paraná. Município: Ji-Paraná. UF:RO.

**Envolvidos (OUTRAS OCORRENCIAS CONTRA A PESSOA)**
Comunicante: ALEFE FREITAS RODRIGUES

*ENVOLVIDOS*

**Nome civil: ALEFE FREITAS RODRIGUES**
Nome social: Não informado
Presente no plantão: Sim
Nascimento: 21/02/1994, Idade: 27 anos, Gênero: Masculino
Documentos:10255377 ssp ES (RG) 015.794.542-16(CPF) 05935160474(CNH)
Filiação: Pai: Florisvaldo Rodrigues, Mãe: Sandra de Freitas.
Naturalidade:UF: Cariacica/Espirito Santo. Estado Civil: Casado(a). Escolaridade: Não informado, Apelido: Não informado
Endereço Residencial: Amarilis, 396, Green Park. Cidade/UF Ji-Paraná/RO, Telefone: (69) 99313-1395. Celular: Não informado. E-Mail: Não informado
Profissão: VENDEDOR(A). Empresa: Mercantil Nova Era. Endereço Comercial:Não informado. Telefone de Contato: Não informado
Estado Fisico: Normal. Tipo de Lesão: Não informado
**Envolvimentos: OUTRAS OCORRENCIAS CONTRA A PESSOA(Comunicante).**

*HISTÓRICO*



Compareceu a esta Especializada no dia 26/04/2021, o comunicante nos informando ser genitor João Guilherme de Souza Rodrigues, de 04 anos, que está separado da genitora dele, Ângela de Souza Turmina, há aproximadamente 03 anos. O comunicante informa que Ângela havia manifestado a vontade de mudar-se para os Estados Unidos, dizendo que tentaria o visto americano, sendo que o comunicante concordou com tal fato e concedeu autorização judicial para a viagem do filho. Ocorre que no dia 21/04/2021, Ângela embarcou juntamente com João Guilherme para o México, onde tentará de forma ilegal entrar nos Estados Unidos, contudo não comunicou a Alefe que faria tal viagem, embarcando com o filho sem seu conhecimento. O último contato com Ângela foi na madrugada de ontem, onde ela afirmou que já estava no país, foi possível visualizar que ela estava hospedada no Hotel Casa de las Flores.

Ocorrência registrada por: **KAROLINE DA SILVA GALLO** - Agente de Polícia - 98775

*DESPACHOS*



1/1

Rondônia State Government

Secretary of State for Security, Defense and Citizenship

Civil Police

Police Report

Registered on 04/26/2021 at 11:14 am at the Police Station Specialized in Assistance to Women in Ji-Paraná

Under the responsibility of the Specialized Police Service for Women in Ji-Paraná

Exclusive use for police procedure

Nature: Other occurrences against the person (consummated), Relevance: Non-Criminal. Date of the Fact: 04/17/2021. Period: Morning. Place of Fact: Home. Place Type: Private

Address of the Fact: 396 Amarylis Street, Novo Ji-Paraná. Perimeter: Urban. District: Ji-Paraná. City: Ji-Paraná. State: RO

Involved (Other occurrences against person)
Communicator: Alefe Freitas Rodrigues

Involved

Civil name: Alefe Freitas Rodrigues
Social name: Not informed
On duty: Yes
Date of Birth: 02/21/94
Age: 27 years old
Gender: Male
Documents: ████5377 SSP/ES (ID)████4.542-16 (ITIN) ██████0474 (DRIVER'S LICENCE)
Filiation: Father: Florisvaldo Rodrigues, Mother: Sandra de Freitas
Place of Birth/State: Cariacica/ES
Marial Status: Married
Education: Not informed
Surname: Not Informed
Residential Address: 396 Amaryllis Street, Green Park
City/State: Ji-Paraná/RO
Phone: +5569993131395
Mobile: Not informed
E-mail: Not informed
Profession: Salesman
Company: Mercantil Nova Era
Business Address: Not informed
Contact phone number: Not informed



### Blenda Lara
ADVOCACIA INTERNACIONAL

**FEDERAL POLICE**

**FEDERAL POLICE STATION IN JI-PARANÁ DPF/JPN/RO**

Address: Av. Engenheiro Manfreda Barata Almeida da Fonseca, n. 262, Jardim Aurélio Bernardi – CEP 76.907-524 – Ji-Paraná- Rondônia

**Statement n. 3405125/2021**

**2021.0054018-DPF/JPN/RO**

On 07/23/2021, in this DPF/JPN/RO, in the presence of Lucas Ferreira Dutra, Federal Police Officer, who determined the qualification of the ones invoveld on this legal act as:

Álefe Freitas Rodrigues, CPF: 015.794.542-16

On the following, the depoent was warned about his commitment to tell the thuth and, when inquired about the facts, he said: **THAT** once the mother of his child, Angela de Souza Turmina, said she wanted to take their son, ~~João Guilherme de Souza Rodrigues~~  J.G.&R on a vacation trip to the US; **THAT** he authorized the passport thinking that she would travel as a legal tourist and would bring the child back after the vacation, **THAT** around the 22nd of April he discovered that she had taken his son to Mexico and that after this, she entered ilegally through the US border; THAT after a few days in the US, Angela and their kid surrendered herself to the American authorities and they were arrested; **THAT** after a few days they both were set free from the US immigration, **THAT** both Angela J.G.SR and ~~João~~ live with Angela's mother in New Jersey.

With nothing else to declare, the statement was read, and being all in accordance, both parties signed.

Electronic document signed on 07/23/2021, at 17:45 pm. by Lucas Ferreira Dutra, Federal Police Officer, based on article 1o, III, of Act 11.419 of 19 of December 2006. The   autenticity   of   this   document   can   be   verifyied   at: https://www.servicos.dpf.gov.br/assinatura/app/assinatura   informing   the   following verifying code: f524d3394cd9clcfblf262a82758764a19a74570.

**BLENDA LARA**
Brasília Bar Association Number 67.041
**International Lawyer**

**Authentic Translation**

📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



POLÍCIA FEDERAL
**DELEGACIA DE POLÍCIA FEDERAL EM JI-PARANÁ - DPF/JPN/RO**
Endereço: Av Engenheiro Manfredo Barata Almeida da Fonseca, nº 262 - Jardim Aurélio Bernardi - CEP: 76907-524
- Ji-Paraná/RO

## TERMO DE DEPOIMENTO Nº 3405125/2021
### 2021.0054018-DPF/JPN/RO

No dia 23/07/2021, nesta DPF/JPN/RO, na presença de LUCAS FERREIRA DUTRA, Delegado de
Polícia Federal, que determinou a qualificação dos envolvidos neste ato:

ALEFE FREITAS RODRIGUES; CPF: 015.794.542-16

Em seguida o(a) **depoente** foi alertado do compromisso de dizer a verdade e, inquirido(a) a
respeito dos fatos, RESPONDEU: **QUE** certo dia a mãe de seu filho ANGELA DE SOUZA
TURMINA disse ao depoente que queria levar seu filho, ~~JOÃO GUILHERME TURMINA~~
~~RODRIGUES~~, para os EUA para passar férias; **QUE** emitiu o passaporte para seu filho
acreditando que ANGELA iria viajar legalmente com seu filho e que o traria de volta após o
período de férias; **QUE** no dia 22 de abril, aproximadamente, descobriu que ANGELA havia
levado seu filho até o México e que após isso entrou ilegalmente pela fronteira nos EUA;
**QUE** após alguns dia nos EUA ANGELA se entregou as autoridades americanas junto com
~~JOÃO GUILHERME~~, sendo presos; **QUE** após mais alguns dias ANGELA e ~~JOÃO GUILHERME~~
foram liberados pela imigração americana; **QUE** hoje ANGELA e ~~JOÃO GUILHERME~~ moram
com a mãe de ANGELA em New Jersey.

Nada mais havendo, este Termo de Depoimento foi lido e, achado conforme, assinado pelos
presentes.

Condutor/Testemunha
_____

Documento eletrônico assinado em 23/07/2021, às 17h45, por LUCAS FERREIRA DUTRA, Delegado de Polícia Federal, na
forma do artigo 1º, inciso III, da Lei 11.419, de 19 de dezembro de 2006. A autenticidade deste documento pode ser conferida no
site https://servicos.dpf.gov.br/assinatura/app/assinatura, informando o seguinte código verificador:
f524d3394cd9e1cfb1f262a82758764a19a74570

Physical state: normal
Type of injury: Not informed
Involvement: Other occurrences against the person (communicator)

Historic



The communicator attended this specialized police station on 26/04/2021 and informed that he was the father of ~~João Guilherme de Souza~~, 4 years old, and that he had been separated from his mother Angela de Souza Turmina for approximately three years. He also informed that Angela had expressed her desire to move to the United States, saying that she would try for an American visa, and the communicator agreed with this fact and granted judicial authorization for his son's trip. It so happens that on April 21, 2021, Angela boarded with  ~~João Guilherme~~ for Mexico, where she will try to enter the United States illegally, however she did not inform Alefe that she would make such a trip, boarding with her son without Alefe's authorization. The last contact with Angela was at dawn yesterday when she said she was already in Mexico. It was possible to see that she was staying at the Hotel Casa de Las Flores.

Occurrence registered by Karolina da Silva Gallo - Police Officer



Blenda Lara
ADVOCACIA INTERNACIONAL

Your Honor,

I, **Blenda Lara Fonseca do Nascimento**, attorney in the states of Minas Gerais and of Brasília, Federal District, Brazil, assures that the following translations are accurate according to the documents that my client gave me access for the Case n. 7010244-30.2021.8.22.0005.

This is the translation of a print screen of a conversation between Mr. Rodrigues and Mrs. Turmina (through whatsapp). On that image we can see that they talk about her travel and he asks her to return the kid, she does not answer the conversation.

**BLENDA LARA**
Brasília Bar Association Number 67,941
**International Lawyer**

**Authentic Translation**



⊙ 61 9 9855-0942      ⊙ adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF







## Blenda Lara
### ADVOCACIA INTERNACIONAL

**Alefe:** Good afternoon. Are you there?

**Angela:** Hi.

**Alefe:** Angela, where is ▮▮▮? We had an agreement that you would legally go with a visa! You lied, saying you were at your grandmother's and you took ▮▮▮ away without a warning! It was illegal! And now? In "the authorization that I signed" the maximum travel period is 90 days and the time lapse is already over! How do we do? Will you bring him to me? Will you send him?

**Angela:** ▮▮▮ is here. Your authorization is valid for 4 years, the same as the passport.

**Alefe:** ok, if you're saying...

**Alefe:** So you're not going back with him or sending him back?

(Angela didn't answer the request made by the father)

## BLENDA LARA
Brasília Bar Association Number 67,941
### International Lawyer

### Authentic Translation

📞 61 9 9855-0942      📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



**Blenda Lara**
ADVOCACIA INTERNACIONAL

Your Honor,

I, **Blenda Lara Fonseca do Nascimento**, attorney in the states of Minas Gerais and of Brasília, Federal District, Brazil, assures that the following translations are accurate according to the documents that my client delivered for the Case n. 7010244-30.2021.8.22.0005.

This is the translation of an instagram post of Angela's personal account. On her stories she admits the her followers crossing the US border with the help of a coyot.

**BLENDA LARA**
Brasília Bar Association Number 07.941
**International Lawyer**

**Authentic Translation**



Blenda Lara
ADVOCACIA INTERNACIONAL



61 9 9855-0942          adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



## Blenda Lara
ADVOCACIA INTERNACIONAL

**Translation:**

"I promise to answer"

"How did you go alone? Where have you gone through?"

I came through Mexico. Almost all my family already came, so we know a lot of people on the way, so it was easy."

## BLENDA LARA
Brasília Bar Association Number 67.941
### International Lawyer

## Authentic Translation



Angela de Souza, photo posted on Instagram 06/20/2021.





Angela de Souza, photo posted on Instagram on 06/22/2021.



Angela de Souza, photo posted on Instagram on 06/18/2021.



Angela de Souza, photo posted on Instagram on 07/01/2021.

**HONOROUBLE JUDGE OF LAW OF THE CHILDHOOD AND YOUTH COURT OF THE DISTRICT OF JI-PARANÁ/RO**

**ALEFE FREITAS RODRIGUES**, business analyst, Brazilian, married, enrolled with the CPF under number 015.704.542-16, identity no. 725377 SSP/ES, resident at Rua Amarilis, no. 396, zip code. 76901-884, Ji-Parana, Rondônia, comes before court, represented by the undersigned attorney, to file a petition to claim for:

**UNILATERAL CUSTODY C/C DISMISSAL OF FAMILY POWER C/C PROVISIONAL MEASURES GIVING UNILATERAL CUSTDOY OVER HIS MINOR CHILD**

against **ÂNGELA DE SOUZA TURMINA,** profession ignored, Brazilian, single, with identity no. 8229633, MTE/RO, CPF 015.538.302-70, passport no. 220725, resident at 555 Camelot Court, Riverton, New Jersey, United States, depending on the grounds of fact and law set out below:

### I.   PRO BONO JUSTICE

1. The Claimant was caught financially unprepared to handle with the situation described hereby. His family's income is not sufficient for the costs and other lawsuit charges, considering it provides a living standard to 3 (three) people. We inform you that they had to take a loan in order to pay for legal representation costs.

2. Based on this and according to the enclosed declaration, he claims for the benefits of pro bono justice.



**II - FACTS**

3. The Applicant and the Respondent met in June, 2015, and hold a relationship. A few months after, they decided to live together after the Respondent got to know she was pregnant in January, 2016.

4. On September 13, 2016, the Respondent gave birth to the minor, ~~Jorge~~ ~~Guilherme de Souza Rodrigues~~ (birth certificate enclosed). The relationship lasted for two more years and the separation was definitive in August, 2018. The couple kept a level of friendship and shared a de facto custody.

5. In November 2018, the Applicant begun a new relationship with Marilene Santos Ribeiro, who then lived in Cacoal, Rondônia, which is 107 km away from Ji-Paraná. In order to make the relationship possible, the Applicant moved to that city. He then agreed with the Respondent that he would see the child frequently (every weekend). As time went by, the child used to spend more time in Cacoal (with the Applicant) than in Ji-Paraná (with the Respondent). The Applicant has always been very collaborative and present in his child's life which is something that the mother herself used to recognize. As a matter of proof, we bring a social media post below:



**Angela Turmina**

Esse é o pai do meu caçula meu ex marido, ele é muito parceiro. Tenho 1 filho com ele de 3 anos, e tenho uma filha de 6 do antigo casamento. Eu e ele não estamos mais casados ele me ajuda com o meu filho e toda vez que compra algo pra ele, ele diz é pra Ela também. Ou quando da dinheiro pra comprar pro filho dele manda eu comprar pra minha filha. Ele tem inúmeros defeitos que nos fizeram não dá certo o casamento, mas sobre ser pai ele é ... Meu filho é louco por ele eu nunca imaginei que depois de tudo que passamos ele seria assim. se tornou um grande pai. Tenho muito orgulho de dizer que ele é o pai do meu filho. Obrigado **Álefe** feliz dia dos pais.



"Ângela Turmina

This is the father of my youngest, my ex-husband, he is very collaborative. We have a son of 3 years-old and I have another daughter of my first marriage. We are not married anymore, but everytime he helps me with my child, and whenever he buys something to my son, he says that it is for my eldest too. Or when he gives me money to our son, he asks me to buy things to my daughter too. He has many flaws that concurred to our marriage's end, but about he being a father... my son is crazy about him and I had never imagined that after all we had gone through, we would be like this. He became a real dad. And I am very proud to say that he is the father of my son. Thank you Alefe and happy father's day."

$$J\ G$$

6. Mrs. Marilene always treated ~~José Guilherme~~ as if he was her son were and always encouraged him to hold a relationship with her child, M~~iguel Santos~~. They consider themselves as brothers. Due to the friendship between the families, the minor had a lot of contact with both children, his affective brother and his elder sister.

M. S.

7. It is important to emphasize: as the Defendant wanted to have a life without many responsibilities, J~~osé Guilherme~~ spent most of his time with his father, even when they were in another city. Same thing applies to her daughter. Her eldest, at least once a week, slept at the family home with the brothers.

J. G.

8. In August 2020, the Applicant decided to return to Ji-Paraná permanently so that the Respondent could participate more actively in the upbringing of the child. We explain: the child was staying more in Cacoal than in Ji-Paraná and because of that the mother he was shirking her responsibilities.

9. The Claimant changed his and his wife's entire life, bringing her to another city, the family income decreased due to that, all with the aim of making this mosaic family viable and so that the child could grow up surrounded by all the love and affection of both families, maternal and paternal, in addition to the presence of both brothers.

10. As it can be seen in the attached photos, there were constant moments of union of the three children, all provided by the couple who ended up being the family support in substitution of the mother, given that the Defendant did not have emotional stability to build that structure for them. We emphasize it: due to the mother's lifestyle, who wanted to enjoy a "single life", the child was more in the care of her father and stepmother than hers. In an attached video, recorded by Defendant, it is possible to see the child's affection for the stepmother.

11. Despite this, the families lived together harmoniously and in friendship. the claimant still left his food ticket with the Defendant, which she sometimes spent at the convenience store buying drinks late at night.

12. This harmony was broken when the Respondent deceived her "friends", her ex-partner and stepmother, so that they would allow João Guilherme's passport confection. According to the Respondent's information, she wanted to take the boy on vacation in the USA. Part of the Respondent's family resides as illegal immigrants in the USA and, considering her mental health issues (depression), her mother (the child's grandmother) understood that a change of scenery for her daughter would be healthy. However, the Defendant did not tell the Applicant that she was in fact moving to the US and that she would take her son with her.

J.6.

13. The Applicant signed a travel authorization thinking only that she would legally travel to the US at some future date. He did not even had the chance of saying goodbye to the son. As soon as the passport was ready, the Respondent, surreptitiously took her son abroad. She deceived the father saying she was going to spend the weekend in a relative's nearby ranch.

14. The Defendant made a dangerous crossing between Mexico and the USA with the help of a coyote, endangering the lives of her two children! It was an unnecessary act, she had a house and a job in Brazil and her son had a whole network of family and friends around him.

15. This week, a Brazilian woman died abandoned in the desert by a group of coyotes. Imagine the risk to which children were subjected! The saddest part is that she abused the couple's good faith, pretending to be in a place, while headed to Mexico. As she did not answer the messages (prints attached), the Applicant became suspicious and went to her house, arriving there, he saw that the light had been cut off and found the travel ticket's receipt.

16. Despite the friendly relationship experienced, it is necessary to point out that the Respondent holds an unstable personality, marked by several violent episodes. The Defendant has already assaulted the Claimant twice, and in one episode used a sharp object: she hit him with a barbecue stick. Also, on another occasion, the Defendant has already damaged the property of the Claimant in one of her rages.

17. Defendant's fights are notorious in the city. In one of them, the situation was shown in local's TV broadcast. Subsequently, the episode was uploaded to theYoutube and the video reached a number of 256,000 views, ending up even for becoming a national joke, as can be seen below. at the beginning of video it is possible to see that the person recording says: "hey, old Ângela, (sic)". This demonstrates the how much the Defendant's conduct is known in the city (video attached).



Briga de mulheres em Ji Paraná viraliza nas redes sociais

256 mil visualizações · há 1 ano



Transcript: " Women fight in Ji-Paraná spreads in social media".

## AS MENINA BRIGANDO PELO PRESENTE DE DEUS / O PRESENTE DE DEUS



Transcript: "Girls fighting for the God's gift/The God's gift".

18. We can imagine the stigma that will surround this minor for growing up next to a person totally deprived of self-control. Furthermore, as proof attached, the grandmother points out that her daughter was very depressed and harming herself.

19. On one occasion, the Respondent became aware that the Respondent was working as prostitute in the city of Alta Floresta, RO. After knowing it, the Applicant, good father that he is, did not only sought out for his son, but also her daughter and brought them to live with his family. The girl remained around 20 days in his family's home.

20. As a matter of proof, we can convey the atmosphere of harmony and love that surrounds the couple, constituting a modern aspect of a mosaic family. On the other hand, it is true to say that the Respondent does not have the necessary



📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:28
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128

   



     

61 9 9855-0942                    adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



📞 61 9 9855-0942                    📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



📞 61 9 9855-0942                    📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF





📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

Num. 62551848 - Pág. 12



📞 61 9 9855-0942          📷 adv_Internacional

SCAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

requirements to continue with the custody of that child, for having endangered his well-being.

21. We emphasize: the child spent most of the time with the Applicant's family and witnesses can prove it. They went on vacation between January and February 2021, in Espírito Santo Brazil. In the photos below and in the others in annex, it is possible to verify the climate of family harmony that the Applicant provided to their children:

22. After returning from the family trip, the Applicant was surprised by the request of the Defendant to travel to the US with their child. At first he refuses, but later, in face of the Defendant's threats, that "she would go to court, because that was parental alienation", he ended up giving in.

23. He signed the authorization without knowing that it was a travel document, as he just wanted the child to have his passport. He trusted the word of the Requested that she would only take his passport and start the visa application.

24. Without the Applicant's consent, the Respondent made the crossing Mexico-USA, aided by a coyote. Upon arriving at the border, they were detained for 5 (five) days. The children were also imprisoned, including João Guilherme, who, in his innocence, tells the episode laughing, saying that "he was arrested".

25. As João Guilherme is less than 5 years old, the US legislation do not allow children to be under custody so long. So, they allow the family to enter the country. This was a recent modification due to criticism international events received by thousands of children being incarcerated in the US. It has been common to see groups of immigrants with children in arms who uses them to avoid immediate deportation, giving them time to try to convince the US government that they can stay (news attached).

26. Now let's see, she takes her child away from the safety and comfort of his home, his school, and takes him to venture out in an attempt to illegally enter another country. And more, João Guilherme had a phimosis operation scheduled by the SUS (Brazilian's Health System) for July. He lost the chance of doing this chirurgic operation due to his mother's irresponsible attitude.

27. The Claimant believes that she did not want to take the child because she wanted to have him around, but to use him as a shield that would get into the country. If she was just with the eldest daughter who is 8 years old, she would not succeed in being released under custody. The applicant suspects that the situation was planned by the maternal grandmother of the child who, knowing the legal benefit, encouraged her daughter to venture out.

28. The Applicant has sought the competent administrative bodies to resolve the question, not yet successful, for that reason files with the present request custody lawsuit in order to try to bring his son safely to Brazil so that he can return to his place of residence and be protected by his family and friends and also can resume his studies at school. Brazilian Central Authority said that she was cited

she should have returned the child by late September 17, 2021. But she did not attend it voluntary.

29. Since the international abduction, the Brazilian family has had little contact with their son abductee, which has caused the child's father a lot of stress and sadness. By your deeds, the Defendant is preventing the regular exercise of the father's rights.

30. On his son's birthday, the last 18th, the father was only able to talk to him almost dawn, because when trying to contact, none of the numbers answered the calls. The child even complained, saying that they forgot his birthday. It is a symptom of the existence of alienation parental.

### III. LAW

### INTERIM MEASURES

31. The "smoke of good law" is sustained by the fact that the father has plenty of evidence demonstrating both the Defendant's errant conduct and his ability to take care of his son and give him a home. The Defendant was not entitled to unilaterally change the place of residence of the child, much less of exposing him to the risk of an illegal crossing, using children to facilitate her entry into the country.

32. Despite having already been located abroad, the Respondent may try to flee to another locality, which is the reason for this custody request be decided as soon as possible. For the same reason, it needs to be conceded inaudita altera pars. Moreover, as the custody is provisional, this will allow the Respondent to contest the action on the merits.

### JUDGMENT JURISDICTION

33. The Respondent, in addition to violating several Brazilian internal rules, by the act of illegal removal of a minor and change of residence without the Applicant's authorization, can be criminally framed in the practice of international kidnapping.

34. International abduction occurs when one of the parents, without the consent of the other, takes the minor to another country, unilaterally changing the customary place of residence, or when, even though he/she has been authorized to travel, he/she refuses to return to the child's usual place of residence when requested.

35. The purpose of The Hague Convention on the Civil Aspects of International Abduction of Children of 1980 is to restore the children to their status quo, preserving the court of the country of his habitual residence as the competent one to judge the claim over custody, as it constitutes the natural judge where it is

assumed to be better related and closer to the evidence to be collected (art. 1st). The Convention was incorporated in Brazil by the Decree n. 3,413 of April 14, 2000.

36. On the basis of Article 1 of the Hague Convention, the court competent to decide the custody is in Ji-Paraná, the child's habitual residence.

37. In addition, the Childhood and Youth Court is competent, given that there is a violation of the Statute of the Child and Adolescent by the conduct of the Respondent.

**ON THE MERITS**

38. The relationship between ex-partners and custody management (pension, visits, care, etc.) of the child were points agreed between the parents themselves, without the need of judicial intervention, that is, there was no regulation of the guard.

39. In order to guarantee the rights and coexistence with the paternal family, it is necessary to return of a minor who is illegally staying in the United States, after being taken by the mother. The Respondent does not have the right to decide alone to change son's residence.

40. The present custody request must be analyzed under the cloak of the principle of priority guarantee of the minor. That is to say, under the cloak of fundamental rights provided for in the FC that, absolutely and as a priority, the child and adolescent have right to health, freedom and family and community life.

41. Likewise, articles 4 and 6 of the Child and Adolescent Statute remind us of the duties of the State and the community to care for the child and the adolescent. It is up to the State to look after the interests of this minor who cannot defend themselves and article 15 of the ECA also brings this.

42. Article 17 of the ECA defends the physical, psychological and moral inviolability of the child, encompassing with the preservation of the image, the identity and its spaces. Let's see then, the mother takes the innocent child to make a dangerous crossing between the US and Mexico, in the company of coyotes (many of them even kill immigrants along the way) and use it to get into the country, as an illegal and in custody. This violates all moral duties and also article 18 of the ECA that protects the child's dignity, she subjected the minor to something terrifying. We don't know the subconscious traumas that this prison can create in João Guilherme.

43. Article 22 of the ECA, in its sole paragraph, emphasizes that both parents have equal rights and shared duties and responsibilities and have safeguarded their rights to pass on their beliefs and culture to their children. The Defendant

deprived the father of this right and practices parental alienation. In breach of these duties, by virtue of of article 24, must lose family power, just as custody must be unilaterally transferred to the father, pursuant to article 35 of the ECA.

44. Article 53 of the ECA provides that the child has the right to education and that his permanence in school must be ensured. The Defendant withdrew her son from the school to take him on a dangerous adventure abroad. Parents have an obligation to enroll their children in school (article 55) and the Applicant learned that the child stays abroad at home and on his cell phone all the time, without access to education. And more, How will this infant adapt to a language that is not his own?

45. The granting of unilateral custody to the father is required, as he is the person with the best conditions to take care of the child and it is the duty of the State to take care of this Brazilian minor, for force of article 70 of the ECA.

46. First, it is essential that we know that both the father and the mother can interrupt the unilateral custody of your children, everything will depend on the case, because there is no fixed rule on the subject. That is, there is nothing that prevents the father from having the custody of his son, on the contrary, he has a family economically and emotionally structured.

47. Article 1635 of the Civil Code states that family power can be extinguished by decision court, pursuant to article 1,638. This occurs when flawns identified as serious, which constitute criminal offences. Then, exposing your own son to danger constitutes a crime under the terms of the Criminal Code (article 136).

48. Another situation that allows the loss of custody of children is the famous alienation parental control, dealt with in Law No. 12,318/10, which briefly refers to the interference in the psychological formation of the child or adolescent promoted or induced by one of the parents, the grandparents or those who have the child or adolescent under its authority, custody or surveillance so that it repudiates parent or that causes harm to the establishment or maintenance of bonds with him and his family.

49. Among the examples of acts of parental alienation is changing the residence to a distant place, without justification, aiming to make it difficult for the child or adolescent to be in contact with the other parent, with his or her relatives or with grandparents.

50. Her attitude was a sabotage that made it impossible for the Applicant to live with the child, frustrating visits or even reducing contact.

51. When we are faced with a situation of dispute over the custody of minors, essential is the application of the principle of the best interests of the children, who have all their rights protected constitutionally.

52. Within the family environment, the figure of the child and adolescent stands out because they still do not have the necessary capacity to manage their lives on their own. For this reason, they need someone, preferably the parents, who can manage their lives in a healthy way. However, the Respondent cannot even

manage the own life in a healthy way, Your Excellency, it is reckless to leave this child in your care!

53. In short, the principle of the best interests of the child and adolescent takes precedence over absolute way so that they are guaranteed the right "to life, to health, to food, education, leisure, professionalization, culture, dignity, respect and freedom and family and community life". Your Excellency, the boy was taken from his school, from his friends, from his country of nationality and brought to the US surreptitiously, illegally and dangerously, this cannot mean the best interest of the child. The mere expectation of a better life in the US does not configure it. The child had everything in Brazil, family, friends, school, access to health, that is, everything that a child can desire for its full development.

54. The child had a phimosis surgery scheduled that was missed due to abduction occurred. It should be noted that the Respondent did not prioritize the child, but the desire to "have a better life" for herself.

**REQUESTS**

That said, it is required (that):

a) Granting the benefits of free legal assistance, in accordance with the law;

b) As an emergency, inaudita altera pars, the granting of provisional unilateral custody over the minor João Guilherme de Souza Rodrigues to the Applicant, in view of the verisimilitude of the allegations and the danger of serious harm to the child;

c) As a matter of urgency, inaudita altera pars, is determined the immediate return of the minor João Guilherme de Souza Rodrigues to Brazil and his delivery to the Claimant;

d) The summons of the Respondent, by means of a rogatory letter or whatsapp, number: +1(609)676-1135, to take acknowledge of the present lawsuit and, if desired, contest it, within the legal term, under penalty of default;

e) An official letter is sent to the Federal Police informing them of the decision and requesting the repatriation or deportation of the minor;



f) On the merits, the loss of the Defendant's family power in relation to the minor João Guilherme de Souza Rodrigues, due to having exposed him to extreme danger situation and other ECA violations;

g) The Public Prosecutor's Office is summoned to act in the case, as determined by the article 178 of the CPC;

h) A social study of the case is carried out by the interprofessional team of this court;

i) Alimony is granted to the minor, to be paid by the Respondent, in the amount of R$2,000.00 (two thousand reais) per month;

j) On the merits, the request is upheld, regulating unilateral custody over the minor in favor of the Claimant;

k) the Defendant will only have the right of access the minor, ~~João Guilherme de Souza Rodrigues~~, monitored by a social worker, as she offers risks of doing the same act again; 

l) Condemnation of the defendant to pay legal costs and fees;

m) Prove the allegation by means of all the evidence admitted by law, especially documentary, testimonial, expert evidence, social study and other that eventually become necessary.

The value of R$1,000.00 (one thousand reais) is given to the case for legal purposes.

Referral for approval.

Termos em que, p. deferimento.

List of Witnesses

1 – Alex Santos Ribeiro

2 – Carlito Ferreira Machado Júnior

3 – Wisla Monteiro

4 – Keila da Silva Fogaça

Rondônia, 16th, September, 2021.

Blenda Lara

Attorney at Law



Processo Judicial Eletrônico - 1º Grau
PJe - Processo Judicial Eletrônico

21/01/2022

## Número: **7010244-30.2021.8.22.0005**

Classe: **GUARDA DE INFÂNCIA E JUVENTUDE**
Órgão julgador: **Ji-Paraná - 2ª Vara Cível**
Última distribuição : **21/09/2021**
Valor da causa: **R$ 1.000,00**
Assuntos: **Guarda**
Juízo 100% Digital? **SIM**
Segredo de justiça? **SIM**
Justiça gratuita? **SIM**
Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | | | Procurador/Terceiro vinculado |
|---|---|---|---|
| **ALEFE FREITAS RODRIGUES (REQUERENTE)** | | | **BLENDA LARA FONSECA DO NASCIMENTO (ADVOGADO)** |
| **ANGELA DE SOUZA TURMINA (REQUERIDO)** | | | **VICTOR GUILHEN MAZARO ARAUJO (ADVOGADO)** |
| Documentos | | | |
| Id. | Data | Documento | Tipo |
| 62551848 | 21/09/2021 10:42 | InicialAlefeFreitasRodrigues | PETIÇÃO |



**Blenda Lara**
ADVOCACIA INTERNACIONAL

**EXMO(A). SR(A). JUIZ(A) DE DIREITO DA VARA DA INFÂNCIA E JUVENTUDE DA COMARCA DE JI-PARANA/RONDÔNIA**

**ALEFE FREITAS RODRIGUES**, analista de negócios, brasileiro, casado, inscrito no CPF sob o número 0██████2-16, identidade n. 0██377 SSP/ES, residente e domiciliado a Rua Amarilis, n. 396, CEP. 76901-884, Ji- Parana, Rondônia, vem, por meio de sua bastante procuradora infrassinada, ajuizar a presente:

**AÇÃO DE REGULAMENTAÇÃO DE GUARDA UNILATERAL C/C DESTITUIÇÃO DO PODER FAMILIAR C/C PEDIDO DE TUTELA ANTECIPADA EM CARÁTER ANTECEDENTE**

Em face de **ÂNGELA DE SOUZA TURMINA**, profissão ignorada, brasileira, solteira, com identidade n. 8229633, MTE/RO, CPF 015.538.302-70, passaporte n. GC ██25, residente a 555 Camelot Court, Riverton, New Jersey, United States, consoante os fundamentos de fato e de direito abaixo expostos:

📞 61 9 9855-0942                    📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF





## I.   DA GRATUIDADE DE JUSTIÇA

1. O Requerente foi surpreendido pela situação descrita na exordial até mesmo financeiramente. O salário da família não comporta arcar com as custas e demais encargos do processo, servindo para manter a família de 3 (três) pessoas. Informamos que para a contratação de advogado, precisaram, inclusive, de fazer um empréstimo.

2. Por essas razões e consoante declaração em anexo, requer-se os benefícios da gratuidade de justiça.

## II.   DOS FATOS

3. O Requerente e a Requerida conheceram-se em junho de 2015 e iniciaram relacionamento que culminou em uma união estável, após a requerida descobrir estar grávida em janeiro de 2016. Após essa data passaram a coabitar e viver como casal.

4. Em 13 de setembro de 2016, o menor ~~João Guilherme de Souza Rodrigues~~ **J G S R** (certidão de nascimento em anexo), filho de ambos, nasceu. A relação do casal perdurou ainda por mais dois anos, mas em agosto de 2018, veio a separação definitiva. O casal ainda manteve uma certa relação de amizade e compartilhou, informalmente, os cuidados com o menor.

5. Em novembro de 2018, o Requerente iniciou um novo relacionamento com a senhora Marilene Santos Ribeiro, que então residia na cidade de Cacoal, Rondônia, a qual fica a 107 quilômetros de Ji-Paraná. Para possibilitar a relação e por essa área de abrangência ser também a sua área de trabalho, o Requerente mudou-se para essa cidade. Essa mudança foi de comum acordo com a Requerida e o pai via o filho toda a semana, seja nos finais de semana ou porque ele (a criança) passava semanas inteiras na cidade de Cacoal. **Ou seja, o Requerente sempre foi um pai muito presente, algo reconhecido pela própria mãe em post público de rede social:**

📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Mais relevantes ⌄



**Angela Turmina**
Esse é o pai do meu caçula meu ex marido, ele é muito parceiro. Tenho 1 filho com ele de 3 anos, e tenho uma filha de 6 do antigo casamento. Eu e ele não estamos mais casados ele me ajuda com o meu filho e toda vez que compra algo pra ele, ele diz é pra Ela também.  Ou quando da dinheiro pra comprar pro filho dele manda eu comprar pra minha filha. Ele tem inúmeros defeitos que nos fizeram não dá certo o casamento, mas sobre ser pai ele é ... Meu filho é louco por ele  eu nunca imaginei que depois de tudo que passamos ele seria assim. se tornou um grande pai. Tenho muito orgulho de dizer que ele é o pai do meu filho. Obrigado **Álefe** feliz dia dos pais.



 Escreva um comentário...

 

☏ 61 9 9855-0942                    ⊙ adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF





**Blenda Lara**
ADVOCACIA INTERNACIONAL

6. A Sra. Marilene sempre tratou o João Guilherme como se seu filho fosse e sempre incentivou a convivência dele com o irmão caçula, vez que o casal teve um filho, Miguel Santos. Em razão da amizade entre as famílias, o menor tinha muita convivência com seu irmão e com sua irmã mais velha, filha apenas da Requerida com outra pessoa.

7. Importante frisar: como a Requerida queria ter uma vida sem muitas responsabilidades, João Guilherme passava a maior parte do tempo com o pai, mesmo quando estavam em outra cidade. Isso também ocorria em relação à filha dela mais velha, a qual, ao menos uma vez por semana, dormia na casa da família com os irmãos.

8. Em agosto de 2020, o Requerente resolveu retornar a Ji-Paraná em definitivo para que a Requerida pudesse participar mais ativamente da criação do filho. **Explicamos: a criança estava ficando mais em Cacoal que em Ji-Paraná e com isso a mãe estava se ausentando de suas responsabilidades.**

9. O Requerente mudou toda sua vida e de sua esposa, trazendo-a para uma outra cidade onde, inclusive, a renda da família diminuiu, para tornar essa família plural viável e para que o filho pudesse crescer cercado de todo amor e carinho das famílias materna e paterna, além da presença de ambos os irmãos.

10. Conforme se pode observar nas fotos em anexo, eram constantes os momentos de união das três crianças, tudo isso proporcionado pelo casal que acabou por lhes ser o esteio familiar ausente do lado materno, dado que a Requerida não possuía estabilidade emocional para construir essa estrutura para eles. Frisamos: em razão do estilo de vida da mãe, que queria aproveitar a "vida de solteira", a criança ficava mais aos cuidados do pai e da madrasta que dela. Em vídeo anexo, gravado pela Requerida, é possível ver o carinho da criança pela madrasta.

11. Apesar disso, as famílias conviviam harmonicamente e em amizade. O Requerente ainda deixava o ticket de alimentação dele com a Requerida, o qual ela por vezes gastava em loja de conveniência comprando bebidas em horário tarde da noite.

12. **Essa harmonia foi rompida quando a Requerida ludibriou seus "amigos", seu ex-companheiro e a madrasta, para que permitissem a confecção do passaporte do João Guilherme. Segundo informações da Requerida, ela queria levar o menino para passar férias nos EUA. Parte da família da Requerida reside como imigrante ilegal nos EUA e, por estar em estado de depressão, a sua mãe (avó da criança) entendeu que uma mudança de ares seria salutar. Contudo, a Requerida não combinou com o pai e nem avisou que na verdade estava de mudança para os EUA e que iria levar o filho de ambos em definitivo para lá.**

📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

Num. 62551848 - Pág. 4



**Blenda Lara**
ADVOCACIA INTERNACIONAL

13. O Requerente assinou uma autorização de viagem pensando apenas que ela iria viajar legalmente para os EUA em alguma data futura. Ele não conseguiu sequer se despedir do filho. Assim que o passaporte ficou pronto, a Requerida, sorrateiramente, levou seu filho ao exterior. Ao fazer isso, fingia estar em uma chácara no interior. Ou seja, utilizou-se de perfídia para enganar o pai.

14. A Requerida fez uma perigosa travessia entre o México e os EUA com a ajuda de um coiote, pondo em risco a vida de seus dois filhos! Isso tudo sem necessidade, vez que ela tinha casa e emprego no Brasil e o filho dispunha de toda uma rede familiar e de amigos que lhe nutriam.

15. Essa semana faleceu uma brasileira abandonada no deserto por um grupo de coiotes. Imaginem o risco a que submeteu seus filhos menores! E o que é mais triste é que ela abusou da boa-fé do casal, fingindo estar em um sítio, enquanto se dirigia ao México. Por não conseguir falar com ela (prints em anexo), o Requerente desconfiou e foi até a casa, chegando lá, viu que a luz havia sido desligada e encontrou o comprovante de compra das passagens.

16. A despeito da relação amistosa vivida, é necessário apontar que a Requerida apresenta uma personalidade instável, marcada por diversos episódios violentos. A Requerida já agrediu o Requerente por duas vezes, sendo que em um episódio utilizou-se de um objeto pontiagudo: ela lhe desferiu um golpe com um espeto de churrasco. Também, em outra ocasião, a Requerida já danificou propriedade do Requerente em um de seus surtos de fúria.

17. As brigas da Requerida são notórias na cidade. Em uma delas, a situação chegou a ser exibida por rede de TV local. Posteriormente, o episódio foi inserido na rede do Youtube e o vídeo alcançou um número de 256.000 visualizações, acabando até mesmo por se tornar um meme nacional, como pode ser visto abaixo. No início do vídeo é possível ver que quem grava fala: "eh, Ângela, veia (sic)". Isso demonstra o quanto a conduta da Requerida é conhecida na cidade (vídeo em anexo).



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



## Briga de mulheres em Ji Paraná viraliza nas redes sociais

256 mil visualizações · há 1 ano

| 1,4 mil | 227 | Compartil... | Download | Salvar |

 sitecomando190
16,2 mil inscritos

INSCRITO 

Comentários  107

📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

**AS MENINA BRIGANDO PELO PRESENTE DE DEUS /O PRESENTE DE DEUS**

 

18. Podemos imaginar o estigma que vai cercar esse menor ao crescer ao lado de uma pessoa totalmente despida de autocontrole. Além disso, conforme gravação em anexo, a mãe aponta que a filha estava muito deprimida e automutilando-se.

19. Em certa ocasião, o Requerido teve ciência de que a Requerida estava prostituindo-se na cidade de Alta Floresta, RO. Ao saber disso, o Requerente, bom pai que é, não só buscou seu filho, mas também a filha dela e a trouxe para viver em seu ambiente familiar por 20 dias.

20. Com isso queremos traduzir o ambiente de harmonia e de amorosidade que cerca o casal, constituindo um moderno aspecto de família mosaico. Por outro lado, é certo dizer que a Requerida não possui os requisitos necessários para continuar com a guarda dessa criança, sendo até mesmo um perigo para seu filho.

21. Ressaltamos: a criança passava a maior parte do tempo com a família do Requerente e testemunhas comprovam. Eles saíram em férias entre janeiro e fevereiro de 2021, o Requerente levou seus dois filhos para o Espírito Santo. Nas fotos abaixo e nas outras em anexo, é possível verificar o clima de harmonia familiar que o Requerente proporcionava a seus filhos:



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



📞 61 9 9855-0942                    📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



© 61 9 9855-0942          © adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

Num. 62551848 - Pág. 8





     

61 9 9855-0942            adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjeig.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128





Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



**Blenda Lara**
ADVOCACIA INTERNACIONAL

22. No retorno da viagem de família, o Requerente foi surpreendido com o pedido da Requerida para fazer uma viagem aos EUA com o menor. Primeiramente ele se recusou, mas depois, diante das ameaças da Requerida, de que "iria entrar na justiça, porque aquilo era alienação parental", acabou cedendo.

23. Assinou a autorização sem saber que era um documento de viagem, vez que ele apenas desejava que a criança tivesse o seu passaporte. Confiou na palavra da Requerida de que ela tiraria apenas o passaporte e iria iniciar o pedido de visto de turista para a viagem deles.

24. **Sem o consentimento do Requerente e, sem ter visto, a Requerida fez a travessia México e EUA, auxiliada por um coiote. Ao chegar na fronteira, foi presa com os filhos, ficando sob custódia por 5 (cinco) dias. As crianças também ficaram encarceradas, inclusive João Guilherme, em sua inocência, conta o episódio rindo, dizendo que "foi preso".**

J. G

25. **Em razão de João Guilherme ter menos de 5 anos de idade, a legislação norteamericana permite a entrada do imigrante que por ele esteja acompanhado. Essa foi uma modificação recente em virtude das críticas internacionais recebidas por milhares de crianças estarem encarceradas nos EUA. Tem sido comum ver grupos de imigrantes com crianças de colo que as utiliza para evitar uma deportação imediata, dando tempo para tentar convencer o governo norte-americano que podem permanecer (reportagem em anexo).**

J. G

26. **Agora vejamos, ela retira o filho da segurança e do conforto do lar, da escola e leva para se aventurar em uma tentativa de entrada ilegal em outro país. E mais, João Guilherme tinha uma operação de fimose marcada pelo SUS para julho, que ele perdeu em razão da atitude irresponsável da mãe.**

J. G

27. O Requerente acredita que ela não queria levar o filho por desejar ter a presença dele, mas para o usar de escudo e conseguir entrar no país. Se ela fosse apenas com a filha mais velha que conta com 8 anos, ela não teria êxito em ser liberada sob custódia. Suspeita o requerente que a situação foi planejada pela avó materna da criança que, sabendo do benefício legal, incentivou filha a se aventurar.

28. O Requerente tem buscado os órgãos administrativos competentes para resolver a questão, não tendo sucesso ainda, por essa razão ingressa com o presente pedido de guarda de modo a tentar trazer em segurança seu filho para o Brasil para que ele possa retornar a seu local de residência e estar de novo protegido por sua rede familiar e de amigos e possa retomar seus estudos na escola. Houve informação de que a data de 17 de setembro de 2021 seria o prazo que ela teria para fazer a entrega voluntária da criança, não fazendo isso no prazo, o governo norte-americano ingressará com a ação para que ele retorne.

29. Desde a abdução internacional, a família brasileira tem tido pouco contato com o filho abduzido, o que tem causado muito stress e tristeza ao pai da criança. Por seus atos, a Requerida está impedindo o exercício regular de direito do convívio do pai em relação ao filho.

📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF





**Blenda Lara**
ADVOCACIA INTERNACIONAL

30. No aniversário do filho, dia ● último, o pai só conseguiu falar com ele quase de madrugada, porque ao tentar contato, nenhum dos telefones que a Requerida apontou como existentes atendia às ligações. A criança inclusive queixou-se, dizendo que se esqueceram do aniversário dela. É um sintoma de existência de alienação parental.

### III.   DO DIREITO

### DA TUTELA DE URGÊNCIA

31. A "fumaça do bom direito" consubstancia-se no fato de o pai ter farto material de prova anexado aos autos, demonstrando tanto a conduta errante da Requerida, quanto a sua capacidade de pai para cuidar do filho e conferir a ele um lar. A Requerida não tinha direito de modificar unilateralmente o local de residência do filho, muito menos de expô-lo ao risco de uma travessia ilegal, usando crianças para facilitar a sua entrada no país.

32. Apesar de já ter sido localizada no exterior, a Requerida pode tentar fugir para outra localidade, razão pela qual importa a apreciação do pedido de guarda na maior brevidade possível. Pela mesma razão, há necessidade de que a concessão seja *inaudita altera pars*, pelo mesmo motivo, outrossim, como a tutela é provisória, isso permitirá à Requerida contestar a ação na fase de mérito.

### DA COMPETÊNCIA DO JUÍZO

33. A Requerida, além de violar diversas normas internas brasileiras, por seu ato de remoção ilegal de menor e mudança de residência sem autorização do Requerente, pode ser enquadrada na prática de sequestro internacional, na leitura da legislação penal.

🟢 61 9 9855-0942                    📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF


Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



**Blenda Lara**
ADVOCACIA INTERNACIONAL

34. A abdução internacional ocorre quando um dos genitores, sem o consentimento do outro, leva o menor a outro país, mudando unilateralmente o local de residência habitual, ou quando, mesmo tendo sido autorizado a viajar, recusa-se a retornar para o local de residência habitual da criança ao ser solicitado.

35. O objetivo da Convenção da Haia sobre os Aspectos Civis do Sequestro Internacional de Crianças de 1980 é repor à criança seu status quo, preservando o foro do país de sua residência habitual como o competente para julgar pedido de guarda, por configurar o juízo natural onde se pressupõe sejam melhor discutidas as questões a ela referentes e mais fácil a colheita de provas (art. 1º). A Convenção foi incorporada no Brasil pelo Decreto n. 3.413 de 14 de abril de 2000.

36. Com base no artigo 1º da Convenção da Haia, o juízo competente para decidir a respeito da guarda é o de Ji-Paraná, o domicílio habitual da criança.

37. Além disso, é competente a Vara da Infância e Juventude, dado que há violação ao Estatuto da Criança e do Adolescente pela conduta da Requerida.

## DO MÉRITO

38. A relação entre os ex-companheiros e o gerenciamento da guarda (pensão, visitas, cuidados e etc) do filho foram pontos acordados entre os próprios genitores, sem necessidade de intervenção do judiciário, ou seja, não havia regulamentação da guarda.

39. De modo a garantir os direitos e a convivência com a família paterna, é necessário o retorno do menor que está em situação ilegal nos Estados Unidos, após ser levado pela mãe. A Requerida não tem o direito de decidir sozinha a mudança de residência do filho.

40. O presente pedido de guarda deve ser analisado sob o manto do princípio da garantia prioritária do menor. É dizer, sob o manto dos direitos fundamentais previstos na CF que, absoluta e prioritariamente, a criança e o adolescente tem direito à saúde, à liberdade e à convivência familiar e comunitária.

41. Da mesma forma, os artigos 4º e 6º do Estatuto da Criança e do Adolescente recordam-nos dos deveres do Estado e da comunidade de cuidar da criança e do adolescente. Cabe ao Estado zelar pelos interesses desse menor que não consegue se defender sozinho e o artigo 15 do ECA também traz isso.

📞 61 9 9855-0942          📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF





**Blenda Lara**
ADVOCACIA INTERNACIONAL

42. O artigo 17 do ECA defende a inviolabilidade física, psíquica e moral da criança, abrangendo com o isso a preservação da imagem, da identidade e de seus espaços. Vejamos então, a mãe leva a criança inocente para fazer uma travessia perigosa entre os EUA e o México, na companhia de coiotes (muitos deles até mesmo matam os imigrantes no meio do caminho) e usá-lo para conseguir entrar no país, de forma ilegal e sob custódia. Isso viola todos os deveres morais e também o artigo 18 do ECA que resguarda a dignidade da criança, ela submeteu o menor a uma situação aterrorizante. Não sabemos os traumas subconscientes que essa prisão pode gerar no João Guilherme.

43. O artigo 22 do ECA, em seu parágrafo único, ressalta que ambos os pais têm direitos iguais e deveres e responsabilidades compartilhados e têm resguardados seus direitos de transmitir a seus filhos as suas crenças e cultura. A Requerida privou o pai desse direito e pratica alienação parental. Em razão de violar esses deveres, por força do artigo 24, deve perder o poder familiar, assim como a guarda precisa ser unilateralmente transferida para o pai, nos termos do artigo 35 do ECA.

44. O artigo 53 do ECA reza que a criança tem direito à educação e que a sua permanência na escola tem de ser assegurada. A Requerida retirou seu filho da escola para levá-lo em uma aventura perigosa no exterior. Os pais têm obrigação de matricular seus filhos na escola (artigo 55) e Requerente teve notícia de que a criança fica no exterior em casa e o tempo inteiro no celular, sem acesso à educação. E mais, como será a adaptação desse infante a um idioma que não é o seu?

45. Requer-se a concessão da guarda unilateral ao pai, por ser a pessoa com melhores condições de cuidar do filho e é dever do Estado cuidar desse menor brasileiro, por força do artigo 70 do ECA.

46. Primeiramente, é primordial sabermos que tanto o pai quanto a mãe podem deter a guarda unilateral de seus filhos, tudo vai depender do caso, pois não existe uma regra engessada acerca do tema. Ou seja, não há nada que impeça o pai de ter a guarda de seu filho, ao contrário, ele tem uma família econômica e emocionalmente estruturada.

47. O artigo 1.635 do Código Civil reza que o poder familiar pode ser extinto por decisão judicial, na forma do artigo 1.638. Isso ocorre quando são atestadas faltas identificadas como graves, que configuram ilícitos penais. Ora, expor o próprio filho a perigo configura crime nos termos do Código Penal (artigo 136).

48. ==Outra situação que permite a perda da guarda dos filhos é a famosa alienação parental, tratada na Lei nº 12.318/10, que resumidamente se refere à interferência na formação psicológica da criança ou do adolescente promovida ou induzida por um dos genitores, pelos avós ou pelos que tenham a criança ou adolescente sob a sua autoridade, guarda ou vigilância para que repudie genitor ou que cause prejuízo ao estabelecimento ou à manutenção de vínculos com este e sua família.==

📞 61 9 9855-0942          📷 adv_internacional

**SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF**



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



**Blenda Lara**
ADVOCACIA INTERNACIONAL

49. **Dentre os exemplos de atos de alienação parental consta mudar o domicílio para local distante, sem justificativa, visando a dificultar a convivência da criança ou adolescente com o outro genitor, com familiares deste ou com avós.**

50. A atitude dela foi uma sabotagem que inviabilizou a convivência do Requerente com o filho, frustrando as visitas ou mesmo reduzindo o contato.

51. Quando estamos diante de uma situação de disputa pela guarda de menores, imprescindível é **a aplicação do princípio do melhor interesse dos filhos**, que têm todos os seus direitos resguardados constitucionalmente.

52. Dentro do ambiente familiar, a figura da criança e do adolescente ganha destaque por ainda não terem a capacidade necessária para gerir suas vidas por conta própria. Por tal motivo, necessitam de alguém, de preferência os genitores, que possa gerir suas vidas de maneira sadia. **Ora, a Requerida não consegue nem mesmo gerir a própria vida de forma sadia, Vossa Excelência, é uma temeridade deixar essa criança sob seus cuidados!**

53. Em suma, o princípio do melhor interesse da criança e do adolescente prima de maneira absoluta para que seja assegurado a eles o direito "à vida, à saúde, à alimentação, à educação, ao lazer, à profissionalização, à cultura, à dignidade, ao respeito e à liberdade e à convivência familiar e comunitária". Vossa Excelência, o menino foi retirado de sua escola, de seus amigos, de seu país de nacionalidade e levado aos EUA de forma subreptícia, ilegal e perigosa, isso não pode significar o melhor interesse da criança. A mera expectativa de uma vida melhor nos EUA não configura isso. A criança tinha tudo no Brasil, família, amigos, escola, acesso a saúde, ou seja, tudo o que uma criança pode desejar para seu pleno desenvolvimento.

54. **A criança tinha uma cirurgia de fimose marcada que foi perdida em razão do rapto ocorrido. É de se observar que a Requerida não priorizou o filho, mas o desejo de "ter uma vida melhor" para si mesma.**



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128



**Blenda Lara**
ADVOCACIA INTERNACIONAL

**PEDIDOS**

Isso posto, requer-se:

a) A concessão dos benefícios da assistência judiciária gratuita, na forma da lei;

b) A título de tutela de urgência, *inaudita altera pars*, o deferimento da guarda unilateral provisória do menor João Guilherme de Souza Rodrigues à parte Requerente, tendo em vista a verossimilhança das alegações e o perigo de dano grave à criança;

c) A título de tutela de urgência, *inaudita altera pars*, seja determinado o imediato retorno do menor João Guilherme de Souza Rodrigues ao Brasil e a sua entrega ao Requerente;

J.G.SR

d) A citação da Requerida, por meio de carta rogatória ou whatsapp, número: +1(609)676-1135, para tomar conhecimento da presente ação e, querendo, contestá-la, no prazo legal, sob pena de revelia;

e) Seja expedido ofício à Polícia Federal informando da decisão e requerendo a repatriação ou deportação do menor;

f) No mérito, seja determinada a perda do poder familiar da Requerida em relação ao menor João Guilherme de Souza Rodrigues, em razão de tê-lo exposto a situação de perigo extremo e demais violações ao ECA;

J.G.SR

g) Seja intimado o Ministério Público para atuar no feito, conforme determina o artigo 178 do CPC;

h) Seja realizado estudo social do caso pela equipe interprofissional deste juízo;

i) Seja deferida pensão alimentícia ao menor, a ser paga pela Requerida, no importe de R$2.000,00 (dois mil reais) mensais;

j) No mérito, seja julgado procedente o pedido, regulamentando-se a **GUARDA UNILATERAL** do menor em favor do Requerente;

k) Seja o direito de visita da Requerida ao menor, João Guilherme de Souza Rodrigues feito de forma monitorada por assistente social, vez que ela oferece riscos de novamente fazer o mesmo ato;

J.G.SR

l) A condenação da requerida ao pagamento de custas e honorários advocatícios;

m) Provar o alegado por meio de todas as provas admitidas em direito, especialmente prova documental, testemunhal, pericial, estudo social e outras que eventualmente se fizerem necessárias.

Dá-se à causa o valor de R$1.000,00 (hum mil reais) para efeitos legais.

📞 61 9 9855-0942          📷 adv_internacional

**SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF**



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

Num. 62551848 - Pág. 20



Blenda Lara
ADVOCACIA INTERNACIONAL

Termos em que, p. deferimento.

**ROL DE TESTEMUNHAS**
1 – Alex Santos Ribeiro
2 – Carlito Ferreira Machado Júnior
3 – Wisla Monteiro
4 – Keila da Silva Fogaça

Rondônia, 16 de setembro de 2021.

**Blenda Lara**
**OAB/MG 83.915**
**OAB/DF 67.941**

📞 61 9 9855-0942             📷 adv_internacional

SGAN 914, ed South Beach, Bloco B, sala 11, Asa Norte, Brasília-DF



Assinado eletronicamente por: BLENDA LARA FONSECA DO NASCIMENTO - 21/09/2021 10:42:26
http://pjepg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=21092110422668700000059885128
Número do documento: 21092110422668700000059885128

Num. 62551848 - Pág. 21

Electronic Judicial Process - 1st Instance
eJP - Electronic Judicial Process

Number: 7010244-30.2021.8.22.0005

Class: Childhood and Youth Custody
Court: Ji-Paraná - 2nd Civil Court
Date of last distribution: 09/21/2021
Value of the case: BRL 1000,00
Subjects: Guardianship
100% Digital Judgment? Yes
Justice secret? Yes
Free justice? Yes
Request for injunction or anticipation of guardianship? Yes

Parties
Alefe Freitas Rodrigues (Claimant)
Angela de Souza Turmina (Defendant)

Attorney/Third Party
Blenda Lara Fonseca do Nascimento (Lawyer)
Victor Guilhen Mazaro Araujo (Lawyer)

Documents
Id. 64847766
Date: 11/11/2021
Document: Minutes of the Hearing
Type: Minutes of the Hearing



Court of Justice of the State of Rondônia - District of Ji-Paraná
SECOND CIVIL COURT AND COURT FOR CHILDREN AND YOUTH

Conciliation Hearing
11/11/2021 11 a.m.

Process: 7010244-30.2021.8.22.0005

Class: Action for Regulation of Unilateral Guard c/c Disposal of Family Power combined with Request for Early Guardianship in a Background Character

Claimant: Alefe Freitas Rodrigues
Defendant: Angela de Souza Turmina

Present: The Honorable Judge of Law, Silvio Viana, the prosecutor Marcília Ferreira da Cunha e Castro, the author Alefe Freitas Rodriguess, the author's patron Blenda Lara, OAB/DF 67.941 (Bar Association Number), the defendant Ângela de Souza Turmina and her patron Victor Guilhen Mázaro Araújo, OAB/RO 10926 (Bar Association Number).

Occurrences: Once the audience was installed, held by Google Meet, virtual room <meet.google.com/wte-nkch-ovt>, the presence of the above-named was verified. Once the work was started, the parties, their lawyers and the Public Prosecutor were heard about the facts that motivated the filing of the action, leaving the unsuccessful conciliation. Then the Honorable Judge gave the floor to the Public Prosecutor to manifest itself on the request for an injunction, behold, the decision contained in ID No. 62886383, p. 03 postponed the analysis of the preliminary injunction request until after the citation and completion of the social study. The Public Prosecutor manifested itself in favor of granting the injunction, the reasons for which are contained in the audio-visual recording, and the Court granted the injunction in order to grant the applicant provisional custody of the child and determined that the defendant take steps to deliver the child to the same within ten days, under penalty of search and seizure, in addition to being liable for the crime defined in article 249 of the Penal Code. It was determined that this decision be communicated to the Judge Rapporteur of the Interlocutory Appeal filed by the applicant. Once the preliminary injunction is complied with, the case must be concluded for the purpose of analyzing the judgment of the case in the state in which it is found or of sanitation with the establishment of any disputed points and designation of a hearing of instruction and judgment. The occurrences of this hearing were recorded and registered in the DRS-Audiencias System. The subpoenaed presents go out." The signature of the parties was waived, pursuant to Art. 15 of Resolution No. 13/2014-PR, published in DJe 130/2014 of 07/16/2014. Just it. I, Laísse Raphaelle Rufino, Judge Adviser, drew up these minutes.

**Silvio Viana**
**Judge of Law**

Electronic Judicial Process - 2nd Instance
eJP - Electronic Judicial Process

12/02/2022

Number: 0811077-52.2021.8.22.0000
Class: Interlocutory Appeal
Court: 1st Civil Chamber
Judging Body: Judge's Office Raduan Miguel
Date of last distribution: 11/29/2021
Value of the case: BRL 1000,00
Reference process: 7010244-30.2021.8.22.0005
Subjects: Guardianship
100% Digital Judgment? No
Justice secret? Yes
Free justice? Yes
Request for injunction or anticipation of guardianship? Yes

Parties
In secret of justice (Appellant)
In secret of justice (Appellee)
Public Prosecutor of Rondônia (Legal Costs)

Attorney/Third Party
Victor Guilhen Mazaro Araujo (Lawyer)
Blenda Lara Fonseca do Nascimento (Lawyer)

Documents
Id. 14214520
Date: 12/01/2021 03:35 pm
Document: Documento-MPRO-08110775220218220000.pdf
Type: Opinion


EXHIBIT
M

Public Prosecutor of State of Rondônia
In defense of society
Attorney's Office

Opinion N° 9823/PJ-2021

FILES NO.  0811077-52.2021.8.22.0000 - INTERLOCUTORY APPEAL - GUARDIANSHIP -
CIVIL CHAMBER
Origin: 701024430.2021.8.22.0005 - Ji-Paraná -  2nd Civil Court
Appellant: Angela de Souza Turmina Arruda
Appellee: Alefe Freitas Rodrigues
Reporter: Judge Raduan Miguel

> INTERLOCUTORY APPEAL AGAINST THE DECISION THAT GRANTED THE
> PROVISIONAL CUSTODY OF THE EX-COUPLE'S CHILD TO THE FATHER, AS
> WELL AS DETERMINED THAT THE PARENT PROVIDE THE RETURN OF THE
> MINOR TO BRAZIL. APPEAL OF THE PARENT. IMPROCEDURE. PARENT WHO
> OMITTED PARENT INFORMATION AND TAKEN THE CHILD TO ANOTHER
> COUNTRY. CLANDESTINE ENTRY INTO ANOTHER COUNTRY. DETENTION FOR
> AT LEAST THREE DAYS. IRREGULAR SITUATION. RISK TO CHILDREN.
> ACCURACY OF THE COURT'S DECISION. OPINION FOR THE IMPROVEMENT
> OF THE APPEAL.

Noble Reporter,
Venerable Civil Chamber:

Angela de Souza Turmina Arruda files INTERLOCUTORY APPEAL OF INSTRUMENT
against the decision of the 2nd Civil Court of Ji-Paraná, which, in the records of the action for
regulation of custody combined with the removal of family power against him brought by
Alefe Freitas Rodrigues (case no. 701024430.2021.8.22.0005), granted the provisional
custody of the couple's son, João G. D.S.R., as well as determined that the appellant arrange
for his return to Brazil.

J. G.S.R.

This is the content of the Conciliation Minutes describing the conclusion of the decision that
granted the injunction, consisting of the modification of the custody of the minor, verbis:

> …]    Installed    the    audience,    held    by    Google    Meet,    virtual    room
> <meet.google.com/wtenkchovt> the presence of those named above was verified.
> Once the work was started, the parties, their lawyers and the Public Prosecutor were
> heard about the facts that motivated the filing of the action, leaving the conciliation
> fruitless. Afterwards, the Honorable Judge gave the floor to the Public Prosecutor's
> so that it could manifest itself as to the request for an injunction, behold, the decision
> contained in ID n° 62886383, p. 03 postponed the analysis of the preliminary
> injunction until after the citation and completion of the social study. The Public
> Prosecutor's Office manifested itself in favor of granting the injunction, the reasons
> for which are contained in the audio-visual recording, **and the Court granted the
> injunction in order to attribute to the applicant the provisional custody of the
> child and determined that the defendant takes the measures to hand him over**

**to the same within ten days, under penalty of search and seizure, in addition to answering for the crime typified in article 249 of the Penal Code.** It was determined that this decision be communicated to the Judge Reporter of the Interlocutory Appeal filed by the applicant. Once the preliminary injunction is complied with, the case must be concluded for the purpose of analyzing the judgment of the case in the state in which it is found or of sanitation with the establishment of any disputed points and designation of a hearing of instruction and judgment. The occurrences of this hearing were recorded and registered in the DRSAaudiencias System. The subpoenaed presents go out."

The appellant's reasons for appeal were thus summarized by the Eminent Reporter:

Reports in the appeal reasons that the parties maintained love relationship in a stable union from which the minor J. G. D. S. was born, however, after almost two years of his birth, the couple separated.

It argues that paternal responsibilities, as well as custody of the child, were kept informally.

He maintains that, despite having decided to travel with his children and having residing in the United States, at no time prevented the appellee from talking to the minor.

He acknowledges that he did not seek authorization from the appellee to establishing residence with the child in another country, which gave rise to the filing of the custody action

It emphasizes that the child is inserted in a new social context, studying, making friends, having a routine and living actively with your family.

It alleges that the aggravated decision that granted the father custody provisional of the infant and his return to Brazil, did not take into account the interests of the child and the psychological damage that can be caused by the separation from the mother. Requires the granting of suspensive effect to the appeal, in order to prevent the infant's immediate return to Brazil and, on the merits, the provision of the instrument grievance, with the maintenance of the minor with his parent in the United States.

The Reporter, Judge Isaías Fonseca Moraes, granted suspensive effect to the appeal, in order to determine that the custody of the child J. G. D. S. remains with his mother, until the final judgment of the present appeal.

The appellee petitioned in the case file asking for reconsideration of the decision, alleging the competence of Judge Miguel Filho to consider the matter, due to prevention.

Subsequently, the case for prevention was redistributed to the Judge Rapporteur Raduan Miguel Filho, who ordered the summons to the Attorney General's Office for a manifestation, and the case reached this Office of the Attorney General.

I reported.

Immediately, despite the appellant's nonconformity, I have that his grievance, despite being KNOWN, must be IMPROVED.

In fact, from what has been found so far, it can be seen that, when he was in Brazil, the child was under the de facto custody of both parents, despite the fact that they were already separated, and there was nothing to discredit the conduct of both.

However, the appellant omitted information from the appellee when she asked him for authorization for her son's travel and, without his consent (aggravated), hired a clandestine crossing service from Mexico to the USA, aided by a so-called "coyote". It should also be noted that she and the child were detained in the US for at least three days and, despite currently allegedly being at the home of relatives there, they are still seeking to regularize their situation.

The appellant herself admitted that she did not seek the consent of the aggravated to take the son to another country, which gave rise to the filing of the custody action by him and the preliminary injunction. The appellant herself reiterated in a hearing that she took her son without the father's consent to the USA clandestinely, than if infers his reckless attitude towards the safety and interests of the child.

Hence the single learned judgment, at the same hearing, has rightly decided to grant the preliminary injunction for the purpose of granting the applicant/aggravated the provisional custody of the child and determined that the defendant/aggravating party take the measures to deliver it to the parent.

It is worth pointing out part of the reasoning made at the hearing by the learned singular court, for whom the child was unduly removed from the custody of the applicant by an act of bad faith by the defendant who, in view of the good relationship she had with him, whom she considered an excellent father (as extracted from messages made by her on social networks), she should have started the transition process, so that the father himself participated and until the end agreed, and not lightly take the son from his custody and take him clandestinely to another country.

Emphasizing that the clandestine entry made by the appellant with her son to the USA was illegal, she recalled well the singular judgment that she is in a transitional situation, a situation not only illegal, but criminal, which also puts the safety of the son who is also there in the same condition.

Without neglecting, the judgment continued, that such clandestine entry into the USA through Mexico could have even brought more drastic consequences to the minor.

THAT, without further ado, the Public Prosecutor of the State of Rondônia argues that the appeal be KNOWN, but, on the merits, NOT PROVIDED.

It's the Opinion.

Porto Velho, December 1, 2021.

JULIO CESAR DO AMARAL THOMÉ
Justice Attorney

Judicial Power of the State of Rondônia
Court of Justice of Rondônia
Ji-Paraná - 2nd Civil Court
595 Brasil Avenue, Nova Brasília, Zip Code 76908-594, Ji-Paraná

7010244-30.2021.8.22.0005- Guardianship

CLAIMANT - A.F.R., CPF (ITIN) 01579454216

LAWYER FOR THE CLAIMANT: BLENDA LARA FONSECA DO NASCIMENTO, BAR
ASSOCIATION UNKNOWN NUMBER

DEFENDANT - A.D. S.T, CPF (ITIN)  01553830270

LAWYER FOR THE DEFENDANT: VICTOR GUILHEN MAZARO ARAUJO, OAB RO10926
(BAR ASSOCIATION NUMBER)

### DISPATCH

This is a Unilateral Guard Regulatory Action combined with Removal of Family Power
proposed by ALEFE FREITAS RODRIGUES against ÂNGELA DE SOUZA TURMINA
regarding her son J.G.D.S.R., born on the ●th of ███████ 2016.

The plaintiff's request appeared in the case file at Id. 65802838, where he proposes that
video calls be made every day at 12:30 pm, to maintain contact between him and the child.

Thus, in view of the attachment of the petition and the allegations contained therein, the
requested party should be seen to knowledge and manifestation, as well as in case of
disagreement with the proposal, inform dates, schedules and frequency of contacts, within
05 (five) days.

However, I warn that the defendant, who now holds the custody, is careful to refrain from the
practice of parental alienation.

In accordance with Article 2 of Law no. 12.318/10, are exemplary forms of parental
alienation:

> Art. 2 An act of parental alienation is considered to be interference in the
> psychological formation of the child or adolescent promoted or induced by one of the
> parents, by the grandparents or by those who have the child or adolescent under
> their authority, custody or surveillance so that they repudiate parent or that causes
> damage to the establishment or maintenance of ties with him.

Single paragraph. Examples of forms of parental alienation, in addition to the acts declared
by the judge or verified by expertise, practiced directly or with the help of third parties, are:

I - carry out a campaign to disqualify the parent's conduct in the exercise of paternity or
maternity;

EXHIBIT
N

II - hinder the exercise of parental authority;

III - make it difficult for a child or adolescent to have contact with the parent;

IV - make it difficult to exercise the regulated right to family life;

V - deliberately omitting relevant personal information about the child or adolescent from the parent, including school, medical and address changes;

VI - file a false complaint against the parent, against his or her relatives or against grandparents, to prevent or hinder their coexistence with the child or adolescent;

VII - move the domicile to a distant place, without justification, aiming to make it difficult for the child or adolescent to live with the other parent, with his or her relatives or with grandparents.

If the practice of parental alienation by either party is evidenced in the records, I will apply the necessary measures to preserve the psychological integrity of the child, as determined by Article 4 of Law no. 12.318/10 or other more severe measures, in accordance with art. 6 of the same Law, which provides:

Art. 6 Characterized typical acts of parental alienation or any conduct that makes it difficult for the child or adolescent to live with a parent, in an autonomous or incidental action, the judge may, cumulatively or not, without prejudice to the resulting civil or criminal liability and the wide use of procedural instruments capable of inhibiting or attenuating its effects, according to the seriousness of the case:

I - declare the occurrence of parental alienation and warn the alienator;

II - expand the family coexistence regime in favor of the alienated parent;

III - stipulate a fine to the alienator;

IV - determine psychological and/or biopsychosocial follow-up;

V - determine the change of custody to shared custody or its inversion;

VI - determine the precautionary establishment of the child's or adolescent's domicile;

VII - declare the suspension of parental authority.

Single paragraph. Characterized as an abusive change of address, unfeasibility or obstruction of family life, the judge may also reverse the obligation to take or remove the child or adolescent from the parent's residence, on the occasion of alternating periods of family coexistence.

Without prejudice, I invite the parties to reflect on the possibility of resolving the disputed issue through conciliation, since the agreement built by the parties optimizes gains or

minimizes losses in view of the time that the process may take to complete, as well as because it proves to be in the production of true justice. In this context, I hope that the collaborative spirit of lawyers will cooperate in this ideal of justice, since they are also responsible for the peaceful resolution of conflicts.

I also emphasize that the parties may, consensually, have other forms under the circumstances.

This time, once the deadline has elapsed, the records are forwarded to the Public Prosecutor's Office, within 05 (five) days, regardless of a new conclusion.

Afterwards, the case file is concluded for deliberation.

Practice as necessary.

Summon up.

Ji-Paraná/RO, December 6, 2021

Fábio Batista da Silva

Judge of Law

Electronic Judicial Process - 1st Instance
eJP - Electronic Judicial Process

01/24/2022

Number: 7010244-30.2021.8.22.0005
Class: Childhood and Youth Custody
Court: Ji-Paraná - 2nd Civil Court
Date of last distribution: 09/21/2021
Value of the case: BRL 1000,00
Subjects: Guardianship
100% Digital Judgment? Yes
Justice secret? Yes
Free justice? Yes
Request for injunction or anticipation of guardianship? Yes

Parties
Alefe Freitas Rodrigues (Claimant)
Angela de Souza Turmina (Defendant)

Attorney/Third Party
Blenda Lara Fonseca do Nascimento (Lawyer)
Victor Guilhen Mazaro Araujo (Lawyer)

Documents
Id. 66060862
Date: 12/06/2021
Document: Dispatch
Type: Dispatch

+1 (609) 676-1135 - Angela's Telephone

Angela: I've made up my mind I would send him back if I realized I can't give him everything he deserves.

Angela: But here I can give him whatever he wants.

Angela: It hurts me a lot to know how difficult this is for you.

Alefe: Angela, this also hurts me a lot. I prefer not to talk about it to avoid fights.

Alefe: You have your opinion and I have mine. Unfortunately we will never agree.



16:29
◀ Instagram

‹ 20   +1 (609) 676-1135

seg., 21 de jun.

E eu coloquei na minha cabeça que o dia que ele sentisse falta de não conseguir ficar eu ia da um jeito de mandar ele
23:19

Mas do contrário aqui eu posso dar tudo que ele quer, a vida que ele pode ter aqui
23:19

Mas me dói mto saber o quanto é difícil pra vocês acredite nisso !
23:20

Então Angela, esse é outro assunto que tbm nos fere muito, tanto q nem entro nele contigo pra n gerar discussão ou algo do tipo!
23:20 ✓✓

Vc tem sua opinião, nós temos as nossas e infelizmente elas não batem e nunca vão bater!
23:20 ✓✓

**Number: 0811077-52.2021.8.22.0000**

**Class:**INTERLOCUTORY APPEAL

**Collegiate Judging Body:**1st Civil Chamber

**Judging Body:**Office Des. Raduan Miguel

**Last distribution :**11/29/2021

**Cause value:**BRL 1,000.00

**Reporter:**RADUAN MIGUEL FILHO

**Reference process:**7010244-30.2021.8.22.0005

**Matters:**Guard

100% Digital Judgment? NO

Justice secret? YEA

Free justice? YEA

Request for preliminary injunction or preliminary injunction? YEA

Electronic Judicial Process - 2nd Degree PJe - Electronic Judicial Process

Parties Prosecutor/In secret of justice (APPEALANT) VICTOR GUILHEN MAZARO ARAUJO

(LAWYER) In secret of justice (APPEAL) BLENDA LARA FONSECA DO NASCIMENTO

(LAWYER) MPRO (PUBLIC PROSECUTION OFFICE OF RONDÔNIA) (LEGISLATION COSTS)


Documents

Document Judgment certificate, Summary, Report, Vote, Judgment.



**Judiciary of the State of Rondônia**

**1st Civil Chamber Judgment Summary of Session n. 136 – by videoconference**

**FILES N. 0811077-52.2021.8.22.0000**

**CLASS:**INTERLOCUTORY APPEAL (PJE)

**AGGRAVATING:**A. OF STA

**ATTORNEY:**VICTOR GUILHEN MÁZARO ARAÚJO - RO10926

**APPELLEED:**THE. FR

**ATTORNEY:**BLENDA LARA FONSECA DO NASCIMENTO - MG83915

**REPORTER:**JUDGE RADUAN MIGUEL FILHO

**DATE OF DISTRIBUTION:**11/17/2021

**REDISTRIBUTED BY PREVENTION ON 11/29/2021**

Agenda no. 136 made available in the Electronic Justice Gazette n. 18 of 01/28/2022, considering the publication date of 01/31/2022, pursuant to article 4, § 3, of Law 11,419 of 12/19/2006 and Resolution no. 007/2007-PR. President: Ex. Judge Raduan Miguel Filho Judges: Hon. Des. Raduan Miguel Filho – Rapporteur Excellency. Des. Rowilson Teixeira Hon. Des. Samsão Saldanha Attorney General: Edmilson José de Matos Fonseca.

Note: Lawyer Blenda Lara Fonseca do Nascimento (OAB/MG 83915) spoke orally in favor of the appellee

THE. FR DECISION I CERTIFY that the distinguished 1st Civil Chamber, when considering the present case, in session by videoconference, rendered the following decision: "APPEAL NOT GRANTED IN TERMS OF THE VOTE OF THE RAPPORTEUR, UNANIMOUSLY. "I give faith. Porto Velho, February 8, 2022. Bel. Lucas Oliveira Rodrigues 2G CCIB/CPE Session Assistant replacing

SUMMARY Instrument grievance. Guard regulation action. Emergency protection. Moving domicile to another country. Absence of consent. Provisional guard. Best interest of the child. Legal requirements. Demonstration. Having found that the parties exercised joint custody of the child, who had the house of both parents in Brazil as their habitual residence, the abrupt change of domicile to another country, without the parent's consent or judicial authorization, violates the right of coexistence between the father and son. Absence in the records of evidence that discredits the parent's conduct, nor any demonstration of risk for the infant to remain under its provisional custody, in the best interest of the child,

STATE OF RONDÔNIA

JUDICIAL POWER

COURT OF JUSTICE

1st Civil Chamber / Office Des. Raduan Miguel

Case: 0811077-52.2021.8.22.0000 - INTERLOCUTORY APPEAL (202)

Rapporteur: RADUAN MIGUEL FILHO

Distribution date: 11/29/2021 12:09:34

Judgment date: 02/08/2022

Active Pole: In secrecy of justice and others

Lawyer for the APPELLANT: VICTOR GUILHEN MAZARO ARAUJO - RO10926-A

Passive Pole: In secrecy of justice and others

Lawyer for the APPELLEE: BLENDA LARA FONSECA DO NASCIMENTO - MG83915

## REPORT

This is an interlocutory appeal filed by Ângela DST in view of the decision handed down by the judge of the 2nd Civil Court of the Ji-Paraná district, who, in the case records of the action to regulate custody cumulated with dismissal of family power filed by Álefe FR, granted the preliminary injunction and assigned the appellee the provisional custody of the son J GDSR, determining that the defendant, now aggravating, surrender the child within 10 days, under penalty of search and seizure, in addition to answering for the crime typified in art. 249 of the Penal Code.

In its reasons, initially, it postulates for the concession of free justice, under the argument that it is not able to pay the procedural costs without this harming its subsistence.

On the merits, it reports that the parties lived in a stable union, during which the child J GDSR was born, however, two years after birth, he informs that the couple separated and had been informally maintaining custody and other responsibilities with the child, talking about the problems in the relationship and communication with the victim, attributing to him the commission of psychological aggressions.

She adds that, due to financial difficulties in Brazil, she chose to move to the United States, in search of better work opportunities, recognizing that she did not obtain authorization from the appellee to take up residence with his son in another country, which motivated the entry of action.

However, it states that it did not take advantage of the child to enter the United States, nor did it prevent the appellee from communicating with the infant during this transition period, bearing in mind that, at any sign of the child's unhappiness, due to missing the paternal family, he will return to Brazil.

Regarding the appellate decision, she points out that the judge a quo, when granting provisional custody to the appellee and determining the return to Brazil within a short period (10 days), did not take into account the interests of the child and the psychological damages of separating mother and child. , pointing out that the child is already inserted in a new social context, attending school, church and making friends, the danger of irreparable damage in abruptly withdrawing from this routine being evident.

If the decision is upheld, she emphasizes that he will have no other option but to return with the children to Brazil, as she knows that the child will not be able to stay away from the mother, harming the entire process of their legalization in the United States and preventing any eventual return. .

On the other hand, she understands that there is no risk of irreversibility in keeping the child with her, since the process can proceed normally, with the carrying out of a social study by letter rogatory and evidentiary instruction, in order to find out who has the best conditions for exercise custody of the child.

Allied to this, she argues that art. 13, subparagraph "b", of the Hague Convention prohibits the return of the child if there is a serious risk to his physical or mental integrity, which is the case, noting that the psychological report at the origin indicated that a change of routine, at this time, can trigger psychological shocks in the minor.

In the end, she fights for the granting of suspensive effect to the appeal and, on the merits, the appealed decision be reformed, in order to keep the child in its provisional custody, in the United States, until the action is resolved.

Summoned to prove the alleged hyposufficiency or to collect the appeal preparation, the appellant attached proof of payment (Id. 14031125).

The feat was distributed by lot to the rapporteur of judge Isaias Fonseca Moraes, who received the appeal and granted the suspensive effect, pursuant to the decision of Id. 14039548.

Then, the appellee manifested itself in the case file, reporting the occurrence of prevention (Id. 14136114), which is why the appeal was redistributed for prevention to my rapporteur and determined to send the case to the Attorney General's Office (Id. 14194163 ), who, in an opinion (Id. 14214520), stated that he was aware and did not grant the grievance.

In counter-minute, the appellee initially fights for the nullity of the decision (Id. 14039548), because the judge Isaias is not competent to analyze the case. It states that the appellant's lawyer was aware of prevention and, maliciously, used the distribution by lot to obtain the suspension of the decision of the first degree,

which, clearly, caused him damage, since he has not seen his son for six months. and in an attempt to reverse illegal subtraction.

On the merits, he alleges that the accusations of aggression imputed by the appellant are untrue, noting that she acknowledged that she lied to the appellee about the change of residence to the United States and, mainly, about the illegal crossing guided by a coyote, as well as, in view of the possibility of being deported, she married an American she met on the internet, and there is no information that such a relationship is true.

It emphasizes that the appellant, in the social interview carried out at the origin, did not point out behavior that discredits the conduct of the appellee as a father, and even admitted that he and the stepmother have a great relationship with the child, so that the psychological report attached to this appeal does not can be considered, insofar as it is produced unilaterally, in order to meet the interests of only one of the parties, given that, contrary to what was reported by the professional, the child misses the father and the family in Brazil, saying that is a stable person, has a steady job, home and own vehicle, reinforcing that his wife and stepson also nurture affection and affection for the child and have an intimate relationship with him, that is, there is a favorable environment for the minor to be able to develop in a healthy way.

It also highlights that, in addition to the affective relationship with the paternal family, the child also had friends, school and a routine in Brazil, which was abruptly modified with the attitude of the aggravating person. He explains that her son has lived in the same city for five years and has only been in another country for six months, speaking another language, and there is no question of adaptation with such a recent change.

Regarding the situation of the appellant in the United States, he says it is extremely precarious and temporary, as she is in the process of legalizing his home with his son in the country, arguing that one of the parents does not have the right to unilaterally change the place of residence. child's behavior, especially when the parent is present.

Regarding art. 13, item "b", of the Hague Convention, invoked by the appellant, says that it does not apply to the case, as the discomfort related to the return cannot be considered a serious risk to the physical and psychological integrity of the child, being in the best interests of the child. return to Brazil, in order to preserve their cultural ties and residence of origin.

In the end, it fights for the dismissal of the appeal and the conviction of the appellant to pay a fine for litigation in bad faith. Furthermore, it requires that he be authorized to go to the United States to pick up his child, in compliance with the injunction that granted him provisional custody.

It's the report.

VOTE

**JUDGE RADUAN MIGUEL FILHO**

If the admissibility requirements are present, I am aware of the appeal.

Initially, with regard to the harmful defendant by the appellee, I point out that, although the deed was distributed by lot to the judge Isaías, it appears that he recognized his incompetence and the case was properly redistributed for prevention to the preventive rapporteur.

Thus, with this judgment on the merits of the interlocutory appeal, on this occasion, I understand that the claim of nullity of the initial decision (Id. 14039548), due to incompetence, loses its object, which is why I consider the analysis of the referred to preliminary, because it will be of no use to the parties, at this moment, to deal with the incompetence of the magistrate who has already recognized his incompetence due to the prevention of another magistrate, who, by the way, accepted the competence.

Regarding the analysis of the appeal, I record that the appeal controversy is limited to analyzing the correctness (or not) of the contested decision, which granted injunctive relief in favor of the appellee/plaintiff and granted him the provisional custody of the son João GDSR, determining that the appellant/defendant delivers the child within 10 days, under penalty of search and seizure.

Thus, the discussion of the appeal must be limited to the limits defined by art. 300 of the CPC, according to which:

[...] urgent relief will be granted when there are elements that show the probability of the right and the danger of damage or risk to the useful result of the process.

It means to say that we are faced with a question submitted to the so-called summary cognition, of a precarious nature, exercised without the exhaustion of the adversary system by the parties and without the in-depth examination of the theses raised by the parties, under penalty of prejudice on the merits.

Well then. At the origin, there is an action to regulate the unilateral custody of J GDSR (5 years), filed by the appellee against the appellant.

The records show that, since the marital separation (mid-2018), the parties had de facto joint custody of the child. As informed by both at the origin (Id. 64054701), the child moved freely between the parents' homes, without established days and visiting hours.

Still, the parties described that they had a relationship of friendship and mutual trust to deal with matters related to the child, nothing indicating that they discredited the conduct of the other as a father/mother, emphasizing, in this regard, the information provided by the appellant to the social worker, that the aggrieved was always an excellent father, present and participative, as well as he always had a reliable relationship with the child's stepmother.

However, said friendly bond, established between the parties, was affected with the change of the appellant, accompanied by the son, to the United States, which motivated the filing of the action in question.

Regarding the change of domicile to the foreign country, it is undisputed that the appellant omitted information from the appellee, asking him for authorization to withdraw his passport and travel abroad on vacation with his son (Id. 62571384 - origin), however, without the consent of the parent, entered that country illegally, aided by a "coyote", with the objective of securing housing.

That is, although she was in the possession of the child and with authorization to travel on vacation, the appellant recognizes that she did not communicate the appellee, nor did she obtain his consent, for the change of residence of the child in common.

It happens that, if none of the parents has, individually, the custody of the child, it cannot be expected that the mother obtains, through the procedure provided for in art. 84 of the Child and Adolescent Statute, the de facto possession of the minor so that he can live with him abroad, without the consent of the father and in the absence of a judicial provision that would grant him unilateral custody.

It can be said that, if both parties exercised joint custody of the child, who had as his habitual residence the house of the two parents in Ji-Paraná, the sudden change of residence to another country, without the parent's authorization, in effect, violates the right of coexistence between father and son.

According to art. 1,583, §2, of the Civil Code, it is understood by shared custody:

[...] joint responsibility and the exercise of rights and duties of the father and mother who do not live under the same roof, concerning the family power of the children in common.

In this perspective, the family power - of which both parties are holders - involves the authorization or denial for the children to change their permanent residence (art. 1634, V, of the Civil Code), in the case of a decision that must be taken jointly by the guardians.

In this sense, I list a summary of the judgment carried out by the Court of Justice of São Paulo, in a case similar to the one in the case file:

INSTRUMENT APPEAL. GUARD MODIFICATION ACTION. URGENCY PROTECTION. Decision that granted the provisional guardianship claimed by the parent to prevent the change of the domicile of the common child unilaterally by the mother. Nonconformity. misplacement. SHARED GUARD.

Regime established in past divorce proceedings. Joint exercise of rights and duties concerning family power, which involves authorization or denial for the offspring to change their place of residence to another Municipality. Intelligence of articles 1,583, §2, and 1,634, V, both of the Civil Code. Concrete case in which there was no prior consent from the father, who was only informed of the change. BEST INTEREST OF THE CHILD. In shared custody, the city considered the

base of housing will be the one that best meets the interests of the children. Art intelligence. 1583, §3, of the Civil Code. [...] Absence of evidence, at this procedural moment, that the move to Valinhos SP, located approximately 560 kilometers away from that location, will bring benefits. Warning to the mother about the consequences of unreasonable non-compliance with the custody clause. Decision maintained. RESOURCE NOT PROVIDED.

(TJSP. AI No. 2277075-39.2019.8.26.0000, Relª Desª TELLES, Rosangela, 2nd Chamber of Private Law, pub. 8/5/2020)

In this case, the situation established between the parties is undoubtedly extremely delicate, mainly due to the geographic distance (including difficulty of access, as it is in another country) and the way in which the change of domicile took place.

However, it is necessary to keep in mind that, in a custody action, the rights of the parents are not protected, but rather the interests of the minor involved.

Having said that, at this point, what can be extracted from the file is that the child, since birth (2016), has lived in Ji-Paraná, where he lived actively with both parents, had a routine, as well as close affective bonds. with the paternal family, noting that the minor was even on medical appointments for the correction of phimosis (Id. 14136405), circumstances that point to the probability of the right invoked by the appellee.

On the other hand, the safe and stable family and social environment known to the child was, in fact, abruptly modified by the appellant who, recklessly, entered the United States illegally, accompanied by the child in question, to go there. try to find new housing.

It is said "try" because, as recognized by the appellant, she is still in the process of legalization, that is, both she and her son are currently in a transitory, precarious and unstable situation in that country.

Although the appellant claims that the child is already inserted in a new social context, attending school and church, it is necessary to consider that the documents attached to this appeal are recent (11/2021) compared to the time the child lived in his habitual residence. Brazilian.

In this regard, it is worth mentioning that the Hague Convention, ratified by Brazil through Decree 3,413/2000, provides for measures to avoid and resolve situations in which children or adolescents have their right to live with one of the withdrawn parents.

In this sense, the observations of Mônica Sifuentes, cited by Ana Carla Harmatiuk Matos, are punctual and enlightening for the case under discussion, namely:

[...] It was established by the member states, after long discussions, that the best solution to the conflict would be the return of the child to the place of his last residence, so that the judge of that country decides on who should be given custody. It is not a question, as is erroneously supposed, of returning it to the

other parent, but of referring it to the competent authority, since that is where the child had his life, his circle of friends, the school, the neighborhood. The judge or local authority undoubtedly has the best means of gathering evidence and assessing which parent should keep the child.

(SIFUENTES, Mônica. Interparental kidnapping: the Brazilian experience in the application of the Hague Convention of 1989. Revista da SJRJ, Rio de Janeiro, n. 25, p. 135-144, 2009) - emphasis

The author, in the aforementioned article, continues with the observation that time is essential to keep the objective proposed by the Convention, because "if it takes a long time to provide for the return of the child or adolescent, their family and community coexistence will already have been in a long time". altered, greatly harming the context of the one that must be protected as a priority".

Regarding the prohibition of the child's return if there is a serious risk to his physical or psychological integrity, provided for in art. 13, subparagraph "b", of the Convention, Dr. Ana Carla, mentioned above, adds that said exception must be understood in a humanitarian character, aiming to prevent the child from being sent to a dangerous or abusive family, to a social or national environment dangerous, which is not the case here.

In this regard, I note that the clinical evaluation supported by the appellant (Id. 13985766), at this moment, is devoid of probative value, insofar as it is carried out unilaterally by the party, by an American professional hired by her.

In addition, the narrative that the child was afraid of the father is not consistent with the other evidence in the case, including the statements made by the appellant herself to the social worker of the court, in the sense that the paternal-filial relationship has always been close. and positive (Id. 14136763 – page 2/9).

Also, regarding the allegation of alleged adaptation of the child in the foreign country, I emphasize that the STJ's understanding, when judging cases of search and seizure based on the Hague Convention, is that the immediate return of the minor to the country of habitual residence, to decide possible disputes about custody, represents a measure that best serves the interests of the child, namely:

**INTERNATIONAL AND CIVIL PROCEDURE. SPECIAL RESOURCES. ACTION OF SEARCH, SEIZURE AND REFUND PROPOSED BY THE UNION. THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD abduction. DECREE 3,413/2000. NEW RETENTION. NEED TO RETURN THE CHILD TO THE COUNTRY OF USUAL RESIDENCE. [...] APPLICATION OF ART. 12 OF THE HAGUE CONVENTION: LESS THAN ONE YEAR BETWEEN THE DATE OF THE TRANSFER OR IMPROPER RETENTION OF THE CHILD AND THE BEGINNING OF THE REPATRIATION PROCESS**

13. As stated by the judgment under appeal, the appellant's unlawful practice, corresponding, specifically, to the removal of the minor from Brazil, the country of his residence, without the father's consent is unquestionable.

14. Furthermore, it is equally undoubted that no one year has elapsed between the date of the illicit transfer/retention (departure from the country) and the start of the administrative or judicial procedure (request for the return of the child).

[...]

15. The case in question fits the hypothesis described in art. 12 of the Convention, which establishes the immediate return of the child when less than 1 (one) year has elapsed between the date of the transfer or improper retention and the start of the repatriation process in the State that is housing the child, as stated in the judgment under appeal.

16. The Convention accepts the presumption that the immediate return of the unlawfully abducted person to the country of habitual residence – natural judgment for eventual disputes about custody and Family Law – represents a measure that best serves the interests of the child.

[...] (REsp n. 1.723.068/RS, Reporting of the Min. BENJAMIN, Herman, Second Panel, judged 9/8/2020) - underlined)

In this way, from all that has been exposed, I reinforce that the right and best interest of the parents is not being protected, but that of the child involved, who was removed from the family and social environment in which his life developed.

It is true that the analysis of the controversy, at this moment, is restricted to the existence or not of the legal requirements for the maintenance of the protection granted, whose judgment of merit will depend on the full exercise of the adversary system and the full defense, with the production of all the evidence that are necessary, in particular, a social study with the child, in order to find out who has the best conditions to exercise unilateral custody.

That is, in this narrow way of the grievance, considering the minor's habitual residence, the way in which the change of domicile took place, the passage of time, the circumstances presented in the case file and the legislation pertinent to the case, I believe that the most appropriate is the maintenance of the appealed decision, because, in the current stage, it is the one that best contemplates the interests of the child, without prejudice, as already mentioned, of any new

deliberation by the judge of origin in the opposite direction, if based on new elements that emerged during the instruction of the main fact.

Thus, for the time being, in view of the reasons set out above, I consider the contested decision to be correct and appropriate to the case, in the context of summary cognition, which granted provisional custody to the appellee and determined the return of the child, since the probability of the right invoked and the risk of harm.

Finally, despite the appellee's allegations, I do not understand that the absence of information on prevention in the interlocutory appeal, nor the appellant's allegations, by themselves, constitute an attempt to deceive the court, which is why I reject the application request fine for bad faith litigation.

In view of the foregoing, I deny the appeal.

Therefore, on the grounds now spent in this vote, I revoke the suspensive effect attributed to the appeal, so that the appealed decision has its effects immediately restored.

It's like voting.

### SUMMARY

Instrument grievance. Guard regulation action. Emergency protection. Moving domicile to another country. Absence of consent. Provisional guard. Best interest of the child. Legal requirements. Demonstration. Having found that the parties exercised joint custody of the child, who had the house of both parents in Brazil as their habitual residence, the abrupt change of domicile to another country, without the parent's consent or judicial authorization, violates the right of coexistence between the father and son.

If there is no evidence in the case file that discredits the parent's conduct, nor does it demonstrate a risk for the infant to remain under its provisional custody, in the best interest of the child, the granting of provisional custody to the victim must be maintained and the determination of return of the child to the place of his/her last residence.

### JUDGMENT

Having seen, reported and discussed these records, the Magistrates of the 1st Civil Chamber of the Court of Justice of the State of Rondônia agree, in accordance with the minutes of judgments and the shorthand notes, in, APPEAL NOT PROVIDED IN THE TERMS OF THE RAPPORTEUR'S VOTE, UNANIMOUSLY.

Porto Velho, February 08, 2022

Office Des. Raduan Miguel / Judge RADUAN MIGUEL FILHO REPORTER



Processo Judicial Eletrônico - 2º Grau
PJe - Processo Judicial Eletrônico

14/02/2022

## Número: **0811077-52.2021.8.22.0000**

Classe: **AGRAVO DE INSTRUMENTO**
Órgão julgador colegiado: **1ª Câmara Cível**
Órgão julgador: **Gabinete Des. Raduan Miguel**
Última distribuição : **29/11/2021**
Valor da causa: **R$ 1.000,00**
**Relator: RADUAN MIGUEL FILHO**
Processo referência: **7010244-30.2021.8.22.0005**
Assuntos: **Guarda**
Juízo 100% Digital? **NÃO**
Segredo de justiça? **SIM**
Justiça gratuita? **SIM**
Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **Em segredo de justiça (AGRAVANTE)** | **VICTOR GUILHEN MAZARO ARAUJO (ADVOGADO)** |
| **Em segredo de justiça (AGRAVADO)** | **BLENDA LARA FONSECA DO NASCIMENTO (ADVOGADO)** |
| **MPRO (MINISTÉRIO PÚBLICO DE RONDÔNIA) (CUSTOS LEGIS)** | |

| Documentos | | | |
|---|---|---|---|
| Id. | Data | Documento | Tipo |
| 14696526 | 09/02/2022 07:52 | Certidão de julgamento | CERTIDÃO |



**Poder Judiciário do Estado de Rondônia**

**1ª Câmara Cível**

**Súmula de Julgamento da Sessão n. 136– por videoconferência**

**AUTOS N. 0811077-52.2021.8.22.0000**

CLASSE: AGRAVO DE INSTRUMENTO (PJE)

**AGRAVANTE: A. DE S. T. A.**

ADVOGADO(A): VICTOR GUILHEN MÁZARO ARAÚJO – RO10926

**AGRAVADO : Á. F. R.**

ADVOGADO(A): BLENDA LARA FONSECA DO NASCIMENTO - MG83915

**RELATOR : DESEMBARGADOR RADUAN MIGUEL FILHO**

DATA DA DISTRIBUIÇÃO: 17/11/2021

REDISTRIBUÍDO POR PREVENÇÃO EM 29/11/2021

---

**Pauta n. 136**disponibilizada no Diário da Justiça Eletrônico n. 18de 28/01/2022, considerando-se como data da **publicação o dia 31/01/2022**, nos termos do artigo 4º, § 3º, da Lei 11.419 de 19/12/2006 e Resolução n. 007/2007-PR.

---

Presidente: Exmo. Desembargador Raduan Miguel Filho

---

**Julgadores:**

Exmo. Des. Raduan Miguel Filho– **Relator**

Exmo. Des. Rowilson Teixeira

Exmo. Des. Sansão Saldanha

**Procurador de Justiça:**Edmilson José de Matos Fonseca

---



**Obs.:**Manifestou oralmente a advogada Blenda Lara Fonseca do Nascimento (OAB/MG 83915), em favor do agravado Á. F. R.

## DECISÃO

**CERTIFICO**que a egrégia 1ª Câmara Cível ao apreciar o presente processo, em sessão por videoconferência, proferiu a seguinte decisão:**"RECURSO NÃOPROVIDO NOS TERMOS DO VOTO DO RELATOR, À UNANIMIDADE ."**Dou fé. Porto Velho, 08de fevereirode 2022.

Bel. **Lucas Oliveira Rodrigues**

Assistente de Sessão da CCÍVEL/CPE 2G em substituição



 Processo Judicial Eletrônico - 2º Grau
PJe - Processo Judicial Eletrônico

14/02/2022

## Número: **0811077-52.2021.8.22.0000**

Classe: **AGRAVO DE INSTRUMENTO**
Órgão julgador colegiado: **1ª Câmara Cível**
Órgão julgador: **Gabinete Des. Raduan Miguel**
Última distribuição : **29/11/2021**
Valor da causa: **R$ 1.000,00**
**Relator: RADUAN MIGUEL FILHO**
Processo referência: **7010244-30.2021.8.22.0005**
Assuntos: **Guarda**
Juízo 100% Digital? **NÃO**
Segredo de justiça? **SIM**
Justiça gratuita? **SIM**
Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **Em segredo de justiça (AGRAVANTE)** | **VICTOR GUILHEN MAZARO ARAUJO (ADVOGADO)** |
| **Em segredo de justiça (AGRAVADO)** | **BLENDA LARA FONSECA DO NASCIMENTO (ADVOGADO)** |
| **MPRO (MINISTÉRIO PÚBLICO DE RONDÔNIA) (CUSTOS LEGIS)** | |

| Documentos | | | |
|---|---|---|---|
| Id. | Data | Documento | Tipo |
| 14334489 | 14/02/2022 12:26 | Voto do Magistrado | VOTO |

VOTO

DESEMBARGADOR RADUAN MIGUEL FILHO

Presentes os requisitos de admissibilidade, conheço do recurso.

Inicialmente, a respeito da prejudicial arguida pelo agravado, pontuo que, embora o feito tenha sido distribuído por sorteio ao desembargador Isaias, verifica-se que ele reconheceu a sua incompetência e os autos foram devidamente redistribuídos por prevenção ao relator prevento.

Dessa forma, com este julgamento de mérito do agravo de instrumento, nesta oportunidade, entendo que a pretensão de nulidade da decisão inicial acostada (Id. 14039548), por vício de incompetência, perde seu objeto, razão pela qual tenho por prejudicada a análise da referida preliminar, porque utilidade alguma resultará às partes, neste momento, tratar da incompetência do magistrado que já reconheceu sua incompetência em razão de prevenção de outro magistrado, que, aliás, aceitou a competência.

A propósito da análise do recurso, registro que a controvérsia recursal cinge-se em analisar o acerto (ou não) da decisão recorrida, que concedeu tutela antecipada em favor do agravado/autor e deferiu-lhe a guarda provisória do filho ██ G. D. S. R., determinando que a agravante/requerida entregue a criança no prazo de 10 dias, sob pena de busca e apreensão.

Assim, a discussão do recurso deve se circunscrever aos limites definidos pelo art. 300 do CPC, segundo o qual:

> [...] a tutela de urgência será concedida quando houver elementos que evidenciem a probabilidade do direito e o perigo de dano ou o risco ao resultado útil do processo.

Significa dizer que se está diante de questão submetida à denominada cognição sumária, de natureza precária, exercida sem o exaurimento do contraditório pelas partes e sem o exame aprofundado das teses suscitadas pelas partes, sob pena de prejulgamento do mérito.

Pois bem. Cuida-se, na origem, de ação de regulamentação de guarda unilateral de ██ G. D. S. R. (5 anos), ajuizada pelo agravado em face da agravante.

Consta nos autos que, desde a separação conjugal (meados de 2018), as partes mantinham a guarda de fato do filho de forma compartilhada. Segundo informado por ambos na origem (Id. 64054701), a criança transitava de forma livre entre as residências dos genitores, sem dias e horários de visitas estabelecidos.

Ainda, as partes descreveram que possuíam uma relação de amizade e confiança mútuas para tratar sobre os assuntos relacionados ao filho, nada apontando que desabonasse a conduta do outro como pai/mãe, ressaltando-se, quanto a isso, a informação prestada pela agravante à assistente social, de que o agravado sempre foi um excelente pai, presente e participativo, assim como sempre teve um relacionamento confiável com a madrasta da criança.

Contudo, referido vínculo amigável, estabelecido entre as partes, foi afetado com a mudança da agravante, acompanhada do filho, para os Estados Unidos, o que motivou o ingresso da ação em questão.



Assinado eletronicamente por: RADUAN MIGUEL FILHO - 14/02/2022 12:26:20
http://pjesg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=22021412262026700000014253837
Número do documento: 22021412262026700000014253837

A respeito da alteração de domicílio para o país estrangeiro, resulta incontroverso que a agravante omitiu informações do agravado, pedindo-lhe autorização para retirar o passaporte e viajar de férias com o filho para o exterior (Id. 62571384 - origem), porém, sem o consentimento do genitor, ingressou naquele país de forma ilegal, auxiliada por "coiote", com o objetivo de fixar moradia.

Ou seja, embora estivesse na posse do filho e com autorização para viagem de férias, a agravante reconhece que não comunicou o agravado, tampouco obteve seu consentimento, para a mudança de residência do filho em comum.

Ocorre que, se nenhum dos pais possui, individualmente, a guarda da criança, não se pode pretender que a mãe obtenha, por meio do procedimento previsto no art. 84 do Estatuto da Criança e do Adolescente, a posse de fato do menor para que este passe a viver com ela no exterior, sem o consentimento do pai e ausente provimento judicial que lhe deferisse a guarda unilateral.

É de dizer que, se ambas as partes exerciam a guarda compartilhada do filho, que possuía como residência habitual a casa dos dois genitores em Ji-Paraná, a mudança repentina de moradia para outro país, sem a autorização do genitor, com efeito, viola o direito de convivência entre pai e filho.

Segundo o art. 1.583, §2º, do Código Civil, compreende-se por guarda compartilhada:

> [...] a responsabilização conjunta e o exercício de direitos e deveres do pai e da mãe que não vivam sob o mesmo teto, concernentes ao poder familiar dos filhos em comum.

Nessa perspectiva, o poder familiar – do qual são titulares ambas as partes – envolve a autorização ou a negativa para que os filhos mudem sua residência permanente (art. 1.634, V, do Código Civil), tratando-se de decisão que deve ser tomada conjuntamente pelos guardiões.

Nesse sentido, colaciono ementa de julgamento realizado pelo Tribunal de Justiça de São Paulo, em caso semelhante ao dos autos:

> AGRAVO DE INSTRUMENTO. AÇÃO DE MODIFICAÇÃO DE GUARDA. TUTELA DE URGÊNCIA. Decisão que deferiu a tutela provisória pleiteada pelo genitor para impedir a alteração do domicílio do filho comum unilateralmente pela genitora. Inconformismo. Descabimento. GUARDA COMPARTILHADA. Regime estabelecido em ação de divórcio pretérito. **Exercício conjunto de direitos e deveres concernentes ao poder familiar, o qual envolve a autorização ou a negativa para que a prole altere o local da residência para outro Município. Inteligência dos artigos 1.583, §2º, e 1.634, V, ambos do Código Civil. Caso concreto em que não houve consentimento prévio do pai, que apenas foi comunicado da mudança. MELHOR INTERESSE DA CRIANÇA**. Na guarda compartilhada, a cidade considerada base de moradia será a que melhor atender aos interesses dos filhos. Inteligência do art. 1.583, §3º, do Código Civil. [...] Ausência de indícios, neste momento processual, de que a mudança para Valinhos SP, localizada a aproximadamente 560 quilômetros de distância daquela localidade, lhe trará benefícios. Advertência à mãe acerca das consequências do descumprimento imotivado de cláusula de guarda. Decisão mantida. RECURSO NÃO PROVIDO.
>
> (TJSP. AI nº 2277075-39.2019.8.26.0000, Relª Desª TELLES, Rosangela, 2ª Câmara de Direito Privado, pub. 8/5/2020)



Na hipótese, a situação instaurada entre as partes, sem dúvida, é extremamente delicada, sobretudo em razão da distância geográfica (inclusive dificuldade de acesso, por ser em outro país) e da forma como se deu a mudança de domicílio.

Todavia, é preciso ter em mente que, numa ação de guarda, não se tutela o direito dos genitores, mas sim, precipuamente, os interesses do menor envolvido.

Dito isso, neste momento, o que se extrai dos autos é que a criança, desde o seu nascimento (2016), residia em Ji-Paraná, onde convivia de forma ativa com ambos os genitores, tinha uma rotina, assim como vínculos afetivos estreitos com a família paterna, destacando-se que o menor estava, inclusive, com agendamento médico para correção de fimose (Id. 14136405), circunstâncias que apontam para a probabilidade do direito invocado pelo agravado.

Por outro lado, tem-se que o ambiente familiar e social, seguro e estável, conhecido pela criança, de fato, foi abruptamente modificado pela agravante que, de maneira temerária, ingressou ilegalmente nos Estados Unidos, acompanhada do filho em questão, para ali tentar fixar nova moradia.

Diz-se "tentar" porque, como reconhecido pela agravante, ela ainda está em processo de legalização, isto é, tanto ela, quanto o filho, atualmente, encontram-se em situação transitória, precária e instável naquele país.

Conquanto a agravante afirme que a criança já está inserida em um novo contexto social, frequentando escola e igreja, é preciso ponderar que os documentos acostados neste recurso são recentes (11/2021) se comparados ao tempo em que a criança conviveu em sua residência habitual brasileira.

A respeito do assunto, é oportuno mencionar que a Convenção de Haia, ratificada pelo Brasil por meio do Decreto 3.413/2000, prevê medidas para evitar e solucionar situações nas quais crianças ou adolescentes têm seu direito de convivência com um dos pais subtraído.

Nesse sentido, as observações de Mônica Sifuentes, citadas por Ana Carla Harmatiuk Matos, são pontuais e esclarecedoras para o caso em debate, a saber:

> [...] Ficou estabelecido pelos estados-membros, após longas discussões, que a **melhor solução para o conflito seria o retorno da criança ao local de sua última residência, para que o juiz daquele país decida sobre quem deverá ser atribuída a guarda. Não se trata, como erroneamente se supõe, de devolvê-la ao outro genitor, mas de encaminhá-la à autoridade competente, pois é ali que a criança tinha sua vida, seu círculo de amizades, a escola, a vizinhança. O juiz ou a autoridade local dispõe, sem dúvida, de melhores meios para colher provas e avaliar qual dos pais deve ficar com o menor.**
>
> (SIFUENTES, Mônica. Sequestro interparental: a experiência brasileira na aplicação da Convenção da Haia de 1989. Revista da SJRJ, Rio de Janeiro, n. 25, p. 135-144, 2009) - grifei

A autora, no mencionado artigo, prossegue com a observação de que o tempo é fundamental para guardar o objetivo proposto pela Convenção, porquanto se "se tarda na prestação jurisdicional de devolução da criança ou adolescente, sua convivência familiar e comunitária já terá sido em muito alterada, prejudicando enormemente o contexto daquele que se deve prioritariamente tutelar".

No tocante à vedação do retorno da criança se houver a existência de um risco grave a sua integridade física ou psíquica, prevista no art. 13, alínea "b", da Convenção, a Dra. Ana Carla, supracitada, acrescenta que referida exceção deve ser entendida em caráter humanitário, visando a evitar que a criança seja enviada a uma família perigosa ou abusiva, a um ambiente social ou nacional perigoso, o que não se verifica no caso.



Quanto a isso, consigno que a avaliação clínica acostada pela agravante (Id. 13985766), neste momento, é desprovida de valor probatório, na medida em que realizada unilateralmente pela parte, por profissional americana contratada por ela.

Ademais, a narrativa de que a criança estaria com medo do pai não se coaduna com as demais provas dos autos, inclusive, com as declarações dadas pela própria agravante à assistente social do juízo, no sentido de que a relação paterno-filial sempre foi próxima e positiva (Id. 14136763 – pág. 2/9).

Ainda, sobre a alegação de suposta adaptação da criança no país estrangeiro, destaco que o entendimento do STJ, ao julgar casos de busca e apreensão embasados na Convenção de Haia, é de que o retorno imediato do menor ao país da residência habitual, para decidir eventuais controvérsias sobre a guarda, representa providência que melhor atende ao interesse da criança, a saber:

> INTERNACIONAL E PROCESSUAL CIVIL. RECURSOS ESPECIAIS. AÇÃO DE BUSCA, APREENSÃO E RESTITUIÇÃO PROPOSTA PELA UNIÃO. CONVENÇÃO DE HAIA SOBRE OS ASPECTOS CIVIS DO SEQUESTRO INTERNACIONAL DE CRIANÇAS. DECRETO 3.413/2000. RETENÇÃO NOVA. NECESSIDADE DE RETORNO DA CRIANÇA AO PAÍS DE RESIDÊNCIA HABITUAL.
>
> [...] **APLICAÇÃO DO ART. 12 DA CONVENÇÃO DE HAIA: DECURSO DE MENOS DE UM ANO ENTRE A DATA DA TRANSFERÊNCIA OU RETENÇÃO INDEVIDA DA CRIANÇA E O INÍCIO DO PROCESSO DE REPATRIAÇÃO**
>
> 13. Consoante afirmado pelo acórdão recorrido, é inquestionável a prática de ato ilícito pela recorrente, correspondente, de modo específico, à retirada do menor da Espanha, país de sua residência, sem consentimento do pai.
>
> 14. Ademais, igualmente indubitável é a ausência de transcurso de um ano entre a data da transferência/retenção ilícita (saída do país) e a do início do procedimento administrativo ou judicial (pedido de retorno da criança).
>
> [...]
>
> 15. O caso em questão enquadra-se na hipótese descrita no **art. 12 da Convenção, que estabelece imediata devolução da criança quando tiver decorrido menos de 1 (um) ano entre a data da transferência ou retenção indevida e a de início do processo de repatriação no Estado que estiver abrigando a criança,** como afirmou o acórdão recorrido.
>
> 16. **A Convenção acolhe a presunção de que o retorno imediato do ilicitamente subtraído ao país de residência habitual – juízo natural para eventuais controvérsias sobre guarda e Direito de Família – representa providência que melhor atende ao interesse da criança.**
>
> [...] (REsp n. 1.723.068/RS, Rel. Min. BENJAMIN, Herman, Segunda Turma, julg. 8/9/2020) - grifei)

Dessa forma, de tudo o que foi exposto, reforço que não está sendo tutelado o direito e melhor interesse dos genitores, mas sim o da criança envolvida, que foi retirada do ambiente familiar e social em que sua vida se desenvolveu.

É certo que a análise da controvérsia, neste momento, restringe-se à existência ou não dos requisitos legais para a manutenção da tutela concedida, cujo julgamento de mérito dependerá do pleno


Assinado eletronicamente por: RADUAN MIGUEL FILHO - 14/02/2022 12:26:20
http://pjesg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=22021412262026700000014253837
Número do documento: 22021412262026700000014253837

exercício do contraditório e da ampla defesa, com a produção de todas as provas que se fizerem necessárias, em especial, estudo social com a criança, a fim de averiguar quem possui as melhores condições para exercer a guarda unilateral.

Ou seja, nessa via estreita do agravo, considerando a residência habitual do menor, a forma como se deu a mudança de domicílio, o decurso de tempo, as circunstâncias apresentadas nos autos e a legislação pertinente ao caso, entendo que o mais adequado seja a manutenção da decisão agravada, pois, no atual estágio, é a que melhor contempla os interesses da criança, sem prejuízo, como já dito, de eventual nova deliberação pelo juiz de origem em sentido contrário, caso embasado em novos elementos surgidos no decorrer da instrução do feito principal.

Assim, por ora, diante dos fundamentos acima declinados, tenho como correta e adequada ao caso, neste momento processual, a decisão recorrida que, em sede de cognição sumária, deferiu a guarda provisória ao agravado e determinou o retorno da criança, porquanto evidenciada a probabilidade do direito invocado e o risco de dano.

Por fim, a despeito das alegações do agravado, não entendo que a ausência de informação sobre a prevenção na peça do agravo, tampouco as alegações da agravante, por si só, configuram tentativa de ludibriar o juízo, razão pela qual indefiro o pedido de aplicação de multa por litigância de má-fé.

Ante o exposto, nego provimento ao recurso.

Por conseguinte, pelos fundamentos ora despendidos neste voto, revogo o efeito suspensivo atribuído ao recurso, para o fim de que a decisão agravada tenha seus efeitos imediatamente restabelecidos.

É como voto.



 Processo Judicial Eletrônico - 2º Grau
PJe - Processo Judicial Eletrônico

14/02/2022

Número: **0811077-52.2021.8.22.0000**

Classe: **AGRAVO DE INSTRUMENTO**
Órgão julgador colegiado: **1ª Câmara Cível**
Órgão julgador: **Gabinete Des. Raduan Miguel**
Última distribuição : **29/11/2021**
Valor da causa: **R$ 1.000,00**
**Relator: RADUAN MIGUEL FILHO**
Processo referência: **7010244-30.2021.8.22.0005**
Assuntos: **Guarda**
Juízo 100% Digital? **NÃO**
Segredo de justiça? **SIM**
Justiça gratuita? **SIM**
Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **Em segredo de justiça (AGRAVANTE)** | **VICTOR GUILHEN MAZARO ARAUJO (ADVOGADO)** |
| **Em segredo de justiça (AGRAVADO)** | **BLENDA LARA FONSECA DO NASCIMENTO (ADVOGADO)** |
| **MPRO (MINISTÉRIO PÚBLICO DE RONDÔNIA) (CUSTOS LEGIS)** | |

| Documentos | | | |
|---|---|---|---|
| Id. | Data | Documento | Tipo |
| 14334488 | 14/02/2022 12:26 | Relatório | RELATÓRIO |

## RELATÓRIO

Trata-se de agravo de instrumento interposto por Ângela D. S. T. em face da decisão proferida pelo juiz da 2ª Vara Cível da comarca de Ji-Paraná que, nos autos da ação de regulamentação de guarda cumulada com destituição do poder familiar ajuizada por Álefe F. R., deferiu o pedido liminar e atribuiu ao agravado a guarda provisória do filho J●● G. D. S. R., determinando que a requerida, ora agravante, entregue a criança no prazo de 10 dias, sob pena de busca e apreensão, além de responder pelo crime tipificado no art. 249 do Código Penal.

Em suas razões, inicialmente, postula pela concessão da justiça gratuita, sob o argumento de que não tem condições de arcar com as custas processuais sem que isso prejudique a sua subsistência.

No mérito, relata que as partes conviveram em união estável, período no qual nasceu a criança J●● G. D. S. R., contudo, dois anos após o nascimento, informa que o casal se separou e vinham mantendo de forma informal a guarda e demais responsabilidades com o filho, discorrendo a respeito dos problemas na relação e comunicação com o agravado, imputando-lhe o cometimento de agressões psicológicas.

Aduz que, em razão de dificuldades financeiras no Brasil, optou por se mudar para os Estados Unidos, na busca de melhores oportunidades de trabalho, reconhecendo que não obteve autorização junto ao agravado para fixar residência com o filho noutro país, o que motivou o ingresso da ação.

Contudo, afirma que não se aproveitou do filho para ingressar nos Estados Unidos, tampouco impediu que o agravado se comunicasse com o infante nesse período de transição, tendo em mente que, a qualquer sinal de infelicidade da criança, por saudade da família paterna, retornará para o Brasil.

Sobre a decisão agravada, salienta que o juiz *a quo*, ao conceder a guarda provisória ao agravado e determinar o retorno ao Brasil em prazo exíguo (10 dias), não levou em consideração os interesses da criança e os danos psicológicos de separar mãe e filho, pontuando que a criança já está inserida em um novo contexto social, frequentando escola, igreja e fazendo amigos, sendo evidente o perigo de dano irreparável em retirá-lo abruptamente dessa rotina.

Se mantida a decisão, destaca que não terá outra opção a não ser retornar com os filhos para o Brasil, pois sabe que a criança não terá condições de ficar longe da mãe, prejudicando todo o processo de legalização deles nos Estados Unidos e impedindo eventual retorno.

Por outro lado, entende que não há risco de irreversibilidade na manutenção do filho com ela, uma vez que o processo poderá prosseguir normalmente, com a realização de estudo social por carta rogatória e instrução probatória, a fim de averiguar quem possui as melhores condições de exercer a guarda da criança.

Aliado a isso, argumenta que o art. 13, alínea "b", da Convenção de Haia veda o retorno da criança se houver a existência de um risco grave a sua integridade física ou psíquica, o que é o caso, destacando que o laudo psicológico acostado na origem apontou que uma mudança de rotina, neste momento, poderá desencadear abalos psicológicos no menor.

Ao final, pugna pela concessão de efeito suspensivo ao recurso e, no mérito, seja reformada a decisão agravada, a fim de manter a criança sob a sua guarda provisória, nos Estados Unidos, até o deslinde da ação.

Intimada para comprovar a hipossuficiência alegada ou recolher o preparo recursal, a agravante acostou comprovante de pagamento (Id. 14031125).


Assinado eletronicamente por: RADUAN MIGUEL FILHO - 14/02/2022 12:26:20
http://pjesg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=22021412262044900000014253836
Número do documento: 22021412262044900000014253836

O feito foi distribuído por sorteio à relatoria do desembargador Isaias Fonseca Moraes, que recebeu o recurso e deferiu o efeito suspensivo, nos termos da decisão de Id. 14039548.

Em seguida, o agravado manifestou-se nos autos, noticiando a ocorrência de prevenção (Id. 14136114), razão pela qual o recurso foi redistribuído por prevenção à minha relatoria e determinada a remessa dos autos à Procuradoria-Geral de Justiça (Id. 14194163), que, em parecer (Id. 14214520), manifestou-se pelo conhecimento e não provimento do agravo.

Em contraminuta o agravado pugna, inicialmente, pela nulidade da decisão (Id. 14039548), em razão de o desembargador Isaias não ser competente para analisar os autos. Afirma que o advogado da agravante tinha ciência da prevenção e, maliciosamente, valeu-se da distribuição por sorteio para conseguir a suspensão da decisão de primeiro grau, o que, nitidamente, causou-lhe prejuízo, pois está há seis meses sem ver o filho e na tentativa de reverter a subtração ilegal.

No mérito, alega que as acusações de agressões imputadas pela agravante são inverídicas, salientando que ela reconheceu que mentiu para o agravado sobre a mudança de residência para os Estados Unidos e, principalmente, sobre a travessia ilegal guiada por coiote, bem como, diante da possibilidade de ser deportada, casou-se com um americano que conheceu na *internet*, não havendo informações de que tal relacionamento seja verídico.

Ressalta que a agravante, na entrevista social realizada na origem, não apontou comportamento que desabone a conduta do agravado como pai, inclusive, admitiu que ele e a madrasta possuem uma ótima relação com a criança, de modo que o laudo psicológico juntado neste recurso não pode ser considerado, na medida em que produzido de forma unilateral, a fim de atender os interesses apenas de uma das partes, sendo certo que, ao contrário do relatado pela profissional, a criança sente falta do pai e da família no Brasil, dizendo que é uma pessoa estável, possui emprego fixo, casa e veículo próprios, reforçando que a sua esposa e seu enteado também nutrem afeto e carinho pela criança e possuem uma relação íntima com ela, ou seja, há um ambiente propício para que o menor possa se desenvolver de forma saudável.

Ainda, destaca que, além da relação afetiva com a família paterna, a criança também tinha amigos, escola e uma rotina no Brasil, a qual foi modificada bruscamente com a atitude da agravante. Esclarece que o filho morava há cinco anos na mesma cidade e está apenas há seis meses em outro país, com outro idioma, não havendo se falar em adaptação com uma mudança tão recente.

Sobre a situação da agravante nos Estados Unidos, diz ser extremamente precária e temporária, na medida em que está em processo de legalização da sua moradia com o filho no país, argumentando que um dos genitores não têm o direito de mudar unilateralmente o local de residência habitual da criança, sobretudo quando esta possui um pai presente.

A respeito do art. 13, alínea "b", da Convenção de Haia, invocado pela agravante, diz que não se aplica ao caso, pois os incômodos relacionados ao retorno não podem ser considerados grave risco à integridade física e psíquica do filho, sendo do melhor interesse da criança o regresso ao Brasil, a fim de preservar seus laços culturais e residência de origem.

Ao final, pugna pelo não provimento do agravo e a condenação da agravante ao pagamento de multa por litigância de má-fé. Ainda, requer que seja autorizada sua ida aos Estados Unidos para buscar o filho, em cumprimento à liminar que lhe concedeu a guarda provisória.

É o relatório.



 Processo Judicial Eletrônico - 2º Grau
PJe - Processo Judicial Eletrônico

14/02/2022

## Número: **0811077-52.2021.8.22.0000**

Classe: **AGRAVO DE INSTRUMENTO**
Órgão julgador colegiado: **1ª Câmara Cível**
Órgão julgador: **Gabinete Des. Raduan Miguel**
Última distribuição : **29/11/2021**
Valor da causa: **R$ 1.000,00**
**Relator: RADUAN MIGUEL FILHO**
Processo referência: **7010244-30.2021.8.22.0005**
Assuntos: **Guarda**
Juízo 100% Digital? **NÃO**
Segredo de justiça? **SIM**
Justiça gratuita? **SIM**
Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **Em segredo de justiça (AGRAVANTE)** | **VICTOR GUILHEN MAZARO ARAUJO (ADVOGADO)** |
| **Em segredo de justiça (AGRAVADO)** | **BLENDA LARA FONSECA DO NASCIMENTO (ADVOGADO)** |
| **MPRO (MINISTÉRIO PÚBLICO DE RONDÔNIA) (CUSTOS LEGIS)** | |

| Documentos | | | |
|---|---|---|---|
| Id. | Data | Documento | Tipo |
| 14676691 | 14/02/2022 12:26 | Ementa | EMENTA |

EMENTA

*Agravo de instrumento. Ação de regulamentação de guarda. Tutela de urgência. Mudança de domicílio para outro país. Ausência de consentimento. Guarda provisória. Melhor interesse da criança. Requisitos legais. Demonstração.*

Constatado que as partes exerciam a guarda compartilhada do filho, que possuía como residência habitual a casa de ambos os genitores no Brasil, a mudança abrupta de domicílio para outro país, sem o consentimento do genitor ou autorização judicial, viola o direito de convivência entre pai e filho.

Ausentes nos autos indícios de prova que desabone a conduta do genitor, tampouco demonstração de risco para o infante em permanecer sob a sua guarda provisória, em atenção ao melhor interesse da criança, deve ser mantida a concessão da guarda provisória ao agravado e a determinação de retorno da criança ao local de sua última residência.

 Processo Judicial Eletrônico - 2º Grau
PJe - Processo Judicial Eletrônico

14/02/2022

Número: **0811077-52.2021.8.22.0000**

Classe: **AGRAVO DE INSTRUMENTO**
Órgão julgador colegiado: **1ª Câmara Cível**
Órgão julgador: **Gabinete Des. Raduan Miguel**
Última distribuição : **29/11/2021**
Valor da causa: **R$ 1.000,00**
**Relator: RADUAN MIGUEL FILHO**
Processo referência: **7010244-30.2021.8.22.0005**
Assuntos: **Guarda**
Juízo 100% Digital? **NÃO**
Segredo de justiça? **SIM**
Justiça gratuita? **SIM**
Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **Em segredo de justiça (AGRAVANTE)** | **VICTOR GUILHEN MAZARO ARAUJO (ADVOGADO)** |
| **Em segredo de justiça (AGRAVADO)** | **BLENDA LARA FONSECA DO NASCIMENTO (ADVOGADO)** |
| **MPRO (MINISTÉRIO PÚBLICO DE RONDÔNIA) (CUSTOS LEGIS)** | |

| Documentos | | | |
|---|---|---|---|
| Id. | Data | Documento | Tipo |
| 14698607 | 14/02/2022 12:26 | Acórdão | ACÓRDÃO |
| 14334488 | 14/02/2022 12:26 | Relatório | RELATÓRIO |
| 14334489 | 14/02/2022 12:26 | Voto do Magistrado | VOTO |
| 14676691 | 14/02/2022 12:26 | Ementa | EMENTA |

## ESTADO DE RONDÔNIA
## PODER JUDICIÁRIO
## TRIBUNAL DE JUSTIÇA
### 1ª Câmara Cível / Gabinete Des. Raduan Miguel

Processo: 0811077-52.2021.8.22.0000 - AGRAVO DE INSTRUMENTO (202)

Relator: RADUAN MIGUEL FILHO

Data distribuição: 29/11/2021 12:09:34

Data julgamento: 08/02/2022

Polo Ativo:  Em segredo de justiça e outros

Advogado do(a) AGRAVANTE: VICTOR GUILHEN MAZARO ARAUJO - RO10926-A

Polo Passivo: Em segredo de justiça e outros

Advogado do(a) AGRAVADO: BLENDA LARA FONSECA DO NASCIMENTO - MG83915

## RELATÓRIO

Trata-se de agravo de instrumento interposto por Ângela D. S. T. em face da decisão proferida pelo juiz da 2ª Vara Cível da comarca de Ji-Paraná que, nos autos da ação de regulamentação de guarda cumulada com destituição do poder familiar ajuizada por Álefe F. R., deferiu o pedido liminar e atribuiu ao agravado a guarda provisória do filho João G. D. S. R., determinando que a requerida, ora agravante, entregue a criança no prazo de 10 dias, sob pena de busca e apreensão, além de responder pelo crime tipificado no art. 249 do Código Penal.

Em suas razões, inicialmente, postula pela concessão da justiça gratuita, sob o argumento de que não tem condições de arcar com as custas processuais sem que isso prejudique a sua subsistência.

No mérito, relata que as partes conviveram em união estável, período no qual nasceu a criança João G. D. S. R., contudo, dois anos após o nascimento, informa que o casal se separou e vinham mantendo de forma informal a guarda e demais responsabilidades com o filho, discorrendo a respeito dos problemas na relação e comunicação com o agravado, imputando-lhe o cometimento de agressões psicológicas.

Aduz que, em razão de dificuldades financeiras no Brasil, optou por se mudar para os Estados Unidos, na busca de melhores oportunidades de trabalho, reconhecendo que não obteve autorização junto ao agravado para fixar residência com o filho noutro país, o que motivou o ingresso da ação.

Contudo, afirma que não se aproveitou do filho para ingressar nos Estados Unidos, tampouco impediu que o agravado se comunicasse com o infante nesse período de transição, tendo em mente que, a qualquer sinal de infelicidade da criança, por saudade da família paterna, retornará para o Brasil.



Sobre a decisão agravada, salienta que o juiz *a quo*, ao conceder a guarda provisória ao agravado e determinar o retorno ao Brasil em prazo exíguo (10 dias), não levou em consideração os interesses da criança e os danos psicológicos de separar mãe e filho, pontuando que a criança já está inserida em um novo contexto social, frequentando escola, igreja e fazendo amigos, sendo evidente o perigo de dano irreparável em retirá-lo abruptamente dessa rotina.

Se mantida a decisão, destaca que não terá outra opção a não ser retornar com os filhos para o Brasil, pois sabe que a criança não terá condições de ficar longe da mãe, prejudicando todo o processo de legalização deles nos Estados Unidos e impedindo eventual retorno.

Por outro lado, entende que não há risco de irreversibilidade na manutenção do filho com ela, uma vez que o processo poderá prosseguir normalmente, com a realização de estudo social por carta rogatória e instrução probatória, a fim de averiguar quem possui as melhores condições de exercer a guarda da criança.

Aliado a isso, argumenta que o art. 13, alínea "b", da Convenção de Haia veda o retorno da criança se houver a existência de um risco grave a sua integridade física ou psíquica, o que é o caso, destacando que o laudo psicológico acostado na origem apontou que uma mudança de rotina, neste momento, poderá desencadear abalos psicológicos no menor.

Ao final, pugna pela concessão de efeito suspensivo ao recurso e, no mérito, seja reformada a decisão agravada, a fim de manter a criança sob a sua guarda provisória, nos Estados Unidos, até o deslinde da ação.

Intimada para comprovar a hipossuficiência alegada ou recolher o preparo recursal, a agravante acostou comprovante de pagamento (Id. 14031125).

O feito foi distribuído por sorteio à relatoria do desembargador Isaias Fonseca Moraes, que recebeu o recurso e deferiu o efeito suspensivo, nos termos da decisão de Id. 14039548.

Em seguida, o agravado manifestou-se nos autos, noticiando a ocorrência de prevenção (Id. 14136114), razão pela qual o recurso foi redistribuído por prevenção à minha relatoria e determinada a remessa dos autos à Procuradoria-Geral de Justiça (Id. 14194163), que, em parecer (Id. 14214520), manifestou-se pelo conhecimento e não provimento do agravo.

Em contraminuta o agravado pugna, inicialmente, pela nulidade da decisão (Id. 14039548), em razão de o desembargador Isaias não ser competente para analisar os autos. Afirma que o advogado da agravante tinha ciência da prevenção e, maliciosamente, valeu-se da distribuição por sorteio para conseguir a suspensão da decisão de primeiro grau, o que, nitidamente, causou-lhe prejuízo, pois está há seis meses sem ver o filho e na tentativa de reverter a subtração ilegal.

No mérito, alega que as acusações de agressões imputadas pela agravante são inverídicas, salientando que ela reconheceu que mentiu para o agravado sobre a mudança de residência para os Estados Unidos e, principalmente, sobre a travessia ilegal guiada por coiote, bem como, diante da possibilidade de ser deportada, casou-se com um americano que conheceu na *internet*, não havendo informações de que tal relacionamento seja verídico.

Ressalta que a agravante, na entrevista social realizada na origem, não apontou comportamento que desabone a conduta do agravado como pai, inclusive, admitiu que ele e a madrasta possuem uma ótima relação com a criança, de modo que o laudo psicológico juntado neste recurso não pode ser considerado, na medida em que produzido de forma unilateral, a fim de atender os interesses apenas de uma das partes, sendo certo que, ao contrário do relatado pela profissional, a criança sente falta do pai e da família no Brasil, dizendo que é uma pessoa estável, possui emprego fixo, casa e veículo próprios, reforçando que a sua esposa e seu enteado também nutrem afeto e carinho pela criança e possuem uma relação íntima com ela, ou seja, há um ambiente propício para que o menor possa se desenvolver de forma saudável.



Ainda, destaca que, além da relação afetiva com a família paterna, a criança também tinha amigos, escola e uma rotina no Brasil, a qual foi modificada bruscamente com a atitude da agravante. Esclarece que o filho morava há cinco anos na mesma cidade e está apenas há seis meses em outro país, com outro idioma, não havendo se falar em adaptação com uma mudança tão recente.

Sobre a situação da agravante nos Estados Unidos, diz ser extremamente precária e temporária, na medida em que está em processo de legalização da sua moradia com o filho no país, argumentando que um dos genitores não têm o direito de mudar unilateralmente o local de residência habitual da criança, sobretudo quando esta possui um pai presente.

A respeito do art. 13, alínea "b", da Convenção de Haia, invocado pela agravante, diz que não se aplica ao caso, pois os incômodos relacionados ao retorno não podem ser considerados grave risco à integridade física e psíquica do filho, sendo do melhor interesse da criança o regresso ao Brasil, a fim de preservar seus laços culturais e residência de origem.

Ao final, pugna pelo não provimento do agravo e a condenação da agravante ao pagamento de multa por litigância de má-fé. Ainda, requer que seja autorizada sua ida aos Estados Unidos para buscar o filho, em cumprimento à liminar que lhe concedeu a guarda provisória.

É o relatório.

VOTO

DESEMBARGADOR RADUAN MIGUEL FILHO

Presentes os requisitos de admissibilidade, conheço do recurso.

Inicialmente, a respeito da prejudicial arguida pelo agravado, pontuo que, embora o feito tenha sido distribuído por sorteio ao desembargador Isaias, verifica-se que ele reconheceu a sua incompetência e os autos foram devidamente redistribuídos por prevenção ao relator prevento.

Dessa forma, com este julgamento de mérito do agravo de instrumento, nesta oportunidade, entendo que a pretensão de nulidade da decisão inicial acostada (Id. 14039548), por vício de incompetência, perde seu objeto, razão pela qual tenho por prejudicada a análise da referida preliminar, porque utilidade alguma resultará às partes, neste momento, tratar da incompetência do magistrado que já reconheceu sua incompetência em razão de prevenção de outro magistrado, que, aliás, aceitou a competência.

A propósito da análise do recurso, registro que a controvérsia recursal cinge-se em analisar o acerto (ou não) da decisão recorrida, que concedeu tutela antecipada em favor do agravado/autor e deferiu-lhe a guarda provisória do filho J███ G. D. S. R., determinando que a agravante/requerida entregue a criança no prazo de 10 dias, sob pena de busca e apreensão.

Assim, a discussão do recurso deve se circunscrever aos limites definidos pelo art. 300 do CPC, segundo o qual:



> [...] a tutela de urgência será concedida quando houver elementos que evidenciem a probabilidade do direito e o perigo de dano ou o risco ao resultado útil do processo.

Significa dizer que se está diante de questão submetida à denominada cognição sumária, de natureza precária, exercida sem o exaurimento do contraditório pelas partes e sem o exame aprofundado das teses suscitadas pelas partes, sob pena de prejulgamento do mérito.

Pois bem. Cuida-se, na origem, de ação de regulamentação de guarda unilateral de J. G. D. S. R. (5 anos), ajuizada pelo agravado em face da agravante.

Consta nos autos que, desde a separação conjugal (meados de 2018), as partes mantinham a guarda de fato do filho de forma compartilhada. Segundo informado por ambos na origem (Id. 64054701), a criança transitava de forma livre entre as residências dos genitores, sem dias e horários de visitas estabelecidos.

Ainda, as partes descreveram que possuíam uma relação de amizade e confiança mútuas para tratar sobre os assuntos relacionados ao filho, nada apontando que desabonasse a conduta do outro como pai/mãe, ressaltando-se, quanto a isso, a informação prestada pela agravante à assistente social, de que o agravado sempre foi um excelente pai, presente e participativo, assim como sempre teve um relacionamento confiável com a madrasta da criança.

Contudo, referido vínculo amigável, estabelecido entre as partes, foi afetado com a mudança da agravante, acompanhada do filho, para os Estados Unidos, o que motivou o ingresso da ação em questão.

A respeito da alteração de domicílio para o país estrangeiro, resulta incontroverso que a agravante omitiu informações do agravado, pedindo-lhe autorização para retirar o passaporte e viajar de férias com o filho para o exterior (Id. 62571384 - origem), porém, sem o consentimento do genitor, ingressou naquele país de forma ilegal, auxiliada por "coiote", com o objetivo de fixar moradia.

Ou seja, embora estivesse na posse do filho e com autorização para viagem de férias, a agravante reconhece que não comunicou o agravado, tampouco obteve seu consentimento, para a mudança de residência do filho em comum.

Ocorre que, se nenhum dos pais possui, individualmente, a guarda da criança, não se pode pretender que a mãe obtenha, por meio do procedimento previsto no art. 84 do Estatuto da Criança e do Adolescente, a posse de fato do menor para que este passe a viver com ela no exterior, sem o consentimento do pai e ausente provimento judicial que lhe deferisse a guarda unilateral.

É de dizer que, se ambas as partes exerciam a guarda compartilhada do filho, que possuía como residência habitual a casa dos dois genitores em Ji-Paraná, a mudança repentina de moradia para outro país, sem a autorização do genitor, com efeito, viola o direito de convivência entre pai e filho.

Segundo o art. 1.583, §2º, do Código Civil, compreende-se por guarda compartilhada:

> [...] a responsabilização conjunta e o exercício de direitos e deveres do pai e da mãe que não vivam sob o mesmo teto, concernentes ao poder familiar dos filhos em comum.



Nessa perspectiva, o poder familiar – do qual são titulares ambas as partes – envolve a autorização ou a negativa para que os filhos mudem sua residência permanente (art. 1.634, V, do Código Civil), tratando-se de decisão que deve ser tomada conjuntamente pelos guardiões.

Nesse sentido, colaciono ementa de julgamento realizado pelo Tribunal de Justiça de São Paulo, em caso semelhante ao dos autos:

> AGRAVO DE INSTRUMENTO. AÇÃO DE MODIFICAÇÃO DE GUARDA. TUTELA DE URGÊNCIA. Decisão que deferiu a tutela provisória pleiteada pelo genitor para impedir a alteração do domicílio do filho comum unilateralmente pela genitora. Inconformismo. Descabimento. GUARDA COMPARTILHADA. Regime estabelecido em ação de divórcio pretérito. **Exercício conjunto de direitos e deveres concernentes ao poder familiar, o qual envolve a autorização ou a negativa para que a prole altere o local da residência para outro Município. Inteligência dos artigos 1.583, §2º, e 1.634, V, ambos do Código Civil. Caso concreto em que não houve consentimento prévio do pai, que apenas foi comunicado da mudança. MELHOR INTERESSE DA CRIANÇA**. Na guarda compartilhada, a cidade considerada base de moradia será a que melhor atender aos interesses dos filhos. Inteligência do art. 1.583, §3º, do Código Civil. [...] Ausência de indícios, neste momento processual, de que a mudança para Valinhos SP, localizada a aproximadamente 560 quilômetros de distância daquela localidade, lhe trará benefícios. Advertência à mãe acerca das consequências do descumprimento imotivado de cláusula de guarda. Decisão mantida. RECURSO NÃO PROVIDO.
>
> (TJSP. AI nº 2277075-39.2019.8.26.0000, Relª Desª TELLES, Rosangela, 2ª Câmara de Direito Privado, pub. 8/5/2020)

Na hipótese, a situação instaurada entre as partes, sem dúvida, é extremamente delicada, sobretudo em razão da distância geográfica (inclusive dificuldade de acesso, por ser em outro país) e da forma como se deu a mudança de domicílio.

Todavia, é preciso ter em mente que, numa ação de guarda, não se tutela o direito dos genitores, mas sim, precipuamente, os interesses do menor envolvido.

Dito isso, neste momento, o que se extrai dos autos é que a criança, desde o seu nascimento (2016), residia em Ji-Paraná, onde convivia de forma ativa com ambos os genitores, tinha uma rotina, assim como vínculos afetivos estreitos com a família paterna, destacando-se que o menor estava, inclusive, com agendamento médico para correção de fimose (Id. 14136405), circunstâncias que apontam para a probabilidade do direito invocado pelo agravado.

Por outro lado, tem-se que o ambiente familiar e social, seguro e estável, conhecido pela criança, de fato, foi abruptamente modificado pela agravante que, de maneira temerária, ingressou ilegalmente nos Estados Unidos, acompanhada do filho em questão, para ali tentar fixar nova moradia.

Diz-se "tentar" porque, como reconhecido pela agravante, ela ainda está em processo de legalização, isto é, tanto ela, quanto o filho, atualmente, encontram-se em situação transitória, precária e instável naquele país.

Conquanto a agravante afirme que a criança já está inserida em um novo contexto social, frequentando escola e igreja, é preciso ponderar que os documentos acostados neste recurso são recentes (11/2021) se comparados ao tempo em que a criança conviveu em sua residência habitual brasileira.

A respeito do assunto, é oportuno mencionar que a Convenção de Haia, ratificada pelo Brasil por meio do Decreto 3.413/2000, prevê medidas para evitar e solucionar situações nas quais crianças ou adolescentes têm seu direito de convivência com um dos pais subtraído.



Nesse sentido, as observações de Mônica Sifuentes, citadas por Ana Carla Harmatiuk Matos, são pontuais e esclarecedoras para o caso em debate, a saber:

> [...] Ficou estabelecido pelos estados-membros, após longas discussões, que **a melhor solução para o conflito seria o retorno da criança ao local de sua última residência, para que o juiz daquele país decida sobre quem deverá ser atribuída a guarda. Não se trata, como erroneamente se supõe, de devolvê-la ao outro genitor, mas de encaminhá-la à autoridade competente, pois é ali que a criança tinha sua vida, seu círculo de amizades, a escola, a vizinhança. O juiz ou a autoridade local dispõe, sem dúvida, de melhores meios para colher provas e avaliar qual dos pais deve ficar com o menor**.
>
> (SIFUENTES, Mônica. Sequestro interparental: a experiência brasileira na aplicação da Convenção da Haia de 1989. Revista da SJRJ, Rio de Janeiro, n. 25, p. 135-144, 2009) - grifei

A autora, no mencionado artigo, prossegue com a observação de que o tempo é fundamental para guardar o objetivo proposto pela Convenção, porquanto se "se tarda na prestação jurisdicional de devolução da criança ou adolescente, sua convivência familiar e comunitária já terá sido em muito alterada, prejudicando enormemente o contexto daquele que se deve prioritariamente tutelar".

No tocante à vedação do retorno da criança se houver a existência de um risco grave a sua integridade física ou psíquica, prevista no art. 13, alínea "b", da Convenção, a Dra. Ana Carla, supracitada, acrescenta que referida exceção deve ser entendida em caráter humanitário, visando a evitar que a criança seja enviada a uma família perigosa ou abusiva, a um ambiente social ou nacional perigoso, o que não se verifica no caso.

Quanto a isso, consigno que a avaliação clínica acostada pela agravante (Id. 13985766), neste momento, é desprovida de valor probatório, na medida em que realizada unilateralmente pela parte, por profissional americana contratada por ela.

Ademais, a narrativa de que a criança estaria com medo do pai não se coaduna com as demais provas dos autos, inclusive, com as declarações dadas pela própria agravante à assistente social do juízo, no sentido de que a relação paterno-filial sempre foi próxima e positiva (Id. 14136763 – pág. 2/9).

Ainda, sobre a alegação de suposta adaptação da criança no país estrangeiro, destaco que o entendimento do STJ, ao julgar casos de busca e apreensão embasados na Convenção de Haia, é de que o retorno imediato do menor ao país da residência habitual, para decidir eventuais controvérsias sobre a guarda, representa providência que melhor atende ao interesse da criança, a saber:

> INTERNACIONAL E PROCESSUAL CIVIL. RECURSOS ESPECIAIS. AÇÃO DE BUSCA, APREENSÃO E RESTITUIÇÃO PROPOSTA PELA UNIÃO. CONVENÇÃO DE HAIA SOBRE OS ASPECTOS CIVIS DO SEQUESTRO INTERNACIONAL DE CRIANÇAS. DECRETO 3.413/2000. RETENÇÃO NOVA. NECESSIDADE DE RETORNO DA CRIANÇA AO PAÍS DE RESIDÊNCIA HABITUAL.
>
> [...] **APLICAÇÃO DO ART. 12 DA CONVENÇÃO DE HAIA: DECURSO DE MENOS DE UM ANO ENTRE A DATA DA TRANSFERÊNCIA OU RETENÇÃO INDEVIDA DA CRIANÇA E O INÍCIO DO PROCESSO DE REPATRIAÇÃO**
>
> 13. Consoante afirmado pelo acórdão recorrido, é inquestionável a prática de ato ilícito pela recorrente, correspondente, de modo específico, à retirada do menor da Espanha, país de sua residência, sem consentimento do pai.



14. Ademais, igualmente indubitável é a ausência de transcurso de um ano entre a data da transferência/retenção ilícita (saída do país) e a do início do procedimento administrativo ou judicial (pedido de retorno da criança).

[...]

15. O caso em questão enquadra-se na hipótese descrita no **art. 12 da Convenção, que estabelece imediata devolução da criança quando tiver decorrido menos de 1 (um) ano entre a data da transferência ou retenção indevida e a de início do processo de repatriação no Estado que estiver abrigando a criança**, como afirmou o acórdão recorrido.

16. **A Convenção acolhe a presunção de que o retorno imediato do ilicitamente subtraído ao país de residência habitual – juízo natural para eventuais controvérsias sobre guarda e Direito de Família – representa providência que melhor atende ao interesse da criança.**

[...] (REsp n. 1.723.068/RS, Rel. Min. BENJAMIN, Herman, Segunda Turma, julg. 8/9/2020) - grifei)

Dessa forma, de tudo o que foi exposto, reforço que não está sendo tutelado o direito e melhor interesse dos genitores, mas sim o da criança envolvida, que foi retirada do ambiente familiar e social em que sua vida se desenvolveu.

É certo que a análise da controvérsia, neste momento, restringe-se à existência ou não dos requisitos legais para a manutenção da tutela concedida, cujo julgamento de mérito dependerá do pleno exercício do contraditório e da ampla defesa, com a produção de todas as provas que se fizerem necessárias, em especial, estudo social com a criança, a fim de averiguar quem possui as melhores condições para exercer a guarda unilateral.

Ou seja, nessa via estreita do agravo, considerando a residência habitual do menor, a forma como se deu a mudança de domicílio, o decurso de tempo, as circunstâncias apresentadas nos autos e a legislação pertinente ao caso, entendo que o mais adequado seja a manutenção da decisão agravada, pois, no atual estágio, é a que melhor contempla os interesses da criança, sem prejuízo, como já dito, de eventual nova deliberação pelo juiz de origem em sentido contrário, caso embasado em novos elementos surgidos no decorrer da instrução do feito principal.

Assim, por ora, diante dos fundamentos acima declinados, tenho como correta e adequada ao caso, neste momento processual, a decisão recorrida que, em sede de cognição sumária, deferiu a guarda provisória ao agravado e determinou o retorno da criança, porquanto evidenciada a probabilidade do direito invocado e o risco de dano.

Por fim, a despeito das alegações do agravado, não entendo que a ausência de informação sobre a prevenção na peça do agravo, tampouco as alegações da agravante, por si só, configuram tentativa de ludibriar o juízo, razão pela qual indefiro o pedido de aplicação de multa por litigância de má-fé.

Ante o exposto, nego provimento ao recurso.

Por conseguinte, pelos fundamentos ora despendidos neste voto, revogo o efeito suspensivo atribuído ao recurso, para o fim de que a decisão agravada tenha seus efeitos imediatamente restabelecidos.

É como voto.



EMENTA

*Agravo de instrumento. Ação de regulamentação de guarda. Tutela de urgência.
Mudança de domicílio para outro país. Ausência de consentimento. Guarda provisória.
Melhor interesse da criança. Requisitos legais. Demonstração.*

Constatado que as partes exerciam a guarda compartilhada do filho, que possuía como residência
habitual a casa de ambos os genitores no Brasil, a mudança abrupta de domicílio para outro país, sem o
consentimento do genitor ou autorização judicial, viola o direito de convivência entre pai e filho.

Ausentes nos autos indícios de prova que desabone a conduta do genitor, tampouco demonstração
de risco para o infante em permanecer sob a sua guarda provisória, em atenção ao melhor interesse da
criança, deve ser mantida a concessão da guarda provisória ao agravado e a determinação de retorno da
criança ao local de sua última residência.

## ACÓRDÃO

Vistos, relatados e discutidos estes autos, acordam os Magistrados da **1ª Câmara Cível** do Tribunal de Justiça do
Estado de Rondônia, na conformidade da ata de julgamentos e das notas taquigráficas, em, RECURSO NÃO PROVIDO NOS
TERMOS DO VOTO DO RELATOR, À UNANIMIDADE.

Porto Velho, 08 de Fevereiro de 2022

Gabinete Des. Raduan Miguel / Desembargador(a)   RADUAN MIGUEL FILHO

RELATOR



## RELATÓRIO



Trata-se de agravo de instrumento interposto por Ângela D. S. T. em face da decisão proferida pelo juiz da 2ª Vara Cível da comarca de Ji-Paraná que, nos autos da ação de regulamentação de guarda cumulada com destituição do poder familiar ajuizada por Álefe F. R., deferiu o pedido liminar e atribuiu ao agravado a guarda provisória do filho J██ G. D. S. R., determinando que a requerida, ora agravante, entregue a criança no prazo de 10 dias, sob pena de busca e apreensão, além de responder pelo crime tipificado no art. 249 do Código Penal.

Em suas razões, inicialmente, postula pela concessão da justiça gratuita, sob o argumento de que não tem condições de arcar com as custas processuais sem que isso prejudique a sua subsistência.

No mérito, relata que as partes conviveram em união estável, período no qual nasceu a criança J██ G. D. S. R., contudo, dois anos após o nascimento, informa que o casal se separou e vinham mantendo de forma informal a guarda e demais responsabilidades com o filho, discorrendo a respeito dos problemas na relação e comunicação com o agravado, imputando-lhe o cometimento de agressões psicológicas.

Aduz que, em razão de dificuldades financeiras no Brasil, optou por se mudar para os Estados Unidos, na busca de melhores oportunidades de trabalho, reconhecendo que não obteve autorização junto ao agravado para fixar residência com o filho noutro país, o que motivou o ingresso da ação.

Contudo, afirma que não se aproveitou do filho para ingressar nos Estados Unidos, tampouco impediu que o agravado se comunicasse com o infante nesse período de transição, tendo em mente que, a qualquer sinal de infelicidade da criança, por saudade da família paterna, retornará para o Brasil.

Sobre a decisão agravada, salienta que o juiz *a quo*, ao conceder a guarda provisória ao agravado e determinar o retorno ao Brasil em prazo exíguo (10 dias), não levou em consideração os interesses da criança e os danos psicológicos de separar mãe e filho, pontuando que a criança já está inserida em um novo contexto social, frequentando escola, igreja e fazendo amigos, sendo evidente o perigo de dano irreparável em retirá-lo abruptamente dessa rotina.

Se mantida a decisão, destaca que não terá outra opção a não ser retornar com os filhos para o Brasil, pois sabe que a criança não terá condições de ficar longe da mãe, prejudicando todo o processo de legalização deles nos Estados Unidos e impedindo eventual retorno.

Por outro lado, entende que não há risco de irreversibilidade na manutenção do filho com ela, uma vez que o processo poderá prosseguir normalmente, com a realização de estudo social por carta rogatória e instrução probatória, a fim de averiguar quem possui as melhores condições de exercer a guarda da criança.

Aliado a isso, argumenta que o art. 13, alínea "b", da Convenção de Haia veda o retorno da criança se houver a existência de um risco grave a sua integridade física ou psíquica, o que é o caso, destacando que o laudo psicológico acostado na origem apontou que uma mudança de rotina, neste momento, poderá desencadear abalos psicológicos no menor.

Ao final, pugna pela concessão de efeito suspensivo ao recurso e, no mérito, seja reformada a decisão agravada, a fim de manter a criança sob a sua guarda provisória, nos Estados Unidos, até o deslinde da ação.

Intimada para comprovar a hipossuficiência alegada ou recolher o preparo recursal, a agravante acostou comprovante de pagamento (Id. 14031125).



O feito foi distribuído por sorteio à relatoria do desembargador Isaias Fonseca Moraes, que recebeu o recurso e deferiu o efeito suspensivo, nos termos da decisão de Id. 14039548.

Em seguida, o agravado manifestou-se nos autos, noticiando a ocorrência de prevenção (Id. 14136114), razão pela qual o recurso foi redistribuído por prevenção à minha relatoria e determinada a remessa dos autos à Procuradoria-Geral de Justiça (Id. 14194163), que, em parecer (Id. 14214520), manifestou-se pelo conhecimento e não provimento do agravo.

Em contraminuta o agravado pugna, inicialmente, pela nulidade da decisão (Id. 14039548), em razão de o desembargador Isaias não ser competente para analisar os autos. Afirma que o advogado da agravante tinha ciência da prevenção e, maliciosamente, valeu-se da distribuição por sorteio para conseguir a suspensão da decisão de primeiro grau, o que, nitidamente, causou-lhe prejuízo, pois está há seis meses sem ver o filho e na tentativa de reverter a subtração ilegal.

No mérito, alega que as acusações de agressões imputadas pela agravante são inverídicas, salientando que ela reconheceu que mentiu para o agravado sobre a mudança de residência para os Estados Unidos e, principalmente, sobre a travessia ilegal guiada por coiote, bem como, diante da possibilidade de ser deportada, casou-se com um americano que conheceu na *internet*, não havendo informações de que tal relacionamento seja verídico.

Ressalta que a agravante, na entrevista social realizada na origem, não apontou comportamento que desabone a conduta do agravado como pai, inclusive, admitiu que ele e a madrasta possuem uma ótima relação com a criança, de modo que o laudo psicológico juntado neste recurso não pode ser considerado, na medida em que produzido de forma unilateral, a fim de atender os interesses apenas de uma das partes, sendo certo que, ao contrário do relatado pela profissional, a criança sente falta do pai e da família no Brasil, dizendo que é uma pessoa estável, possui emprego fixo, casa e veículo próprios, reforçando que a sua esposa e seu enteado também nutrem afeto e carinho pela criança e possuem uma relação íntima com ela, ou seja, há um ambiente propício para que o menor possa se desenvolver de forma saudável.

Ainda, destaca que, além da relação afetiva com a família paterna, a criança também tinha amigos, escola e uma rotina no Brasil, a qual foi modificada bruscamente com a atitude da agravante. Esclarece que o filho morava há cinco anos na mesma cidade e está apenas há seis meses em outro país, com outro idioma, não havendo se falar em adaptação com uma mudança tão recente.

Sobre a situação da agravante nos Estados Unidos, diz ser extremamente precária e temporária, na medida em que está em processo de legalização da sua moradia com o filho no país, argumentando que um dos genitores não têm o direito de mudar unilateralmente o local de residência habitual da criança, sobretudo quando esta possui um pai presente.

A respeito do art. 13, alínea "b", da Convenção de Haia, invocado pela agravante, diz que não se aplica ao caso, pois os incômodos relacionados ao retorno não podem ser considerados grave risco à integridade física e psíquica do filho, sendo do melhor interesse da criança o regresso ao Brasil, a fim de preservar seus laços culturais e residência de origem.

Ao final, pugna pelo não provimento do agravo e a condenação da agravante ao pagamento de multa por litigância de má-fé. Ainda, requer que seja autorizada sua ida aos Estados Unidos para buscar o filho, em cumprimento à liminar que lhe concedeu a guarda provisória.

É o relatório.



VOTO

DESEMBARGADOR RADUAN MIGUEL FILHO

Presentes os requisitos de admissibilidade, conheço do recurso.

Inicialmente, a respeito da prejudicial arguida pelo agravado, pontuo que, embora o feito tenha sido distribuído por sorteio ao desembargador Isaias, verifica-se que ele reconheceu a sua incompetência e os autos foram devidamente redistribuídos por prevenção ao relator prevento.

Dessa forma, com este julgamento de mérito do agravo de instrumento, nesta oportunidade, entendo que a pretensão de nulidade da decisão inicial acostada (Id. 14039548), por vício de incompetência, perde seu objeto, razão pela qual tenho por prejudicada a análise da referida preliminar, porque utilidade alguma resultará às partes, neste momento, tratar da incompetência do magistrado que já reconheceu sua incompetência em razão de prevenção de outro magistrado, que, aliás, aceitou a competência.

A propósito da análise do recurso, registro que a controvérsia recursal cinge-se em analisar o acerto (ou não) da decisão recorrida, que concedeu tutela antecipada em favor do agravado/autor e deferiu-lhe a guarda provisória do filho J██ G. D. S. R., determinando que a agravante/requerida entregue a criança no prazo de 10 dias, sob pena de busca e apreensão.

Assim, a discussão do recurso deve se circunscrever aos limites definidos pelo art. 300 do CPC, segundo o qual:

> [...] a tutela de urgência será concedida quando houver elementos que evidenciem a probabilidade do direito e o perigo de dano ou o risco ao resultado útil do processo.

Significa dizer que se está diante de questão submetida à denominada cognição sumária, de natureza precária, exercida sem o exaurimento do contraditório pelas partes e sem o exame aprofundado das teses suscitadas pelas partes, sob pena de prejulgamento do mérito.

Pois bem. Cuida-se, na origem, de ação de regulamentação de guarda unilateral de J██ G. D. S. R. (5 anos), ajuizada pelo agravado em face da agravante.

Consta nos autos que, desde a separação conjugal (meados de 2018), as partes mantinham a guarda de fato do filho de forma compartilhada. Segundo informado por ambos na origem (Id. 64054701), a criança transitava de forma livre entre as residências dos genitores, sem dias e horários de visitas estabelecidos.

Ainda, as partes descreveram que possuíam uma relação de amizade e confiança mútuas para tratar sobre os assuntos relacionados ao filho, nada apontando que desabonasse a conduta do outro como pai/mãe, ressaltando-se, quanto a isso, a informação prestada pela agravante à assistente social, de que o agravado sempre foi um excelente pai, presente e participativo, assim como sempre teve um relacionamento confiável com a madrasta da criança.

Contudo, referido vínculo amigável, estabelecido entre as partes, foi afetado com a mudança da agravante, acompanhada do filho, para os Estados Unidos, o que motivou o ingresso da ação em questão.


Assinado eletronicamente por: RADUAN MIGUEL FILHO - 14/02/2022 12:26:20
http://pjesg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=22021412262026700000014253837
Número do documento: 22021412262026700000014253837

Num. 14334489 - Pág. 1

A respeito da alteração de domicílio para o país estrangeiro, resulta incontroverso que a agravante omitiu informações do agravado, pedindo-lhe autorização para retirar o passaporte e viajar de férias com o filho para o exterior (Id. 62571384 - origem), porém, sem o consentimento do genitor, ingressou naquele país de forma ilegal, auxiliada por "coiote", com o objetivo de fixar moradia.

Ou seja, embora estivesse na posse do filho e com autorização para viagem de férias, a agravante reconhece que não comunicou o agravado, tampouco obteve seu consentimento, para a mudança de residência do filho em comum.

Ocorre que, se nenhum dos pais possui, individualmente, a guarda da criança, não se pode pretender que a mãe obtenha, por meio do procedimento previsto no art. 84 do Estatuto da Criança e do Adolescente, a posse de fato do menor para que este passe a viver com ela no exterior, sem o consentimento do pai e ausente provimento judicial que lhe deferisse a guarda unilateral.

É de dizer que, se ambas as partes exercem a guarda compartilhada do filho, que possuía como residência habitual a casa dos dois genitores em Ji-Paraná, a mudança repentina de moradia para outro país, sem a autorização do genitor, com efeito, viola o direito de convivência entre pai e filho.

Segundo o art. 1.583, §2°, do Código Civil, compreende-se por guarda compartilhada:

> [...] a responsabilização conjunta e o exercício de direitos e deveres do pai e da mãe que não vivam sob o mesmo teto, concernentes ao poder familiar dos filhos em comum.

Nessa perspectiva, o poder familiar – do qual são titulares ambas as partes – envolve a autorização ou a negativa para que os filhos mudem sua residência permanente (art. 1.634, V, do Código Civil), tratando-se de decisão que deve ser tomada conjuntamente pelos guardiões.

Nesse sentido, colaciono ementa de julgamento realizado pelo Tribunal de Justiça de São Paulo, em caso semelhante ao dos autos:

> AGRAVO DE INSTRUMENTO. AÇÃO DE MODIFICAÇÃO DE GUARDA. TUTELA DE URGÊNCIA. Decisão que deferiu a tutela provisória pleiteada pelo genitor para impedir a alteração do domicílio do filho comum unilateralmente pela genitora. Inconformismo. Descabimento. GUARDA COMPARTILHADA. Regime estabelecido em ação de divórcio pretérito. **Exercício conjunto de direitos e deveres concernentes ao poder familiar, o qual envolve a autorização ou a negativa para que a prole altere o local da residência para outro Município. Inteligência dos artigos 1.583, §2°, e 1.634, V, ambos do Código Civil. Caso concreto em que não houve consentimento prévio do pai, que apenas foi comunicado da mudança. MELHOR INTERESSE DA CRIANÇA.** Na guarda compartilhada, a cidade considerada base de moradia será a que melhor atender aos interesses dos filhos. Inteligência do art. 1.583, §3°, do Código Civil. [...] Ausência de indícios, neste momento processual, de que a mudança para Valinhos SP, localizada a aproximadamente 560 quilômetros de distância daquela localidade, lhe trará benefícios. Advertência à mãe acerca das consequências do descumprimento imotivado de cláusula de guarda. Decisão mantida. RECURSO NÃO PROVIDO.
>
> (TJSP. AI n° 2277075-39.2019.8.26.0000, Relª Desª TELLES, Rosangela, 2ª Câmara de Direito Privado, pub. 8/5/2020)



Assinado eletronicamente por: RADUAN MIGUEL FILHO - 14/02/2022 12:26:20
http://pjesg.tjro.jus.br:80/Processo/ConsultaDocumento/listView.seam?x=22021412262026700000014253837
Número do documento: 22021412262026700000014253837

Na hipótese, a situação instaurada entre as partes, sem dúvida, é extremamente delicada, sobretudo em razão da distância geográfica (inclusive dificuldade de acesso, por ser em outro país) e da forma como se deu a mudança de domicílio.

Todavia, é preciso ter em mente que, numa ação de guarda, não se tutela o direito dos genitores, mas sim, precipuamente, os interesses do menor envolvido.

Dito isso, neste momento, o que se extrai dos autos é que a criança, desde o seu nascimento (2016), residia em Ji-Paraná, onde convivia de forma ativa com ambos os genitores, tinha uma rotina, assim como vínculos afetivos estreitos com a família paterna, destacando-se que o menor estava, inclusive, com agendamento médico para correção de fimose (Id. 14136405), circunstâncias que apontam para a probabilidade do direito invocado pelo agravado.

Por outro lado, tem-se que o ambiente familiar e social, seguro e estável, conhecido pela criança, de fato, foi abruptamente modificado pela agravante que, de maneira temerária, ingressou ilegalmente nos Estados Unidos, acompanhada do filho em questão, para ali tentar fixar nova moradia.

Diz-se "tentar" porque, como reconhecido pela agravante, ela ainda está em processo de legalização, isto é, tanto ela, quanto o filho, atualmente, encontram-se em situação transitória, precária e instável naquele país.

Conquanto a agravante afirme que a criança já está inserida em um novo contexto social, frequentando escola e igreja, é preciso ponderar que os documentos acostados neste recurso são recentes (11/2021) se comparados ao tempo em que a criança conviveu em sua residência habitual brasileira.

A respeito do assunto, é oportuno mencionar que a Convenção de Haia, ratificada pelo Brasil por meio do Decreto 3.413/2000, prevê medidas para evitar e solucionar situações nas quais crianças ou adolescentes têm seu direito de convivência com um dos pais subtraído.

Nesse sentido, as observações de Mônica Sifuentes, citadas por Ana Carla Harmatiuk Matos, são pontuais e esclarecedoras para o caso em debate, a saber:

> [...] Ficou estabelecido pelos estados-membros, após longas discussões, que **a melhor solução para o conflito seria o retorno da criança ao local de sua última residência, para que o juiz daquele país decida sobre quem deverá ser atribuída a guarda. Não se trata, como erroneamente se supõe, de devolvê-la ao outro genitor, mas de encaminhá-la à autoridade competente, pois é ali que a criança tinha sua vida, seu círculo de amizades, a escola, a vizinhança. O juiz ou a autoridade local dispõe, sem dúvida, de melhores meios para colher provas e avaliar qual dos pais deve ficar com o menor**.
>
> (SIFUENTES, Mônica. Sequestro interparental: a experiência brasileira na aplicação da Convenção da Haia de 1989. Revista da SJRJ, Rio de Janeiro, n. 25, p. 135-144, 2009) - grifei

A autora, no mencionado artigo, prossegue com a observação de que o tempo é fundamental para guardar o objetivo proposto pela Convenção, porquanto se "se tarda na prestação jurisdicional de devolução da criança ou adolescente, sua convivência familiar e comunitária já terá sido em muito alterada, prejudicando enormemente o contexto daquele que se deve prioritariamente tutelar".

No tocante à vedação do retorno da criança se houver a existência de um risco grave a sua integridade física ou psíquica, prevista no art. 13, alínea "b", da Convenção, a Dra. Ana Carla, supracitada, acrescenta que referida exceção deve ser entendida em caráter humanitário, visando a evitar que a criança seja enviada a uma família perigosa ou abusiva, a um ambiente social ou nacional perigoso, o que não se verifica no caso.



Quanto a isso, consigno que a avaliação clínica acostada pela agravante (Id. 13985766), neste momento, é desprovida de valor probatório, na medida em que realizada unilateralmente pela parte, por profissional americana contratada por ela.

Ademais, a narrativa de que a criança estaria com medo do pai não se coaduna com as demais provas dos autos, inclusive, com as declarações dadas pela própria agravante à assistente social do juízo, no sentido de que a relação paterno-filial sempre foi próxima e positiva (Id. 14136763 – pág. 2/9).

Ainda, sobre a alegação de suposta adaptação da criança no país estrangeiro, destaco que o entendimento do STJ, ao julgar casos de busca e apreensão embasados na Convenção de Haia, é de que o retorno imediato do menor ao país da residência habitual, para decidir eventuais controvérsias sobre a guarda, representa providência que melhor atende ao interesse da criança, a saber:

> INTERNACIONAL E PROCESSUAL CIVIL. RECURSOS ESPECIAIS. AÇÃO DE BUSCA, APREENSÃO E RESTITUIÇÃO PROPOSTA PELA UNIÃO. CONVENÇÃO DE HAIA SOBRE OS ASPECTOS CIVIS DO SEQUESTRO INTERNACIONAL DE CRIANÇAS. DECRETO 3.413/2000. RETENÇÃO NOVA. NECESSIDADE DE RETORNO DA CRIANÇA AO PAÍS DE RESIDÊNCIA HABITUAL.
>
> [...] **APLICAÇÃO DO ART. 12 DA CONVENÇÃO DE HAIA: DECURSO DE MENOS DE UM ANO ENTRE A DATA DA TRANSFERÊNCIA OU RETENÇÃO INDEVIDA DA CRIANÇA E O INÍCIO DO PROCESSO DE REPATRIAÇÃO**
>
> 13. Consoante afirmado pelo acórdão recorrido, é inquestionável a prática de ato ilícito pela recorrente, correspondente, de modo específico, à retirada do menor da Espanha, país de sua residência, sem consentimento do pai.
>
> 14. Ademais, igualmente indubitável é a ausência de transcurso de um ano entre a data da transferência/retenção ilícita (saída do país) e a do início do procedimento administrativo ou judicial (pedido de retorno da criança).
>
> [...]
>
> 15. O caso em questão enquadra-se na hipótese descrita no **art. 12 da Convenção, que estabelece imediata devolução da criança quando tiver decorrido menos de 1 (um) ano entre a data da transferência ou retenção indevida e a de início do processo de repatriação no Estado que estiver abrigando a criança,** como afirmou o acórdão recorrido.
>
> 16. **A Convenção acolhe a presunção de que o retorno imediato do ilicitamente subtraído ao país de residência habitual – juízo natural para eventuais controvérsias sobre guarda e Direito de Família – representa providência que melhor atende ao interesse da criança.**
>
> [...] (REsp n. 1.723.068/RS, Rel. Min. BENJAMIN, Herman, Segunda Turma, julg. 8/9/2020) - grifei)

Dessa forma, de tudo o que foi exposto, reforço que não está sendo tutelado o direito e melhor interesse dos genitores, mas sim o da criança envolvida, que foi retirada do ambiente familiar e social em que sua vida se desenvolveu.

É certo que a análise da controvérsia, neste momento, restringe-se à existência ou não dos requisitos legais para a manutenção da tutela concedida, cujo julgamento de mérito dependerá do pleno



exercício do contraditório e da ampla defesa, com a produção de todas as provas que se fizerem necessárias, em especial, estudo social com a criança, a fim de averiguar quem possui as melhores condições para exercer a guarda unilateral.

Ou seja, nessa via estreita do agravo, considerando a residência habitual do menor, a forma como se deu a mudança de domicílio, o decurso de tempo, as circunstâncias apresentadas nos autos e a legislação pertinente ao caso, entendo que o mais adequado seja a manutenção da decisão agravada, pois, no atual estágio, é a que melhor contempla os interesses da criança, sem prejuízo, como já dito, de eventual nova deliberação pelo juiz de origem em sentido contrário, caso embasado em novos elementos surgidos no decorrer da instrução do feito principal.

Assim, por ora, diante dos fundamentos acima declinados, tenho como correta e adequada ao caso, neste momento processual, a decisão recorrida que, em sede de cognição sumária, deferiu a guarda provisória ao agravado e determinou o retorno da criança, porquanto evidenciada a probabilidade do direito invocado e o risco de dano.

Por fim, a despeito das alegações do agravado, não entendo que a ausência de informação sobre a prevenção na peça do agravo, tampouco as alegações da agravante, por si só, configuram tentativa de ludibriar o juízo, razão pela qual indefiro o pedido de aplicação de multa por litigância de má-fé.

Ante o exposto, nego provimento ao recurso.

Por conseguinte, pelos fundamentos ora despendidos neste voto, revogo o efeito suspensivo atribuído ao recurso, para o fim de que a decisão agravada tenha seus efeitos imediatamente restabelecidos.

É como voto.



EMENTA

*Agravo de instrumento. Ação de regulamentação de guarda. Tutela de urgência. Mudança de domicílio para outro país. Ausência de consentimento. Guarda provisória. Melhor interesse da criança. Requisitos legais. Demonstração.*

Constatado que as partes exerciam a guarda compartilhada do filho, que possuía como residência habitual a casa de ambos os genitores no Brasil, a mudança abrupta de domicílio para outro país, sem o consentimento do genitor ou autorização judicial, viola o direito de convivência entre pai e filho.

Ausentes nos autos indícios de prova que desabone a conduta do genitor, tampouco demonstração de risco para o infante em permanecer sob a sua guarda provisória, em atenção ao melhor interesse da criança, deve ser mantida a concessão da guarda provisória ao agravado e a determinação de retorno da criança ao local de sua última residência.